**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **Caron Nazario** | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 2:21-cv-00169 |
| | ) | |
| **Joe Gutierrez,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **Daniel Crocker,** | ) | |
| *Defendants.* | ) | |

**PLAINTIFF CARON NAZARIO'S MEMORANDUM OF LAW IN OPPOSITION TO
TO DEFENDANT JOE GUTIERREZ'S AND DEFENDANT DANIEL CROCKER'S
12(b)(6) MOTION TO DISMISS
FIRST AMENDMENT CLAIM**

COMES NOW the Plaintiff, Caron Nazario (the "Plaintiff" or the "Lieutenant"), by counsel, and states as follows in opposition to Defendant Joe Gutierrez's and Defendant Daniel Crocker's (jointly, the "Defendants") Partial Motion pursuant to Rule 12(b)(6) to Dismiss Plaintiff's Complaint Regarding Claim for First Amendment Violation.

## I.     INTRODUCTION AND RELEVANT FACTS

On the night of December 5, 2020, defendants Gutierrez and Crocker, while uniformed and acting under the color of law, initiated a traffic stop of Lt. Nazario, who was also in uniform. The traffic stop ostensibly was for a missing, rear license plate. **ECF No. 1, ¶ 2, 13-14 and footnotes. 1-5.**  After Defendant Crocker activated his emergency lights on the dark road, the Plaintiff immediately slowed down (a fact that the Defendants noted contemporaneously) (**ECF No. 1, ¶ 15 and footnotes 6-8**), drove under the speed limit for a little more than a mile (**ECF No. 1, ¶ 16 and footnotes 9-11**), and pulled over in a well-lighted BP gas station (**ECF No. 1, ¶ 49 footnote 63**) for his and the officer's safety (**ECF No. 1, ¶ 49 footnote 63**). The Defendants

admitted his conduct was common, reasonable, and usually involved a "minority" (**ECF No. 1, ¶¶ 17 – 18 and footnotes 12-18; ¶ 50 and footnote 65-67**).  Despite the Lieutenant's prompt and continual compliance, and even though the Defendants admit that they saw the "missing" license plate when they exited their vehicle at the beginning of the stop (**ECF No. 1, ¶¶ 19 and 21 and footnote 21 – 24**), they escalated the situation without justification or excuse by immediately brandishing firearms, creating an illegal detention.  **ECF No. 1, ¶¶ 19 and 24 and footnotes 19 and 26.**  When the Lieutenant calmly and repeatedly asked what was going on, and asked for a supervisor, the Defendants issued inconsistent demands to get out of his car and/or put his hands out of the window (which he was already doing) and by saying that the Lieutenant should be afraid to get out of his vehicle. **ECF No. 1, ¶¶ 33-34 and footnotes 39-40.** The officers then employed death threats (**ECF No. 1, ¶¶ 26-30 and footnotes 29-36**), pepper-spray (**ECF No. 1, ¶¶ 39 and footnotes 48-49**), and further physical assaults (**ECF No. 1, ¶ 45 - 46 and footnotes 57-60**). Finally, even while acknowledging it was the Lieutenant's First Amendment right, the Defendants ended the encounter with a threat to destroy the Lieutenants military career through criminal charges—charges that the Defendants lacked probable cause to institute—and with a threat not to release the Lieutenant from the illegal detention.  **ECF No. 1, ¶¶ 55-56 and 58- 63 and footnotes 73-77 and 79 – 108.**  They made these threats to extort or induce the Lieutenant's present and future silence, to get the Lieutenant to agree to "let this go"—that is, to induce him to not protests or report their illegal actions.  **ECF No. 1, ¶¶ 57 and footnote 78**.

It was not until the Lieutenant acquiesced to their extortion—until he was silenced with an implicit promise of future silence, by the threats of retaliatory prosecution lacking in probable cause and the continued illegal detention—that the Defendants let Lt. Nazario leave. **ECF No. 1,**

¶¶ 58 and footnotes 79-80.  However, the Defendants did not stop there.  After returning to the police department, the Defendants conferred among themselves and falsified their reports. **ECF No. 1, ¶¶ 58 – 63 and footnotes 79 – 108**. The Defendants included almost identical, material, false statements of fact (**ECF No. 1, ¶¶ 58 – 63 and footnotes 79 – 108**) and material factual omissions (**ECF No. 1, ¶¶ 58 – 63 and footnotes 79 – 108**) in their reports.  These reports serve as a continuing threat of retaliation, and, if true, would have justified the career-killing charges the Defendants used to extort and induce the Lieutenant's silence. These charges included obstruction of justice with force, eluding, and assault on a law enforcement officer. **ECF No. 1, ¶¶ 58 – 63 and footnotes 79 – 108.**[1] The Defendants lacked probable cause for them all.  **ECF No. 1, ¶¶ 58 – 63 and footnotes 79 – 108.**  The Defendants then filled out a witness subpoena for them to testify in a hearing where the Lieutenant was to be charged with *at least* obstruction of justice. **ECF No. 58, and footnote 79 and ECF No. 1-11.**

When Lt. Nazario finally spoke up publicly, months later and after wrestling with the fear of retaliation (**ECF No. 1, ¶ 64(g)**), he did so with a federal lawsuit.  This lawsuit contained three § 1983 counts under the Fourth Amendment – excessive force, illegal detention, and illegal search; a single § 1983 count under the First Amendment; and attendant state-law claims of assault, battery, false imprisonment, and illegal search.  This Complaint (**ECF No. 1**) is extensively footnoted and includes the officers' body-worn camera footage and the Lieutenant's cell-phone footage (**ECF No. 1-5, and 7** (exhibits 1-5 to the Complaint)), as well as both of the officers' use of force and incident reports (**ECF Nos. 1.4 – 1.7** (exhibits 7-10 to the Complaint)

---

[1] Complaint Exhibits 8, p. 2 and 9, p. 2; **CM/ECF Nos. 1-5 and 1-6.** Although the lieutenant also alleges in his complaint that the Defendants lacked probable cause for the failure to display license plate citation, these are *not* the charges that the Defendants intended to be, and the Lieutenant understood to be the "career ending charges", rather those are the eluding, the obstruction with force, and the assault on a law enforcement officer.

and the Witness Subpoena **ECF No. 1-11.** These are  among the exhibits referenced in the complaints 108 footnotes.

The Defendants have filed a 12(b)(6)[2] motion for the First Amendment claims *only*. **ECF Nos. 16 and 19**.  Therefore, the Defendants effectively concede the Complaint plausibly alleges a claim for the Fourth Amendment and state law claims.  Distilled, the thrust of the Defendant's 12(b)(6) motion is that (1) the Lieutenant failed to plead a lack of probable cause, or if he did, it was an "unsupported allegation or inference" (**ECF Nos. 16 p. 2**); (2) Since the Defendants did not actually charge the Lieutenant, they took no adverse actions that would have chilled the speech of anyone (**ECF Nos. 16 p. 4  - 5**)**;** and (3) the Lieutenant cannot establish the necessary causal nexus between the any alleged adverse action on the part of the Defendants and the protected expressive conduct of the Plaintiff. (**ECF Nos. 16 p. 4  - 5**).

As explained below, the Defendant's argument fails.  The "probable cause" argument fails because Lieutenant has properly alleged facts to demonstrate a complete lack of probable cause, extensively supported with footnotes directing the Court to timestamps on the video evidence and the Defendants' own falsified, official documents.

The claim that the Defendants never actually charged the Lieutenant and thus took no adverse action fails as it was the actual threats of prosecution and continued detention on the Defendants made to the Lieutenant on December 5, 2020, that were the adverse action sufficient for the violation. The First Amendment case law does not require the Defendants to have initiated the malicious prosecution, to commit a further Fourth Amendment violation, to complete the tort.  The threat communicated is sufficient.

---

[2] The Defendants have styled part of their motion and brief as a FRCP 12(b)(2) motion.  However, they have failed to argue any 12(b)(2) issues, and in any event the Constitutional questions are Federal Questions over which this district court has original jurisdiction, and all the defendants reside within the territory of the Norfolk division. Thus any 12(b)(2) argument they could make fails.

Finally, the lack of probable cause and the Defendants' own express motives for their adverse actions caught on their own cameras are sufficient as a matter of law for the inference that the Lieutenant's protected First Amendment activity was the but-for cause of the Defendants' adverse actions and express threats.  Therefore, the Lieutenant has plausibly alleged that the Defendants violated his First Amendment rights, and this court should deny the Defendant's partial 12(b)(6) motion.

## II.      STANDARD OF REVIEW – RULE 12(b)(6) MOTION TO DISMISS

A complaint achieves facial plausibility sufficient to survive a 12(b)(6) motion when the facts and reasonable inferences support a reasonable inference that the defendant is liable for the conduct alleged.  Bell Atlantic Corp v. Twombly, 550 US. 544, 570 (2007); see also, Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Additionally, the "complaint [is viewed] in the light most favorable to the plaintiff and . . . all well-pleaded allegations" are accepted as true. South Carolina Dept. of Health & Environ. Control v. Commerce & Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).

A motion to dismiss under FRCP 12(b)(6) does not resolve contests surrounding the facts, the merits of the claim, or the applicable defenses, Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), other than resolving them in the light most favorable to the Plaintiff, Commerce & Industry Ins. Co., 372 F.3d at 255.  Further, beyond the facts alleged, the court is required to "draw[] all reasonable [. . .] inferences from those facts in the plaintiff's favor [. . .] ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Johnson v. Portfolio Recovery Assocs., LLC., 682 F. Supp. 2d 560, 567 (E.D.Va. 2009).

### III.     FIRST AMENDMENT LAW

It is clearly established law that the First Amendment safeguards the right to petition the government for a redress of grievances. This right is "one of the most precious of the liberties safeguarded by the Bill of Rights." Lozeman v. City of Rivera Beach, 138 S. Ct. 1945, 1954-55 (2018); BE&K Constr. Co, v. NLRB 536 U.S. 516, 524 (2002).

In cases alleging violations of the First Amendment, injury in fact may be established by a showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression. Bond v. United States, 742 F. App'x 735, 737 (4th Cir. 2018). Such claims may arise from adverse conduct of a government agent targeting speech. E.g., Blankenship v. Manchin, 471 F.3d 523, 530 (4th Cir. 2006). Those claims generally have three elements: (1) the speech at issue must be constitutionally protected, (2) the defendant must engage adverse action, and (3) there must be a causal link between the adverse action and protected speech. See Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).

With regard to the first element, when the claim involves retaliation for prior speech, the Court will determine whether the prior speech was constitutionally protected. Id. Where, however, the claim involves a *prospective* restraint on future speech, the Court will consider whether the future speech so targeted is constitutionally protected, and whether the government conduct was content neutral or targeted the constitutionally protected speech.  See, e.g., Bantam Books Inc. v. Sullivan, 372, U.S. 58, 67 (1963) (suppressing publication and distribution of books with "objectionable content"); Ward v. Rock Against Racism, 491 U.S. 781, 792-73 (1989) (discussing content neutrality in prospective restraint).  ( Cf. PETA, Inc. v. Stein, 737 F. App'x 122, 128-29 (4th Cir. 2018); Vista-Graphics, Inc. v. Va. DOT, 682 F. App'x 231, 235 (4th Cir. 2017); Cooksey v. Futrell, 721 F.3d 226, 240 (4th Cir. 2013).  However, as the Supreme

Court has warned, *any* system of prospective restraint on constitutionally protected future speech "comes to this Court bearing a heavy presumption against its constitutional validity." See, Sullivan, 372, U.S. at 70.

Under the second element, determining whether a plaintiff's First Amendment rights were adversely affected by retaliatory conduct is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts. Suarez Corp. Indus., 202 F.3d at 686. A plaintiff alleging retaliation does not need to show that the action taken in response to the plaintiff's exercise of constitutional rights independently deprived the plaintiff of a constitutional right. Such a rule would make a cause of action for retaliation wholly redundant of the protections provided by the Constitution itself. Am. Civil Liberties Union, Inc. v. Wicomico Cty., 999 F.2d 780, 786 n.6 (4th Cir. 1993).

Where there is no special relationship between the speaker and the retaliator, however, speech of a government agent constitutes adverse action if it is threatening, coercive, or intimidating so as to intimate that punishment, sanction, or adverse regulatory action will imminently follow. Blankenship, 471 F.3d at 528. The test is an objective one; namely, the conduct must be such that it must chill the speech of a person of ordinary firmness similarly situated to the plaintiff. Id. at 530; Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 416-18 (4th Cir. 2006). The plaintiff need not demonstrate that they ceased their First Amendment protected activities to prevail on the person of ordinary firmness standard, as the cause of action targets conduct that tends to chill such activity, not just conduct that freezes it completely. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

The plaintiff establishes a prima facie case of causation if the protected speech at issue was a substantial or motivating factor in the adverse action. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977).

When the adverse action pertains to an arrest or citation, the plaintiff may have to plead that the arrest or citation was lacking probable cause, though this rule is not absolute. Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019) (plaintiff must establish lack of probable cause or provide objective evidence that similarly situated persons were treated differently); Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018) (probable cause irrelevant where City acted on a predetermined policy of retaliation).

However, the lack of probable cause in a case of an actual or threatened arrest has "powerful evidentiary significance" of constitutionally impermissible causative animus and that establishes an actionable First Amendment violation.  See, Hartman v. Moore, 547 U.S. 250 260-61 (2006); Nieves, 139 S. Ct. at 1727; Lozman, 138 S. Ct. 1945 (2018).

## IV.    <u>ARGUMENT</u>

### IVa.  THE PLAINTFF HAS SUFFICIENTLY ALLEGED THAT THE DEFENDANTS LACKED PROBABLE CAUSE.

In their brief, the Defendants, rely extensively on Hartman v. Moore, 547 U.S. 250 (2006) for the proposition that in this matter, the Lieutenant must allege the Defendants lacked probable cause to either continue to detain him, or for the felony and misdemeanor charges they threatened to bring.[3]  **ECF No. 16.**, **pp. 3-7**. And indeed, Hartman and its progeny stand for the

---

[3] Although the Plaintiff maintains that the initial stop was unconstitutional, the threatened traffic ticket, an infraction, is not the charge that the Defendants intended to have been career-killing.  Those charges would have the eluding, the obstruction, and the assault, and the Defendants accused the Lieutenant of both eluding and obstruction to his face during the traffic stop.  E.g., **ECF No 1., ¶ 36 and footnotes 41 and 42.**  Thus, even if this Court were to determine that pursuant to the standard of review of a 12(b)(6) the Lieutenant has failed to allege the Defendants lacked probable cause to keep the Lieutenant detained for the traffic violation, his First Amendment claims are still viable under the threatened malicious prosecution theory.

proposition that a lack of probable cause is amongst the most compelling of all circumstantial evidence available to demonstrate the Defendant's impermissible animus, causation, and an actionable First Amendment violation.  E.g., Hartman, 547 U.S. at 260-61; Lozman, 138 S. Ct. at 1954-55.

Here, the Lieutenant has sufficiently pled and established the lack of probable cause for these charges. These allegations are then supported in the footnotes citing to the exhibits – including time stamps references to the officers' body-worn camera footage, and the Lieutenant's cell phone footage, as well as particular falsities or omissions in the Defendants' reports. Thus, any argument that the Defendants may make regarding probable cause fails.  The facts and law are summarized as follows.

**THE INITIAL STOP:** To have initiated and continued a *legal* traffic stop, the Defendants must have had probable cause, or *at least* a reasonable, articulable suspicion, that the Lieutenant had committed some traffic infraction.  E.g., Terry v. Ohio, 392 U.S. 1 (1968).  Yet Defendant Crocker told the Lieutenant that Crocker *saw* the Lieutenant's license plate upon exiting Crocker's vehicle at the beginning of the stop **E.g., ECF No. 1, ¶ 60 and footnotes 81-83**. The Complaint demonstrates that the license plate is visible in *both* the officers' body worn cameras at the beginning of the traffic stop, by citing to the footage at the beginning of the stop where it is visible.  **E.g., ECF No. 1, ¶¶ 19 and 21 and footnotes 21 and 22-23.**  These allegations are sufficient to establish a lack of probable cause (or even a reasonable, articulable suspicion) to detain or continue to detain the Lieutenant upon stopping the vehicle.

**ELUDING:**  Virginia defines eluding police as a willful and wanton disregard of a visible or audible signal from law enforcement to bring a motor vehicle to a stop.  E.g.,  Va. Code. § 46.2-817.  Crocker, at least, even uses the "willful and wanton" language in his reports.

**ECF No. 1-5, p. 1.**  However, the complaint explicitly denies that the Defendants had probable cause to believe that the Lieutenant eluding police, let alone willfully and wantonly.  **E.g., ECF No. 1, ¶¶14-17 and 60(a) – (c), footnotes 2-13 and 81-87**.  The Complaint supports the allegation with footnotes and citations to the record, videos, and reports, demonstrating that (1) the Lieutenant almost immediately heeded the Defendant's display of authority by slowing down to well below the speed limit (**E.g., ECF No. 1, ¶ 15 and footnotes 6-8**) – a fact the Defendants themselves acknowledged (**Id.**). He only continued to drive in order to pull over to a well-lighted public area for everyone's safety (**E.g., ECF No. 1, ¶16-17 and footnotes 9-13**), and the Defendants acknowledged this happens all the time and was reasonable (**E.g., ECF No. 1, ¶ 17 and footnotes 12-13**). These allegations are sufficient to establish a lack of probable cause (or even a reasonable, articulable suspicion) to have accused or charged the Lieutenant with eluding.

> **OBSTRUCTION OF JUSTICE:**  Generally speaking, in Virginia, obstruction of justice with force (a class 6 felony), requires something more than merely making an officer's job more difficult.  It requires the use of force against the officer to obstruct the officer's performance of their duties.  Obstruction without force, requires either physical resistance or threats of verbal violence.  E.g., <u>Brown v. City of Danville</u>, 44 Va. App. 586, 579 (2004); <u>Virginia Code</u> § 18.2-406(C).  In his complaint the Lieutenant has alleged that he complied with the Defendant's show of authority, pulled his vehicle over, and was forced to choose which of their inconsistent commands to obey. He then cites to the body worn camera footage to demonstrate the same. **E.g., ECF No. 1, ¶¶ 14-17 and 23-26 and footnotes 2-13 and 25-30**.  In this conduct, Lieutenant Nazario acted reasonably, notwithstanding the fact that the officers had their guns drawn and were refusing to answer even the simplest of questions such as "Why am I being pulled over?" **E.g., ECF No. 1, ¶ 25  and footnotes 27-28.**  The Lieutenant refused to exit the

vehicle after Defendant Gutierrez had threatened to murder him (**E.g., ECF No. 1, ¶¶ 27 – 29 and footnotes 31-35**), and then said the Lieutenant *should* be afraid to exit his vehicle (**E.g., ECF No. 1, ¶¶ 33 – 35 and footnotes 39 – 40**).  Significantly it would not have been possible for the Lieutenant to take of his seatbelt and obey the command to exit the vehicle at the same time as obeying the other inconsistent command to keep his hands outside the vehicle.  These allegations are sufficient to establish a lack of probable cause (or even a reasonable, articulable suspicion) to have accused or charged the Lieutenant with either species of obstruction.

      **ASSAULT ON A LAW ENFORCEMENT OFFICER:** In Virginia, assault on a law enforcement officer (a class 6 felony) and requires a harmful or offensive touching (or possibly a reasonable apprehension thereof) of a law enforcement officer without justification or excuse, with the intent to cause bodily harm to the law enforcement officer.  See, e.g.,  Montague v. Commonwealth, 278 Va. 532, 540 (2009); Adams v. Commonwealth, 33 Va. App. 463, 468 (2000);  Virginia Code § 18.2-57(C).  In Virginia, a person is entitled to use force to resist an unlawful arrest, and to resist a lawful arrest accompanied by excessive force.  See, e.g., Polk v. Commonwealth, 4 Va. App. 596, 596 (1987).

      To support their claims of assault on a law enforcement officer, the Defendants claim that the Lieutenant struck Deputy Crocker.  **E.g., ECF No. 1, ¶¶ 60(d)-(e) and 62(b) and footnotes 91-96 and 103-104** which presumably is the foundation of the assault on a law enforcement officer charge.  The Complaint explicitly stated that this is false (**E.g., ECF No. 1, ¶¶ 60(d)-(e) and 62(b)**), and then via the footnotes and exhibits demonstrates the *complete lack of evidence of this* in the video footage (**E.g., ECF No. 1, footnotes 92-93, 95-96, and 104-105**).  These allegations are sufficient to establish a lack of probable cause (or even a reasonable, articulable suspicion) to have accused or charged the Lieutenant with assault on a law enforcement officer.

**IVb.  THE DEFENDANTS' ARGUMENT BASED OF LACK OF CRIMINAL PROSECUTION OR SUBSEQUENT ACTION FAILS.[4]**

The Defendants claim that the Court should grant their 12(b)(6) motion because the Lieutenant has not asserted facts to support the second element, that "defendants' action caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protected activity."  **ECF No. 16, p. 4**.  This argument seems to come in two forms: the first is the argument that the law itself requires the criminal action to be initiated for the constitutional tort. **Id. at p. 5-6**.  The Second is the argument that the Plaintiff failed to plead that the Defendants took any adverse action that could have chilled the Lieutenant's speech.  **Id. at 4-5.**

The Defendants' claim that the First Amendment caselaw requires the Defendants to have actually charged the Lieutenant to complete the Constitutional tort is flatly wrong.  E.g., Blankenship, 471 F.3d 523 (4th Cir. 2006) (the threat of imminent regulatory action), see, also, Suarez, 202 F.3d at 687-88 (4th Cir. 2000) (no prosecution necessary where there is a **threat**, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow)(emphasis added).  Pursuant to both Blankenship, and Suarez, the Lieutenant as appropriately alleged and supported with facts, threat intimating imminent punishment.  **ECF No. 1, ¶¶ 56-58 and footnotes 75 – 80.**

The Defendants claim that they took no action that would have discouraged or affected the Plaintiff from engaging in a protected activity is also flatly contradicted by the facts in the

---

[4] The Defendants have conceded that the Lieutenant was and would have (had he complained) engaged in protected first amendment activity.  **ECF No. 16, p.4.**  Thus, there is no need to address the first prong of the analysis here.  Further, as the Defendants have stated in their own words that their threats of prosecution were intended to prospectively silence this speech **(ECF No. 1 ¶¶ 56-58 and footnotes 75-80)** the Lieutenant has properly alleged that this prospective restraint was not content neutral and thus comes to the court bearing a heavy presumption against its constitutional validity.  See, e.g., Sullivan, 372 U.S. at 70.

complaint and is a misstatement of the law.  First, it is not necessary for the Lieutenant's conduct to have been chilled to complete the Constitutional tort, rather the conduct must objectively chill the speech of a similarly situated person of ordinary firmness.  <u>Ehrlich</u>, 437 F.3d at 416-18; <u>Constantine,</u> 411 F.3d at 500.  Second, the Lieutenant has appropriately alleged facts sufficient to demonstrate action on the part of the Defendants that would chill the speech of a similarly situated person of ordinary firmness the threat to continue his detention and imminently charge him, without probable cause, with multiple felonies and misdemeanors in an attempt to destroy his life and military career if he spoke up about their conduct.  **ECF No. 1, ¶¶ 56-63 and 64(a) and footnotes 75 – 108.**  The facts show that Lt. Nazario availed himself of the "choice" to let it go, chilled and repressed his speech at the scene, and was released under an implicit promise that his future speech would remain chilled.  Under the circumstances, and the facts pled in the complaint, the reasonable inference is that this conduct – facing a continued arrest, malicious criminal felony prosecution, and the loss of a career would have the tendency to chill the speech of a person of ordinary firmness.    Therefore, the Defendants' 12(b)(6) motion based on an alleged lack of adverse action fails.

## IVc.  THE DEFENDANTS CLAIM BASED ON THE LACK OF CAUSAL NEXUS FAILS.

The Defendants claim that since there was no ultimate prosecution, the Lieutenant has failed to and cannot establish the chain of causation between any protected expressive conduct and adverse actions.  They claim that what the Lieutenant is *actually* describing is the "beginnings of a *mere* retaliatory investigation."[5]  **ECF No. 16, pp. 5-7.**  As discussed in part IV(b), *supra*, the initiation of the criminal process is not necessary to complete the First

---

[5] This is a fatal admission under <u>Blankenship</u> for the purposes of a 12(b)(6) ruling.

Amendment tort.  E.g., Blankenship, 471 F.3d 523, Suarez, 202 F.3d at 687-88 .  Second, it was the *threats* that the officers made to charge the Lieutenant and the threat to keep him detained to chill and repress his speech at the scene and to prospectively chill the Lieutenant's First Amendment speech in the future[6], that are the actionable adverse actions.  The lack of probable cause for the threats of criminal prosecution, see, part IV(a), *supra*, whose immediacy the Defendants communicate directly to the Lieutenant that provide powerful evidentiary significance of the causal nexus under Hartman, 547 U.S. at 260-61.

It is the Defendants' own words, that if "**[Lt. Nazario] fought it [their actions] [or if he] argued** … which was his right as a citizen [**they] would charge** him with eluding, obstruction, and assault on a law enforcement officer], have [Lt. Nazario] go to court, notify command, and do all that."  However, **if "[Lt. Nazario would] chill and let this go"** (i.e., their illegal and unconstitutional behavior)" **they wouldn't file charges and they would "take the handcuffs off**" and Lt. Nazario could go free ( **ECF No. 1, ¶ 56 and footnotes 75 – 76**) that provide powerful evidentiary significance pursuant to Doyle, 429 U.S. at 287, that the Lieutenant's protected activities were a substantial or motivating factor for the Defendants' adverse action.  The Defendants' 12(b)(6) cannot survive either, let alone both.  Therefore, the motion should be dismissed.  The Defendants have engaged in misdirection, again it was the threat of malicious prosecution and continued detention that form the adverse action and their own words demonstrate the causal nexus.

The Defendants also claim that although they acted dishonorably, such dishonorable conduct does not amount to a constitutional tort because they would have taken that action anyway.  They then cite Hartman for this proposition. **ECF No. 16, p. 6.**  It is quite absurd to

---

[6] Which again, comes to this court with the presumption of unconstitutionality.  See, Sullivan, 372 U.S. at 70.

think that <u>Hartman</u>, or any First Amendment caselaw would excuse the Defendant on the grounds that they would have threatened to arrest the Lieutenant without probable cause and subsequently forge government documents to substantiate the false arrest, even if they did not want to deter future speech. This is not what <u>Hartman</u> or any other caselaw stands for.

The Defendants try to use the claim that filling out the reports (while ignoring the witness subpoena) was normal and routine– (which is a terrifying claim in and of itself considering the content and purpose), and that it was more akin to closing out an investigation (which ignores the presence of the witness subpoena).  They further claim that since the Lieutenant did not see them until later, the subsequent reports are not relevant to the analysis.  But the false, forged[7] police reports are relevant to demonstrate the clear intent of the Defendants, and as evidence that the prior statements were in fact the threat that Lieutenant Nazario perceived them to be.  They demonstrate a continuing threat, steps taken towards effectuating the threat (even if not complete), a First Amendment violation after the Lieutenant's "release."  They demonstrate lack of mistake, malice, a concerted action, and go to credibility and this is relevant under all the claims in the Lieutenant's complaint.

Importantly for this 12(b)(6) motion the falsified/forged official documents, together with the completed witness subpoena summoning the Defendants to testify against the Lieutenant for Obstruction of Justice with Force **(ECF No. 58, and footnote 79 and ECF No. 1-11)** sufficiently demonstrate continuing the immediacy of the threat of criminal prosecution as discussed in <u>Suarez.</u>

This evidence of immediacy and of motive, when coupled with the threat of criminal prosecution for which the Defendants lacked probable cause, to silence the Lieutenant at the

---

[7] <u>E.g.</u>, <u>Campbell v. Commonwealth</u>, 13 Va. App. 33 (1991); Va Code §§ 18.2-168, 170, and 172.

scene and to prospectively silence the Lieutenant in the future is sufficient to complete the Constitutional tort for the purposes of the 12(b)(6) motion.  See, e.g., . Nieves, 139 S. Ct. at 1727; Lozman, 138 S. Ct. at 1954-55; Hartman, 547 U.S. at 260-61; Doyle, 429 U.S. at 287; Blankenship, 471 F.3d at 528; Ehrlich, 437 F.3d at 416-18.

## IVd. – THE PLAINTIFF HAS PROPERLY ALLEGED THAT THE DEFENDANTS VIOLATED HIS FIRST AMENDMENT RIGHTS.

Although the failure of the Defendants' arguments in their 12(b)(6) motion warrants it being overruled.  It is worthwhile to sketch a positive account of the plausibly pled First Amendment violations against the Defendants; that is to demonstrate that the Lieutenant has explicitly and plausibly alleged all three Suarez elements.  These elements again are (1) the speech at issue must be constitutionally protected, (2) the defendant must engage adverse action, and (3) there must be a causal link between the adverse action and protected speech. See, e.g., Suarez, 202 F.3d at 686.

## THE FIRST SUAREZ ELEMENT – CONSTITUTIONALLY EXPRESSIVE ACTIVITY

The first element that the Lieutenant must satisfy is to demonstrate that his speech was constitutionally protected.  See, Suarez, 202 F.3d at 686. The Defendants have admitted that the Lieutenant's speech was or would have been constitutionally protected (**ECF No. 16, p. 4**) and their own words demonstrate that their actions were targeting the content of the protected speech they believed he was going to make and that they needed to silence (**ECF No. 1, ¶¶ 56 – 58 and footnotes 75 – 80**).  This is sufficient to satisfy the 12(b)(6) pleading standard under the first element under Suarez, to establish the lack of content-neutrality and constitutional invalidity under Sullivan, 372, U.S. at 67 and Ward, 491 U.S. at 792-73.

**THE SECOND <u>SUAREZ</u> ELEMENT – ADVERSE ACTION CHILLING A PERSON OF ORDINARY FIRMNESS**

The second element that the Lieutenant must have plausibly alleged is that the Defendants engaged in adverse action sufficient to chill a person of ordinary firmness.[8] <u>See,</u> <u>Suarez</u>, 202 F.3d at 686; <u>Ehrlich</u>, 437 F.3d at 416-18; <u>Constantine</u>,411 F.3d at 500. The Lieutenant alleged that the Defendants accused him of eluding and obstruction (to his face), and then threatened to keep him illegally detained and to charge him with multiple felonies and misdemeanors for which they lacked probable cause, <u>see</u>, part IVa, *supra*, if he did not agree to remain silent.  **ECF No. 1, ¶¶ 36 and 55 - 58 and footnotes 41 – 42 and 73 – 80.**   Then, they went to the police station, falsified their reports **(ECF No. 1, ¶¶ 60 – 63 and footnotes 81 - 108** and drafted up a witness subpoena for them to testify against the Lieutenant for a hearing on "Obstruction of justice with force" **(ECF No. 58, and footnote 79 and ECF No. 1-11).**  These facts and their supporting documentation plausible allege that the Defendants engaged in multiple adverse actions against the defendant sufficient to chill not only the Lieutenant but a person of ordinary firmness.  Further, these actions demonstrate the immediacy element of the threatened charges under <u>Blankenship</u>, 471 F.3d at 528 (to the extent that immediacy is even necessary in this matter.)  Thus, the Lieutenant has satisfied the second element of the <u>Suarez</u> test.

**THE THIRD <u>SUAREZ</u> ELEMENT – A CAUSAL CONNECTION BETWEEN THE SPEECH AND THE DEFENDANTS' ACTIONS**

The third <u>Suarez</u> element that the Lieutenant must plausibly allege is a causal connection between the perceived speech and the Defendants' actions. <u>See,</u>  <u>Suarez</u>, 202 F.3d at 686.

---

[8] The Lieutenant also alleges that his activities were chilled (ECF No. 64(g)) which under is relevant evidence of whether a person of ordinary firmness would have been chilled.  <u>Constantine,</u> 411 F.3d at 500; <u>accord Balt. Sun</u> <u>Co.</u>, 437 F.3d at 419, <u>and Blankenship</u>, 471 F.3d at 530.

Although the causal relationship can be a very fact intensive process, the Court focused in on two elements, relevant to this 12(b)(6) discussion, which provide strong circumstantial evidence of causation: (1) when the protected speech at issue was a substantial or motivating factor in the adverse action, Doyle, 429 U.S. at 287, and (2) the lack of probable cause for the threatened or initiated criminal action.  Hartman, 547 U.S. at 260-61; Nieves, 139 S. Ct. at 1727; Lozman, 138 S. Ct. 1945 (2018).

As discussed in part IVa, *supra*, the Defendants lacked probable cause for the felonies and misdemeanors for which the threatened to charge the Lieutenant to extort/induce his silence at the scene and his silence in the future.  This alone, being such strong evidence under Hartman, provides the factual foundation for a plausible violation of the third Suarez element.  However, the Defendants (and the Complaint) go even further.

Pursuant to Doyle, another strong indicator of the causal animus is when the protected speech is substantial or motivating factor in the adverse action.  Doyle, 429 U.S. at 287.  The Defendants' own words provide us with the facts and evidence sufficient to demonstrate that the Lieutenant's speech was a substantial or motivating factor in the Defendants' adverse action. **ECF No. 1, ¶ 56 and footnotes 75 – 76**   Therefore, pursuant to Harman, and Doyle, by sufficiently alleging that the Defendants lacked probable cause and that the Lieutenant's speech was a substantial and motivating factor in the Defendants' actions, the Lieutenant has properly alleged the third element in the Suarez analysis.

Therefore, having properly alleged and supported all three elements of the Suarez test the Lieutenant has plausibly alleged that the Defendants actionably violated his First Amendment rights.  Therefore, the Defendants' 12(b)(6) motion should be denied.

## V.     CONCLUSION

The Defendants attacked a uniformed officer of the United States Army, illegally

detained him, illegally searched him, illegally beat and pepper-sprayed him, and then to try to

extort his silence--to induce him *not* to speak out about their conduct, which they knew to be

illegal--they threatened to harm him and his military career by charging him with felonies and

misdemeanors, knowing they lacked probable cause and by refusing to let him go unless he

remained quiet at the scene and agreed (at least implicitly to their satisfaction) to remain silent in

the future.  This was all caught on video. Then the Defendants returned to the police station and

falsified government documents to create a narrative of the encounter to support these false

charges should they need to deploy them.  Then they filled out a witness subpoena for

themselves to testify against the Lieutenant for *at least*, obstruction of justice.  These statements

are in the reports, and video footage from the officers and from the Lieutenant demonstrate how

false these narratives are.

By demonstrating all of this factually and supporting it in an extensively footnoted

complaint citing to particular moments in the video footage, and to the statements of the

Defendants themselves, Lieutenant Nazario has plausibly alleged facts that support his first

Amendment claim.  Thus, the Defendant's 12(b)(6) motion fails, and the Court should deny the

same.

The Defendant's arguments are borderline bad faith; the claims they have made lack

factual support.  To make their claims the Defendants must completely (and intentionally) ignore

that their claims lack factual support, they ignore the threats the Defendants made at the scene,

the statements they on the Defendants' own body worn camera footage,  the falsities in the

reports, the witness subpoena, and in large part, the relevant caselaw.  The record itself flatly

refutes their claims that the Plaintiff has not sufficiently factually supported his allegations. Their claims that absent actual criminal charges there can be no First Amendment violation occurred is likewise flatly contradicted by years of clearly established Supreme Court, Circuit Court, and District Court precedent. The Defendants' own words, the Defendants' own threats of malicious prosecution caught on the Defendant own body worn cameras flatly refute the Defendants' final argument that they took no steps that would have either been illegal or chilled a person of ordinary firmness and motivated by the Lieutenant's protected speech. Therefore, this honorable court should overrule the Defendant's 12(b)(6) motion.

**WHEREFORE**, Caron Nazario, the Plaintiff, by counsel and respectfully requests that this honorable court deny the Defendants partial 12(b)(6) motion and any further relief as this court deems warranted.

**This, the May 28, 2021.**

                         **Respectfully submitted,**

                         By: _/s/ Jonathan M. Arthur, Esq._
                              Counsel

                         Jonathan M. Arthur, Esq. VSB # 86323
                         j.arthur@robertslaw.org
                         Thomas H. Roberts, Esq. VSB # 26014
                         tom.roberts@robertslaw.org
                         Andrew T. Bodoh, Esq. VSB # 80143
                         andrew.bodoh@robertslaw.org
                         Thomas H. Roberts & Associates, P.C.
                         105 South 1st Street
                         Richmond, VA 23219
                         (804) 991-4308 (Direct)
                         (804) 783-2000 (Firm)
                         (804) 783-2105 (Fax)
                         _Counsel for Plaintiff_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court's CM/ECF system, which caused a Notice of Electronic Filing to be emailed to the following:

John B. Mumford, Jr. (VSB No. 38764)
Coreen A. Silverman (VSB No. 43873)
HANCOCK DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Tel: (804) 967-9604
Fax: (804) 967-9888
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
*Counsel for Defendant Joe Gutierrez*

Robert L. Samuel, Jr. (VSB No. 18605)
Richard H. Matthews (VSB No. 16318)
Anne C. Lahren (VSB No. 73125)
Bryan S. Peeples (VSB No. 93709)
PENDER & COWARD
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Tel: (757) 490-6293
Fax: (757) 502-7370
rsamuel@pendercoward.com
rmatthew@pendercoward.com
alahren@pendercoward.com
bpeeples@pendercoward.com
*Counsel for Defendant Daniel Crocker*

This the 28th day of May 2021

By: _/s/_ Jonathan M. Arthur, Esq.
Counsel