**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CARON NAZARIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | **Civil Action No.: 2:21-cv-00169-RCY-LRL** |
| v. ) | |
| ) | |
| JOE GUTIERREZ, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT JOE GUTIERREZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Joe Gutierrez, by counsel, states as follows in support of his Rule 56 Motion for Summary Judgment.

## I.     INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Caron Nazario asserts claims in this action arising out of a traffic stop on December 5, 2020 instituted by Defendants Joe Gutierrez and Daniel Crocker.  Gutierrez and Crocker (collectively, the "Officers") were acting in their capacity as uniformed police officers employed by the Town of Windsor, Virginia, at all times relevant to the stop.  The entirety of the traffic stop was recorded from multiple angles on the body worn cameras of the Officers, as well as by Plaintiff on his personal cell phone that he specifically set up for the purpose of documenting the traffic stop.  As such, there simply are no disputed facts relevant to this Motion, as everything that happened and was said during the traffic stop has been recorded.  And under these undisputed facts, each of Plaintiff's claims against the Officers fail as a matter of law.

Plaintiff's constitutional claims (Counts I to IV) against Officer Gutierrez fail as a matter of law, because as evidenced by the recordings of the traffic stop and other undisputed facts before

the Court on this motion  – (1) no violation of Nazario's constitutional rights occurred (i.e., Plaintiff cannot establish the elements of his constitution claims); and (2) assuming arguendo that a violation of Nazario's constitutional rights occured, the doctrine of qualified immunity bars these claims, there was no violation of a clearly established rights at the time of the Officer's conduct during the stop.

Plaintiff's state law claims fail on similar grounds – (1) under the undisputed facts before the Court in this motion, as a matter of law, Defendant Gutierrez did not engage in any tortious or actionable conduct during the stop so as to allow Plaintiff's state law claims to survive; and (2) even assuming that he did, Defendant Gutierrez is entitled to immunity with respect to his conduct and actions during the stop.  As such, for these reasons explained in more detail below, Defendant Gutierrez is entitled to summary judgment in his favor dismissing all of Plaintiff's claims against him in this action with prejudice.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO RULE 56(B)

1.      On December 5, 2020, at approximately 6:30 p.m., Nazario was driving Westbound on US 460 (Windsor Blvd) in Windsor, Virginia in a 2020 Chevrolet Tahoe. (Plaintiff's Objections to Defendant Gutierrez's Interrogatories are attached as Exhibit 1) (Ex. 1 at Interrogatory 16).

2.      Nazario purchased the vehicle in September of 2020, and his expired 30-day temporary New York license plate was affixed on the interior of the upper right-hand corner of his rear window.  (Ex. 1 at Interrogatory 20-21), (Caron Nazario's deposition transcript is attached as Exhibit 2) (Ex. 2 at 101:20-22), (Daniel Crocker's deposition transcript is attached as Exhibit 3) (Ex. 3 at 82:21-83:24, 107:17-108:6).

3.      Due to the vehicle's tinted windows obscuring his expired plates, the tags were not visible, as required under Va. Code Ann. § 46.2-715, which led Defendant Crocker to initiate the

traffic stop using the blue lights and sirens on his marked patrol car.  (Ex. 2 at 101:20-22), (Ex. 3 at 82:21-83:24, 107:17-108:6, 109:21-110:4), (Defendant Daniel Crocker's Responses to Plaintiff's First Discovery Requests are attached as Exhibit 4) (Ex. 4 at Interrogatory 1), (Daniel Crocker Body Worn Camera, CN-4 is attached as Exhibit 5) (Ex. 5 at 18:34:21).

4.      However, rather than yield to Defendant Crocker's blue lights and sirens, Nazario deliberately reduced his speed and continued traveling on Windsor Blvd for over a mile, passing numerous well-lit areas along the way that were not to his liking. (See Ex. 2 at 103:24-111:5; 143:20-25; 149:8-11), (Joe Gutierrez's deposition transcript is attached as Exhibit 6) (Ex. 6 at 105:14-106:2), (Ex. 4 at Interrogatory 1).

5.      Crocker, who was in the final phase of his police training, radioed dispatch that the driver was not stopping, and so Defendant Gutierrez, his assigned field trainer, responded to Crocker's call, and within minutes fell in behind the vehicles and activated the blue lights and sirens on his own marked patrol car. (Ex. 6 at 79:19-81:15, 83:18-84:5, 85:5-10), (Ex. 3 at 126:10-12).

6.      Despite having two marked patrol cars with blue lights and sirens pursuing him, Nazario proceeded for over a mile before veering across the road into a BP gas station, on the opposite side of his lane of travel and immediately prior to the blocked intersection with Church Street.  (Ex. 2 at 103:15-111:20), (Ex. 6 at 79:19-81:15, 104:15-106:2, 139:2-140:3), (Ex. 3 at 90:18-84:17), (Ex. 5 at 18:35:54).

7.      As soon as Nazario stopped at the gas station, Officer Crocker radioed that it was a "felony traffic stop", which is synonymous with a "high risk traffic stop", and so Officers Gutierrez and Crocker exited their patrol cars with weapons drawn while Officer Crocker issued multiple commands for the driver to lower his window and show his hands for a total of six ("6") times, to

3

which Nazario did not fully comply. (Ex. 6 at 104:15-106:2), (Ex. 3 at 90:18-94:17, 98:5-99:19), (Ex. 5 at 18:36:10).

8.     Officers Crocker and Gutierrez then lawfully commanded the driver to open his driver side door and exit his vehicle a combined total of fifty ("50") times over the next two minutes, during which time Nazario made no effort to obey and simply repeated his question "what's going on" to the officers and at one point responded to their lawful order with "I'm not getting out the vehicle, what's going on".  (Ex. 6 at 104:15-106:2), (Ex. 3 at 90:18-94:17, 98:5-99:19), (Ex. 2 at 112:12-21), (Ex. 5 at 18:37:00), (Mobile Phone Video of Caron Nazario is attached as Exhibit 7) (Ex. 7 at 0:00:19-0:00:24).

9.     As the encounter progressed, Gutierrez holstered his firearm and deescalated to non-lethal force, first with his taser. (Defendant Joe Gutierrez's Responses to Plaintiff's First Discovery Requests are attached as Exhibit 8) (Ex. 8 at Interrogatory 1), (Ex. 6 at 123:18-124:7).

10.     Despite being shown the taser and told he would be tased, Nazario disobeyed all commands and refused to exit the vehicle stating "for a traffic violation I do not have to get out of the vehicle". (Ex. 8 at Interrogatory 1), (Ex. 2 at 112:12-21, 121:10-122:11), (Ex. 5 at 18:38:35).

11.     As the officers drew closer to Nazario's door, and still faced with Nazario's persistent noncompliance, Officer Gutierrez deescalated further by holstering his taser and attempting to secure Nazario's arm with his hands. (Ex. 8 at Interrogatory 1), (Ex. 6 at 123:18-124:7), (Ex. 5 at 18:38:39).

12.     However, rather than comply, Nazario physically resisted by pulling his arm away from Officer Gutierrez, and stating, "get your hands off me" a total of five ("5") times, signaling his intention to not cooperate.  (Ex. 6 at 144:10-18), (Ex. 3 at 115:11-21), (Ex. 5 at 18:38:40).

13.     Officer Gutierrez then stepped back, drew and shook his cannister of OC spray as a warning to allow for Nazario to comply, to which Nazario immediately stated "don't do that" three ("3") times, signaling his understanding of the warning.  (Ex. 3 at 117:1-11), (Ex. 5 at 18:38:45).

14.     Officer Crocker then opened the driver's side door slightly, and Nazario actively resisted by using his elbow to keep the door closed and locked by activating the automatic electronic door locks on the door.  (Ex. 8 at Interrogatory 1), (Ex. 5 at 18:38:45).

15.     At that time, faced with Nazario's refusal to cooperate and further and physical resistance, Officer Gutierrez deployed his OC spray, which required a total of three attempts before he was able to successfully make contact with his facial area. (Ex. 8 at Interrogatory 1), (Ex. 5 at 18:39:00).

16.     It was only then, when subdued by and dealing with the effects of the OC spray, that Nazario finally agreed to exit his vehicle as ordered.  (Ex. 5 at 18:39:40).

17.     However, after exiting his vehicle, Nazario continued to refuse to comply with the Officers' orders to get on the ground to be securely detained and handcuffed, and he had to be physically forced to the ground while he continued to actively resist the Officers.  (Ex. 8 at Interrogatory 1), (Ex. 3 at 123:22-124:5), (Ex. 5 at 18:40:53).

18.     Once in handcuffs, Nazario was immediately assisted to his feet by the Officers and tended to by the Isle of Wight Emergency Services Department.  (Ex. 5 at 18:42:20).

19.     One of the paramedics at the scene asked Nazario if he had any weapons on him or in his vehicle, and Nazario answered in the affirmative and gestured toward his vehicle stating "It's right there, I'm sure you saw it already." (Ex. 3 at 130:20-132:17), (Ex. 5 at 18:43:25 and 18:53:12).

20.      Unbeknown to Officer Gutierrez at the time, at his own volition Officer Crocker then walked over to the vehicle observed a loaded 9 mm semiautomatic pistol next to the driver's seat in plain view, the handle of which is clearly visible on his body camera video when the driver's seat was empty. (Ex. 3 at 130:20-132:17), (Ex. 5 at 18:53:12).  He then retrieved the weapon, called in its serial number over his radio, and safely returned it to the vehicle unloaded.  (Ex. 5 at 18:53:25-18:54:24).

21.      Following the events that unfolded, Gutierrez had a brief discussion with Chief Riddle before returning to Nazario to inform him that as a Marine Corps veteran himself, and out of his general respect for the military and concern that a citation may affect Nazario's military record, he would like to not cite Nazario with failure to obey and failure to display a license plate, but if it was his preference, they could cite him for those offenses in order to allow him to formally contest the incident. (Ex. 8 at Interrogatory 1), (Ex. 5 at 19:05:55).


## III.     <u>LEGAL STANDARD FOR SUMMARY JUDGMENT</u>

An award of summary judgment under Fed. R. Civ. P. 56 is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, the moving part prevails.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  While the court draws all inferences in favor of the non-moving party, speculative assertions will not suffice.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1989).  Further, "[w]hen opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

IV.   **ARGUMENT**

A.   **Plaintiff's Fourth Amendment Constitutional Claims Fail As A Matter of Law (Counts I, II, and III)**

Inherent in the context of constitutional claims by plaintiffs against law enforcement officers, such as the Defendants, arising from conduct during traffic stops is the doctrine of qualified immunity.   "[U]nder the doctrine of qualified immunity, law enforcement officers performing discretionary duties "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Holly*, 533 Fed. Appx. 208, 215 (4th Cir. 2013), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).   Under applicable case law, the qualified immunity analysis affords the Officers the ability to defeat Plaintiff's claims at two stages.   As explained by the United States Supreme Court, "[t]his sets up the following two-pronged inquiry: (1) Did a constitutional or statutory violation occur?; and (2) If so, was the right violated clearly established at the time of the officer's conduct?"   *Id.*, quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part by *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   *Id.*, quoting *Saucier* at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Id., (citing  Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed.

2d 271, 106 S. Ct. 1092 (1986)).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id., at 284.

Plaintiff's constitutional counts fail under both of these prongs.  First, the undisputed facts before the Court establish that a constitutional violation did not occur.  Second, assuming such a violation did occur, any misapprehension by Defendant Gutierrez of the law or circumstances that prompted his actions were objectively reasonable.

1. **The Undisputed Facts Establish As A Matter of Law That No Constitutional Violation Occurred.**

   a. **Counts I. – III. - Fourth Amendment Claims – Unreasonable Seizure, Excessive Force, and Illegal Search.**

With respect to Plaintiff's Fourth Amendment claims, it is undisputed that no violation of Nazario's Constitutional rights occurred.  The body worn camera footage, written discovery responses, and party depositions clearly demonstrate: (1) that the traffic stop was lawful as Nazario's license plate was not clearly visible as it was affixed to the inside of his tinted rear window, (2) that the Officers' commands for Nazario to exit his vehicle were reasonable and supported by well-established law, (3) that the deployment of pepper spray by Gutierrez was lawful and reasonable as Nazario verbally stated his refusal to exit his vehicle and physically resisted the Officers' attempts to secure his arm and open his door, and (4) that further use of force by Gutierrez once Nazario was outside of the vehicle was lawful and reasonable as he was actively resisting the Officers' attempts to handcuff him.  (Ex. 5).

### i. The Traffic Stop Was Legitimate, Lawful, And Did Not Violate Any Constitutional Right.

For a traffic stop, qualified immunity requires the court to first determine whether the officer's reason for the traffic stop was legitimate. *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015). If the stop was legitimate, the court must determine whether the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop. *Williams*, 808 F.3d at 245. The scope of the officers' actions is determined by the "seizure's mission" – to address the traffic violation that warranted the stop and attend to related safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Therefore, the central question is whether the officer's actions, "viewed objectively and in its totality, is reasonably directed toward the proper ends of the stop." *United States v. Digiovanni*, 650 F.3d 498, 508 (4th Cir. 2011).

The body worn camera footage confirms, as well as the plaintiff at his own deposition, that his license plate was affixed to the interior of his rear tinted window, such that it was not clearly visible to Officer Crocker during the evening hours of December 5, 2020. (Ex. 2 at 101:20-22), (Ex. 3 at 82:21-83:24, 107:17-108:6, 109:21-110:4), (Ex. 5). Nazario further confirmed that on at least one prior occasion on November 7, 2020, when he was cited during daylight hours for speeding, that the officer required the use of a flashlight in order to read his temporary license plate from behind the tinted glass, which any reasonable person would conclude that it was not clearly visible to the naked eye during night time hours. (Ex. 2 at 101:20-102:25), (November 7, 2020 Traffic Stop, CN-3063 is attached as Exhibit 9) (Ex. 9 at 2:00-5:00), (Ex. 5). Viewing these facts in the light most favorable to the non-moving party, the reason for initial traffic stop itself was legitimate, and it therefore did not violate Plaintiff's constitutional right nor did it run afoul of any applicable statutory authority. *Williams* at 245.

### ii.  *The Officers' Commands to Plaintiff to Exit His Vehicle Were Lawful, Reasonable, And Did Not Violate Any Constitutional Right.*

The U.S. Supreme Court has already held that a police officer may ask a driver to step out of their vehicle during a lawful traffic stop, as the additional intrusion into the driver's personal liberty occasioned by the order to get out of the car "can only be described as de minimis". *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977).  The Court reasoned that the interests of officer safety during traffic stops, even during routine stops in which a driver does not otherwise exhibit elusive or strange behavior.  *Id.*

In the instant matter, the Officers' orders for Nazario to exit his vehicle were therefore lawful, even without factoring in his apparent disregard for the Officers' blue lights and sirens and sudden veer into the BP gas station that would raise any reasonable Officers' suspicions that he was seeking to evade.  (Ex. 6 at 104:15-106:2), (Ex. 3 at 90:18-94:17), (Ex. 5).

### iii.  *Officer Gutierrez's Use of Force to Detain Plaintiff Was Lawful, Reasonable, And His Actions Did Not Violate Any Constitutional Right.*

The rights protected by the Fourth Amendment include "the right to be free of arrests, investigatory stops, or other seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). "In assessing the objective reasonableness of the force used, a court must focus on the moment that the force is employed, in light of the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses and immediate threat to the safety of the officers or others,  . . . whether he is actively resisting arrest or attempting to evade arrest by flight, and the extent of the plaintiff's injury." *Thomas v. Holley*, 533 Fed. Appx. 208, 215 (4th Cir. 2013) (internal citation omitted); *Graham v. Connor*, 490 U.S. 386, 395-96, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

10

of hindsight." *Graham* at 396. "'[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham*, at 396, (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973)). "The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain and rapidly evolving— about the amount of force that is necessary in a particular situation." *Thomas v. Holly*, 533 Fed. Appx. 208, 215 (4th Cir. 2013), (quoting *Park v. Shiflett*, 250 F.3d 843, 853 (4th Cir. 2001)). "At the summary judgment stage, once we have viewed the evidence in the light most favorable to the nonmovant, the question of whether the officer's actions were reasonable is a question of pure law." *Id.*, (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011)).

*Thomas* involved a case by a plaintiff against multiple police officer defendants wherein the plaintiff claimed that that the defendant officer had violated his Fourth Amendment rights when the officer tasered him twice and pepper sprayed him in the course of the arrest while the plaintiff resisted arrest throughout the encounter. *Thomas v. Holley*, 533 Fed. Appx. 208 (4th Cir. 2013). However, the Fourth Circuit cited the four-factor reasonableness analysis from *Graham v. Connor*, and held that the defendant officer was entitled to qualified immunity on the excessive force claims. *Id.* This four-factor analysis required the court to assess: (1) the severity of the crime at issue, (2) whether the plaintiff posed an immediate threat to the safety of the defendant officer or others, (3) whether the plaintiff was actively resisting arrest, and (4) the extent of the plaintiff's injuries. *Id.* at 215-17.

For the first factor concerning the severity of the crime at issue, the Officers personally witnessed what they reasonably perceived to be misdemeanor offenses committed by Plaintiff in their presence: failure to obey under Va. Code Ann. § 18.2-464 and obstruction of justice under

Va. Code Ann. § 18.2-460, both of which followed a legitimate traffic stop for Plaintiff's failure to display the necessary state-issued tags as required under Va. Code Ann. § 46.2-715.  Plaintiff's failure to obey and obstructive behavior has been confirmed by him at his own deposition, as well as by a plain viewing of the body camera footage in evidence, in which he not only failed to willingly follow the many lawful commands given to him over the course of the traffic stop, but that he also outright stated in opposition to the Officers, "for a traffic violation I do not have to get out of the vehicle", which confirmed his intention to not obey or cooperate. (Ex. 8 at Interrogatory 1), (Ex. 2 at 112:12-21, 121:10-122:11), (Ex. 5 at 18:38:35).

For the second factor concerning whether the Plaintiff posed an immediate threat to the Officers, it is undisputed that Plaintiff continued to drive his vehicle along his original route for over a mile after Crocker's blue lights and sirens were active, passing numerous illuminated parking lots along the way.  (Ex. 6 at 104:15-106:2), (Ex. 3 at 98:5-99:19), (Ex. 5).  It is also undisputed that Officer Gutierrez also observed that Nazario refused to obey lawful commands and was fully noncompliant with the officers, and in at least two occasions stated his intention to not exit his vehicle as ordered. (Ex. 2 at 112:12-21, 121:10-122:11), (Ex. 5), (Ex. 7 at 0:00:19-0:00:24).  Based on this information, and because all police officers are readily aware that even the simplest of traffic stops can quickly turn deadly, it was reasonable for Gutierrez to be on high alert and perceive Plaintiff's behavior as a potential threat to the safety of himself and Officer Crocker.

The third factor involves an analysis of whether the plaintiff was actively resisting arrest or detainment.  In the case at bar, it is undisputed that Plaintiff refused to comply with the officers' orders and physically resisted being removed from his vehicle and from being handcuffed during the encounter.  (Ex. 8 at Interrogatory 1), (Ex. 2 at 112:12-21, 121:10-122:11), (Ex. 5).  It is also

undisputed that Plaintiff physically resisted the Officers' attempts to remove him from his vehicle by both pulling himself from Officer Gutierrez's grip as well as preventing Officer Crocker from opening his driver's side door.  (Ex. 8 at Interrogatory 1), (Ex. 6 at 144:10-18), (Ex. 5 at 18:38:40). Only at that time, when faced with Nazario's repeated refusal and physical resistance to cooperate and exit his vehicle, Gutierrez deployed his OC spray, which required a total of three attempts before he was able to successfully make contact with the target area. (Ex. 8 at Interrogatory 1), (Ex. 5 at 18:39:00).   It was only then, when subdued by and dealing with the effects of the OC spray, that Nazario finally agreed to exit his vehicle as ordered.  (Ex. 5 at 18:39:40). Officer Gutierrez therefore used the minimum force necessary by using OC spray to subdue the Plaintiff as he only chose to do so after having failed to safely do so using his hands, and thus this third factor in the analysis favors the Officers.

Further, after exiting his vehicle, Nazario continued to refuse to comply with the officers to get to ground to be securely detained and handcuffed.  (Ex. 8 at Interrogatory 1), (Ex. 3 at 123:22-124:5), (Ex. 5 at 18:40:53).   Because of Nazario's active resistance to the Officers' attempts to safely guide him to the ground, Officer Gutierrez needed to utilize knee strikes in order to force compliance with their lawful orders and in carrying out the temporary detainment.  (Ex. 8 at Interrogatory 1), (Ex. 3 at 123:22-124:5), (Ex. 5 at 18:40:53).   Once again, Officer Gutierrez used the minimum force necessary by choosing to use knee strikes to subdue the Plaintiff as the Officers had already failed to safely do so using only their hands, and thus this third factor in the analysis also favors Officer Gutierrez.

The fourth and final factor is the extent of the injury sustained by the plaintiff.  Nazario has alleged only psychological injuries and post-traumatic stress as a result of the actions of Officer Gutierrez.   In fact, Nazario never sought medical assistance for any physical injury that he

allegedly suffered, and he did not bother to seek out medical care for any alleged resulting psychological injuries until March of 2021. (Ex. 2 at 45:7-13, 47:2-16).  While his injuries are more than de minimis, they are far less than he would be expected to suffer in the course of physically resisting police officers attempting to carry out their duties.  No reasonable factfinder could therefore conclude that the force utilized was in any way excessive, as Plaintiff suffered no physical injuries during the course of his active resistance.  *Amon v. Stubbs*, Civil Action No. 3:11CV491-HEH, 2011 U.S. Dist. LEXIS 140563 (E.D. Va. Dec. 7, 2011).

After consideration of these four factors, it is clear that Officer Gutierrez's actions in removing Nazario from his vehicle and subduing him in order to safely detain him, despite the Plaintiff's being psychologically injured in the process, weighs in favor of finding that Officer Gutierrez was objectively reasonable and safe in his actions.  Nazario's initial illusive behavior immediately prior to stopping his vehicle, subsequent refusal to comply with the Officers' lawful orders to exit his vehicle, announcement to the Officers that he would not obey their lawful orders, and physical resistance to the detention left the Officers with no other alternative than to use minimal, nonlethal force to obtain compliance.   Thus, Officer Gutierrez's actions were lawful and did not violate Plaintiff's Fourth Amendment rights.

### iv.   *Gutierrez Had No Knowledge of Any Alleged Search or Seizure of Plaintiff's Firearm That Took Place, Nor Was it Performed With His Consent, Direction, or Participation*

Unbeknownst to Officer Gutierrez at the time, Officer Crocker observed a loaded 9 mm semiautomatic pistol next to Nazario's driver's seat in plain view, the handle of which is clearly visible on his body camera video when the driver's seat was empty. (Ex. 3 at 130:20-135:7), (Ex. 6 at 127:20-128:7), (Ex. 5 at 18:53:12).  He then retrieved the weapon, called in its serial number over his radio, and safely returned it to the vehicle unloaded.  (Ex. 3 at 130:20-135:7), (Ex. 5 at

18:53:25-18:54:24).  Contrary to Plaintiff's allegations, the available evidence in this case clearly shows that Officer Gutierrez had no knowledge that any search of the vehicle was taking place, nor has any evidence been discovered or produced to support the contention that he consented to, directed, or participated in the effort.  Additionally, Plaintiff has not plead any theory of vicarious liability that would otherwise connect Officer Gutierrez to the actions of Officer Crocker such that he could be held liable.  Summary Judgment in favor of Officer Gutierrez is therefore appropriate on Count III. as no evidence exists to connect him to the allegedly unlawful search of the vehicle or seizure of the weapon.

**2.  Even if Nazario's Fourth Amendment Rights Were Violated, Officer Gutierrez Is Still Entitled To Qualified Immunity As Any Misapprehension Of Law Was Reasonable.**

"Qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53, 208 L. Ed. 2d 164 (2020) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)) (internal quotation marks omitted). The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).  Even if the Plaintiff's claims of a constitutional violation were meritorious, Gutierrez is

still protected from liability under 42 U.S.C. § 1983 under the doctrine of qualified immunity as his actions were warranted under the circumstances before him.

Here, for the sake of application of the doctrine of qualified immunity, we assume without conceding that defendant Gutierrez's actions violated the Nazario's constitutional rights. The following analysis therefore focuses on the second factor, which is whether a reasonable officer in Officer Gutierrez's position would have known his actions were in violation of the plaintiff's rights. *Thomas v. Robinson*, 2005 U.S. Dist. LEXIS 43629, *21 (E.D.Va. 2005). Thus, if a reasonable officer faced with the same circumstances would have likewise concluded Office Gutierrez' actions were appropriate, then he would be entitled to qualified immunity. *Id*. at *21. As is explained below, no reasonable officer would disagree with any of Officer Gutierrez's actions.

### i.  *A Reasonable Officer Would Have Concluded That Reasonable Suspicion Existed to Initiate a Traffic Stop.*

Plaintiff was operating his vehicle in violation of Virginia Code § 46.2-715, which requires that vehicles have front and rear license plates, and § 46.2-716, which requires that license plates be clearly visible not otherwise obscured. His deposition testimony confirmed the fact that his expired temporary tag was mounted on the inside of his tinted rear window. A reasonable officer would have concluded that reasonable suspicion existed that these laws were being violated, and that it therefore would be objectively reasonable to initiate a traffic stop.

### ii.  *A Reasonable Officer Would Have Found It Reasonable Under the Circumstances to Order Plaintiff Out of His Vehicle.*

It is well known to all law enforcement officers that the U.S. Supreme Court that asking drivers to step out of their vehicle during a lawful traffic stop is not violative of their Fourth

16

Amendment rights.   *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333 (1977). Officers are trained to know that this is permitted in the interests of officer safety during traffic stops, even during routine stops that do not involve the elusive or strange behavior as in the present case.   *Id*.   Therefore, a reasonable officer would also have believed it to be objectively and reasonable under the circumstances to ask Nazario to step out of his vehicle.

> ### iii.   *A Reasonable Officer Would Have Found It Reasonable to Utilize Force to Remove Plaintiff From His Vehicle and to Detain Him*.

It is undisputed that Plaintiff refused to comply with the officers' orders and physically resisted being removed from his vehicle and from being handcuffed during the encounter.  The 4th Circuit has held that an officer may handcuff a citizen where it is when it is "reasonably necessary to maintain the status quo and protect [officer] safety during an investigative stop.'"  *United States v. Crittendon*, 883 F.2d 326, 329 (1989) (quoting *United States v. Taylor*, 857 F.2d 210, 213 (4th Cir. 1988)).  A reasonable officer would also have therefore concluded that it would be objectively reasonable to utilize force, in this case OC spray and knee strikes to subdue Plaintiff in order to safely remove him from his car and detain him in the interests of safety.

Thus, because a reasonable officer would have concluded that all of Officer Gutierrez's actions were objectively reasonable, necessary, and justified under the circumstances presented, he is entitled to qualified immunity from the Plaintiff's Fourth Amendment claims.

> ## B.   <u>Plaintiff's First Amendment Constitutional Claim Fails As A Matter of Law (Count IV)</u>

> ### 1.   The Undisputed Facts Establish As A Matter of Law That No Constitutional Violation Occurred.

> #### a.   Count IV – Violation of the First Amendment

With respect to Plaintiff's First Amendment claims, it is once again undisputed that no violation of Nazario's Constitutional rights occurred.  Even if a violation did occur, because it is also undisputed that probable cause existed for the issuance of the citations that the Officers' chose to forego, Officer Gutierrez is entitled to qualified immunity on this claim as well.

### i. Officer Gutierrez's Actions Did Not Violate Plaintiff's First Amendment Rights

A First Amendment retaliation claim under Section 1983 consists of three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity such as speech, (2) the defendants' action caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) there was a causal relationship between the plaintiff's protected activity and the defendants' conduct."  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000);  See also, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  However, when the claimed retaliation for protected conduct is a criminal charge where the defendants are 'nonprosecutors', such as in the present matter, then the plaintiff must prove that the causal relationship required for the third element is actually "a chain of causation" that links the defendants' actions with the initiation of criminal proceedings.  *Hartman v. Moore*, 547 U.S. 250, 262, 126 S. Ct. 1695 (2006), citing *Barts* v. *Joyner*, 865 F.2d 1187, 1195 (CA11 1989).  "Thus, the causal connection required here is not merely between the retaliatory animus of one person and that person's own injurious action, but between the retaliatory animus of one person and the action of another.  *Id.*, 262-263.

### 1. Defendant concedes Plaintiff had a Constitutional Right to contest any citations.

As to the first element, it is widely accepted that a citizen's right to "petition the Government for a redress of grievances" is protected activity under the First Amendment.

*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 382 (2011).  Defendant therefore concedes this element and makes no argument to the contrary.

> **2. Defendants' decision to decline to charge Plaintiff with a crime and completion of routine post-encounter documentation did not cause an injury that adversely affected his decision to engage in protected activity.**

The second element Plaintiff must establish is that Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity.  *Suarez*, 686.  However, "[n]ot every restriction is sufficient to chill the exercise of First Amendment rights, nor is every restriction actionable, even if retaliatory."  *Id*., 685.  "Rather, a § 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights."  *Id*.

Naturally, for a defendant to be held liable for retaliating against a plaintiff for engaging in protected behavior, such retaliatory action must first have occurred for any injury whatsoever to have resulted from it.  However, Plaintiff has presented no evidence throughout the course of discovery to demonstrate that Officer Gutierrez took any adverse action whatsoever as Nazario was never arrested or cited at the time of the incident, nor did the Officers later seek to have him prosecuted.  The Officers' decision to decline to charge Plaintiff with any crime following their encounter on December 5, 2020, and subsequent completion of the normally required police reports to document the events of the evening, were completely legal and appropriate behaviors that did not result in the levying of any criminal charges.  Plaintiff therefore presents no facts to support that he suffered any injury that would reasonably 'chill' or dissuade him from engaging in protected activity. *Id*.

Further, Officer Gutierrez never threatened to perform any action that would reasonably chill or dissuade Plaintiff from engaging in a protected activity.  As is apparent in the video

encounter and has been shown during discovery, Officer Gutierrez explained to Nazario that as a Marine Corps veteran himself, and out of his general respect for the military and concern that a citation may affect Nazario's military record, he would like to not cite Nazario with failure to obey (Va. Code Ann. § 18.2-464 ) and failure to display a license plate (Va. Code Ann. § 46.2-715). (Ex. 8 at Interrogatory 1), (Daniel Crocker Body Worn Camera, CN-5 is attached as Exhibit 10) (Ex. 10 at 19:05:55).  Because of Nazario's protests against the Officers' authority and resistance to their efforts, Officer Gutierrez offered him the opportunity to receive tickets for those infractions if it was his preference.  (Ex. 8 at Interrogatory 1), (Ex. 10 at 19:05:55).  As such, no action was ever threatened by Officer Gutierrez whatsoever.  Instead, Officer Gutierrez merely explained one of the additional undesired impacts of receiving a citation might be.  At no point in time was the issuance of the tickets conditioned upon Nazario's silence, which is plainly shown in the video encounter itself.  (Ex. 10 at 19:05:55).

### 3. Defendants' completion of routine post-encounter documentation was not causally linked to Plaintiff's protected activity, nor did it result in the initiation of criminal charges.

As to the third element, Plaintiff presents no facts or allegations to demonstrate a "chain of causation" linking the allegedly retaliatory animus of Defendants and the initiation of criminal proceedings against him. *Hartman,* 262-263 (citing *Barts* v. *Joyner*, 865 F.2d 1187, 1195 (CA11 1989)); *Also see*, *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999).  "It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." *Id*. at 262.  Despite the allegations of retaliatory animus of an investigator or law enforcement officer, such documents produced by nonprosecutors by themselves are insufficient to establish an injury in the absence of resulting criminal prosecution or arrest. *Trueman*

*v. United States*, No. 7:12-CV-73-F, 2015 U.S. Dist. LEXIS 40380 (E.D.N.C. Mar. 30, 2015). Simply put, the absence of any arrest or levying of criminal charges makes Plaintiff's establishment of the required causal link impossible. *Hartman*, 262-263.

In *Trueman*, the *pro se* plaintiff based his First Amendment retaliation claim on an alleged pending criminal investigation involving the Office of the Inspector General for Veterans Affairs. *Id.* Specifically, "Trueman allege[d] that [defendant] informed him that he had committed fraud by filing for an Improved Pension in 2005 and that an indictment was coming Trueman's way because he plays baseball once or twice a week." *Id.* Because there had been no adverse action taken against Trueman apart from the suggestion of an investigation, the district court found that he had failed to present a First Amendment retaliation claim. *Id.* At most, the plaintiff could allege that the defendant conducted a retaliatory investigation against him, which falls short of influencing the prosecutorial decision of yet another party to actually initiate criminal charges. *Id.*; *See also*, *Hartman v. Moore*, 547 U.S. 250, 262, 126 S. Ct. 1695 (2006).

Similar to *Trueman*, no charges were ever brought forth by the Officers through the completion of their routine and required police incident reports and documentation. Plaintiff attempts to paint these acts as evidence of retaliatory behavior through his disagreement with the substance of their contents but has provided no such additional evidence during the course of discovery that any charges were ever submitted by the Officers to be levied against him. In fact, Officer Gutierrez even documented in his incident report that he chose to release Nazario without charging him out of respect to him being a military servicemember such that no reasonable factfinder could ever find that he took any preparatory steps to retaliate as Plaintiff alleges. (Gutierrez Incident Report, CN000016-17 is attached as Exhibit 11) (Ex. 11). Because any documents prepared by the Officers did not result in the initiation of criminal proceedings against Plaintiff, it is therefore

21

impossible for him to allege any facts to establish the necessary "chain of causation" linking the allegedly retaliatory animus of Defendants to any purported injury. *Hartman* at 262 (citing *Barts* v. *Joyner*, 865 F.2d 1187, 1195 (CA11 1989)).

In summary, even if Plaintiff were to successfully convince a jury that the Defendants' actions by failing to document their encounter on December 5, 2020 in a manner that reflected Mr. Nazario's opinions and perspective of what occurred rather than their own, he cannot establish any evidence of retaliatory action by Defendants as he was not arrested nor later charged with any crime whatsoever.  Plaintiff therefore failed to produce any evidence to support the third element of his First Amendment Violation claim as there is no allegation supporting a causal link between Defendants' conduct and the initiation of criminal proceedings, as no charges were ever brought relating to the encounter.

## 2. Even if Nazario's First Amendment Rights Were Violated, Officer Gutierrez Is Still Entitled To Qualified Immunity As Probable Cause Existed.

"The Supreme Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Pegg v. Herrnberger*, 845 F.3d 112, 119 (4th Cir. 2017), citing *Reichle v. Howards*, 566 U.S. 658, 664-65, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012).  At the Summary Judgment stage, in cases such as the instant one when the underlying violation of law was committed in the officer's presence, the issue of probable cause is no longer an evidentiary issue.  *Id*.  As was addressed previously, it is undisputed that Plaintiff violated the law in the Officers' presence such that the question of probable cause may no longer be reasonably disputed.  As such, Officer Gutierrez is entitled to qualified immunity on Plaintiff's First Amendment Claim as well.  *Id*.

By Nazario's own admission, he was guilty of failure to obey under Va. Code Ann. § 18.2-464 and obstruction of justice under Va. Code Ann. § 18.2-460, both of which followed a

legitimate traffic stop for Plaintiff's failure to display the necessary state-issued tags as required under Va. Code Ann. § 46.2-715.  (Ex. 2 at 101:20-22 and 112:12-21).  The body worn camera footage confirms, as well as the plaintiff at his own deposition, that his license plate was affixed to the interior of his rear tinted window, such that it was not clearly visible to Officer Crocker during the evening hours of December 5, 2020.  (Ex. 2 at 101:20-22), (Ex. 3 at 82:21-83:24, 107:17-108:6, 109:21-110:4), (Ex. 5).  Nazario also confirmed at his deposition that he informed the officers of his intention to not obey their order to exit his vehicle.  (Ex. 6 at 104:15-106:2), (Ex. 3 at 90:18-94:17, 98:5-99:19), (Ex. 2 at 112:12-21), (Ex. 5 at 18:37:00), (Ex. 7 at 0:00:19-0:00:24)..  Viewing these facts in the light most favorable to the non-moving party, it is undisputable that probable cause existed to cite Nazario with failure to obey and failure to display a license plate, the two charges communicated by Gutierrez to him at the scene.  (Ex. 8 at Interrogatory 1), (Ex. 10 at 19:05:55). Therefore, even if Nazario's First Amendment rights were violated by Officer Gutierrez, he is still is entitled to immunity on this claim as well.

## C.  Plaintiff's Tort Claims Fail As A Matter of Law (Counts V, VI, VII, and VIII)

### a.  Counts V. – VIII. - Common Law Assault, Battery, False Imprisonment, and Illegal Search in Violation of Virginia Code 19.2-59.

Plaintiff's claims of common law assault, battery, false imprisonment, and illegal search claims are governed by Virginia state law. *Bell v. Johnson*, 2011 U.S. Dist. LEXIS 33888, *35, 2011 WL 1226003, referencing *Gray-Hopkins v. Prince George's County, Md.*, 309 F.3d 224, 232 (4th Cir. 2002).  Under Virginia law, police officers cannot be held liable for these torts where their actions are legally justified in the execution of their lawful duties.  *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 711 (E.D. Va. 2009), citing *Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821 (1956).  The immunity defense applicable to Virginia tort law claims is known as "sovereign immunity" rather than "qualified immunity".  *Amato v. City of Richmond*, 875 F. Supp. 1124,

1143 (E.D. Va. 1994). To defeat the protections of sovereign immunity, a plaintiff must demonstrate that an officer's actions were "grossly negligent" such that his actions demonstrate "an utter disregard of prudence amounting to complete neglect of the safety of another." *Ware* at 711, (citing *Veney v. Ojeda*, 321 F. Supp. 2d 733 (E.D. Va. 2004))

### i.  *Assault and Battery.*

Under Virginia law, an assault is "an intentional offer to touch the person of another that created in the mind of the victim a reasonable apprehension of an immediate battery." *Id*., citing *Epps v. Commonwealth*, 28 Va. App. 58, 502 S.E.2d 140 (Va. App. 1998).  "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* (citing *Koffman v. Garnett*, 265 Va. 12, 574 S.E.2d 258, 261 (Va. 2003)). "[A]n arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful." *Bell*, 2011 U.S. Dist. LEXIS 33888 at *39 (citing *Gnadt v. Commonwealth*, 27 Va. App. 148, 497 S.E.2d 887, 888 (Va. App. 1998)).

Here, Plaintiff's common law claims for assault and battery rise and fall with his Fourth Amendment claims.  In order to sustain his common law tort claims, Nazario must prove that the actions of Officer Gutierrez were grossly negligent and not legally justified under the circumstances presented at the time of the incident.  Considering that Plaintiff only alleges having suffered from mental injuries as a result of this encounter, no reasonable factfinder could conclude that the force utilized was in any way excessive.  *Amon v. Stubbs*, Civil Action No. 3:11CV491-HEH, 2011 U.S. Dist. LEXIS 140563 (E.D. Va. Dec. 7, 2011).  Furthermore, and as explained at great length above, Officer Gutierrez's actions were legally justified and objectively reasonable under the circumstances, and thus he cannot be held liable for Plaintiff's tort claims for Assault and Battery.

ii.   *False Imprisonment.*

Under Virginia law, "[f]alse imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Carter v. Khan*, No. 1:15-cv-00572 (JCC/JFA), 2015 U.S. Dist. LEXIS 149955 (E.D. Va. Nov. 4, 2015) (citing *Lewis v. Kei*, 281 Va. 715, 724, 708 S.E.2d 884 (2011)). "The gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 50 S.E.2d 387 (1948) (citing *Kress & Co.* v. *Roberts,* 143 Va. 71, 75, 129 S.E. 244). For a plaintiff to prevail on a claim of false imprisonment, he must merely prove that he was detained, at which point the onus passes to the defendant to "proffer an adequate legal justification warranting that detention". *Ware v. James City Cnty.*, at 56 (citing *Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002)).

Plaintiff's common law claim for false imprisonment must suffer the same fate as his Fourth Amendment claims. It is undisputed that by Nazario's own admission he was guilty of failure to obey under Va. Code Ann. § 18.2-464 and obstruction of justice under Va. Code Ann. § 18.2-460, both of which followed a legitimate traffic stop for Plaintiff's failure to display the necessary state-issued tags as required under Va. Code Ann. § 46.2-715. (Ex. 2 at 101:20-22 and 112:12-21). Any one of these offenses warranted detainment at the scene by the Officers, especially given that these crimes were committed in their very presence such that they acted "in good faith and with probable cause" in seeking to detain Nazario. *See Ware* at 56 (quoting *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Furthermore, as confirmed by Nazario himself, the physical means used by the Officers to detain him was also legally justified under the circumstances due not only to his stated intentions to not obey their order to exit his vehicle, but also by his active physical resistance at the scene. (Ex. 6 at 104:15-106:2), (Ex. 3 at 90:18-94:17, 98:5-99:19), (Ex. 2 at 112:12-21), (Ex. 5 at 18:37:00), (Ex. 7 at 0:00:19-0:00:24).

Because the detention was legally justified and objectively reasonable under the circumstances, Plaintiff's claim of false imprisonment must fail.

### iii.   *Plaintiff Can Provide No Evidence To Support A Claim Against Officer Gutierrez Under Virginia Code §19.2-59.*

As addressed previously, the available evidence in this case clearly shows that Officer Gutierrez had no knowledge that any search of the vehicle was taking place, nor has any evidence been discovered or produced to support the contention that he consented to, directed, or participated in the effort. (Ex. 3 at 130:20-135:7), (Ex. 6 at 127:20-128:7), (Ex. 5 at 18:53:12). Officer Gutierrez testified at his deposition that he was unaware that Officer Crocker had retrieved a weapon from Nazario's vehicle, and there exists no other document or statement in evidence that contradicts this testimony.  (Ex. 6 at 127:20-128:7).  Further, Plaintiff has not plead any theory of liability that would otherwise connect Officer Gutierrez to the actions of Officer Crocker by vicarious means or otherwise.   As such, Plaintiff cannot maintain this claim against Officer Gutierrez and Summary Judgment is proper.

## V.   <u>CONCLUSION</u>

The available evidence viewed in favor of the non-moving party clearly demonstrates that Officer Gutierrez's actions were at all times lawful and reasonable under the circumstances. Wherefore, for the reasons set forth in this motion and memorandum of law, Defendant Daniel Joe Gutierrez respectfully moves this Court to GRANT his Motion for Summary Judgment.

Respectfully submitted this 12th day of January, 2022.

**JOE GUTIERREZ**

**By:** /s/ John B. Mumford, Jr.
                **Counsel**

John B. Mumford, Jr. (VSB No. 38764)
Coreen A. Silverman (VSB No. 43873)
Dustin J. H. Plumadore (VSB No. 97334)
Hancock, Daniel & Johnson, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
dplumadore@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Defendant Joe Gutierrez*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Jonathan M. Arthur, Esq. (VSB No. 86323)<br>Thomas H. Roberts, Esq. (VSB No. 26014)<br>Andrew T. Bodoh, Esq. (VSB No. 80143)<br>THOMAS H. ROBERTS & ASSOCIATES, P.C.<br>105 South 1st Street<br>Richmond, Virginia 23219<br>Telephone: (804) 783-2000<br>Facsimile: (804) 783-2105<br>j.arthur@robertslaw.org<br>tom.roberts@robertslaw.org<br>andrew.bodoh@robertslaw.org<br>*Counsel for Plaintiff Caron Nazario* | Robert L. Samuel, Jr. (VSB No. 18605)<br>Richard H. Matthews (VSB No. 16318)<br>Anne C. Lahren (VSB No. 73125)<br>Bryan S. Peeples (VSB No. 93709)<br>PENDER & COWARD<br>222 Central Park Avenue, Suite 400<br>Virginia Beach, Virginia  23462<br>Tel: (757) 490-6293<br>Fax: (757) 502-7370<br>rsamuel@pendercoward.com<br>rmatthew@pendercoward.com<br>alahren@pendercoward.com<br>bpeeples@pendercoward.com<br>*Counsel for Defendant Daniel Crocker* |

/s/ John B. Mumford, Jr.
John B. Mumford, Jr. (VSB No. 38764)
Coreen A. Silverman (VSB No. 43873)
Dustin J. H. Plumadore (VSB No. 97334)
Hancock, Daniel & Johnson, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
dplumadore@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Defendant Joe Gutierrez*