IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CARON NAZARIO,                    )
      Plaintiff,                 )
                          )
        v.                        )          Civil Action No. 2:21CV169 (RCY)
                          )
JOE GUTIERREZ,                    )
*in his personal capacity,*        )
and                               )
DANIEL CROCKER,                   )
*in his personal capacity*,        )
      Defendants.               )
                          )

## MEMORANDUM OPINION

This matter is before the Court on three motions: (1) Defendant Gutierrez's Motion to Dismiss Count IV (ECF No. 15), (2) Defendant Crocker's Motion to Dismiss Count IV (ECF No. 19), and (3) Plaintiff's Motion to Find Defendant Gutierrez's Answer Deficient (ECF No. 23). The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Defendant Gutierrez's Motion to Dismiss Count IV (ECF No. 15), deny Defendant Crocker's Motion to Dismiss Count IV (ECF No. 19), and deny Plaintiff's Motion to Find Defendant Gutierrez's Answer Deficient (ECF No. 23).

## I. FACTUAL ALLEGATIONS

The Court recounts the relevant facts as alleged in the Complaint.  This action arises from a traffic stop involving Caron Nazario ("Plaintiff") and two police officers employed by the Town of Windsor, Joe Gutierrez and Daniel Crocker ("Defendants"). (Compl. ¶ 2, ECF No. 1.)  Plaintiff is a Second Lieutenant in the United States Army Medical Corps, and he is of Latinx and African

American descent. (*Id.* ¶ 9.)  On or about December 5, 2020, at approximately 6:34 p.m., Plaintiff was driving through the Town of Windsor, Virginia, in his newly purchased 2020 Chevrolet Tahoe. (*Id.* ¶ 13.)  The Department of Motor Vehicles had not yet issued permanent plates for the vehicle, so Plaintiff had a cardboard temporary plate taped on the inside rear window. (*Id.*)  Defendant Crocker initiated a traffic stop of Plaintiff by activating his emergency lights and siren. (*Id*. ¶ 14.)  Defendant Gutierrez then joined in the pursuit. (*Id.*)

Plaintiff put on his turn signal and slowed down, but he did not pull over immediately. (*Id.* ¶¶ 15-16.)  Instead, he waited to pull over until he arrived at a well-lit BP gas station approximately a mile down the road. (*Id.* ¶ 16.)  When the cars stopped, Defendants exited their vehicles and trained their firearms on Plaintiff. (*Id.* ¶¶ 19, 23-24.)  Plaintiff repeatedly asked the officers "What's going on?" and asked why they had their guns drawn (*Id.* ¶ 23, 25.)  Defendants ordered Plaintiff to put his hands outside of his car window, he complied, and later demanded that Plaintiff exit his vehicle. (*Id.* ¶ 26.)  At one point, Defendant Gutierrez warned Plaintiff that he was "fixin' to ride the lightening" by not obeying their orders to exit the vehicle. (*Id.* ¶ 28.)  Plaintiff told Defendants that he was afraid to leave the vehicle to which Defendant Gutierrez responded, "Yeah, you should be." (*Id.* ¶¶ 33-34.)

After several more commands to leave the vehicle, Defendant Gutierrez sprayed Plaintiff with Oleoresin Capsicum ("OC") spray multiple times. (*Id.* ¶¶ 25-28, 32-39.)  Defendant Gutierrez then told Plaintiff that if he did not exit the vehicle, he would be sprayed again. (*Id.* ¶ 43.)  Defendant Gutierrez removed Plaintiff from the vehicle, forced him onto his stomach, and handcuffed him. (*Id.* ¶¶ 44-46, 48.)

After handcuffing him, Defendants sat Plaintiff on a trashcan and began to talk to him. (*Id.* ¶ 48.)  Defendant Crocker at one point entered Plaintiff's vehicle and searched for a firearm that Plaintiff said was in the vehicle. (*Id.* ¶¶ 52-53.)  Once Defendant Crocker located the firearm, he

radioed the serial number back to dispatch, who reported that the firearm was not stolen. (*Id.* ¶ 54.)

The parties continued their conversation during which Defendant Gutierrez stated that he understood why Plaintiff waited until a well-lit area to stop and that it "happens all the time." (*Id.* ¶ 55.)  After calling the Chief of Police, Defendant Guiterrez gave Plaintiff a choice: he could either be arrested and "fight it . . . which is [his] rights as a citizen" or he could "chill and let [it] go." (*Id.* ¶ 56; Compl. Ex. 5 at 04:20-6:57, ECF No. 1-2.)  Plaintiff chose not to be arrested. (Compl. Ex. 5 at 7:40-9:00.)

After the traffic stop, both Defendants wrote narratives of the event for their official records. (Compl. ¶ 58.)  In these narratives, they alleged that Plaintiff's vehicle had no license plate displayed, Plaintiff disregarded Defendant Crocker's lights and siren, Plaintiff did not comply with orders and was actively resisting, Plaintiff assaulted Defendant Gutierrez, and Defendant Gutierrez gave Plaintiff a warning before spraying him with OC spray. (*Id.* ¶¶ 60-63.)

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 2, 2021. (ECF No. 1.)  On April 16, 2021, this action was reassigned from Judge Robert G. Doumar to the undersigned.  On May 14, 2021, Defendant Gutierrez filed a Partial Motion to Dismiss the Complaint. (ECF No. 15.)  Defendant Gutierrez also filed his Answer and Affirmative Defenses to Plaintiff's Complaint. (ECF No. 17.)  On May 17, 2021, Defendant Crocker filed a Partial Motion to Dismiss Plaintiff's Complaint. (ECF No. 19.)  Defendant Crocker also filed an Answer. (ECF No. 20.)  The parties fully briefed each of the Partial Motions to Dismiss. (ECF Nos. 16, 27, 32-33.)  On May 23, 2021, Plaintiff filed a Motion to Find Defendant Gutierrez's Answer Deficient and to Deem Specified Paragraphs Admitted. (ECF No. 23.)  The parties briefed the Motion. (ECF Nos. 24, 30.)

## III. DEFENDANTS' MOTIONS TO DISMISS COUNT IV[1]

### A. Legal Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

---

[1] In Defendant Crocker's Partial Motion to Dismiss, he states that the motion is being made "for the reasons set forth in [Defendant] Gutierrez's Memorandum in Support of this Motion." (ECF No. 19 at 1.) As such, arguments in Defendant Gutierrez's Memorandum in Support will be attributed to both Defendants.

**B. Discussion**

Defendants have moved to dismiss Count IV of Plaintiff's Complaint which alleges First Amendment retaliation under 42 U.S.C. § 1983. (*See* Compl. ¶¶ 97-104.)  First Amendment retaliation claims have three elements: (1) the plaintiff engaged in constitutionally protected First Amendment activity; (2) the defendant took an action that adversely affected that protected activity; and (3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686-87 (4th Cir. 2000); *Blankenship v. Manchin*, 471 F.3d 523, 528 (4th Cir. 2006); *Roncales v. Cty. of Henrico*, 451 F. Supp. 3d 480, 495 (E.D. Va. 2020).

### 1. Plaintiff Engaged in Constitutionally Protected Speech

It appears that Defendants are not disputing this element.  In their brief, Defendants state, "[a]s to the first element, it is widely accepted that a citizen's right to 'petition the Government for redress of grievances' is protected under the First Amendment. Defendant makes no argument to the contrary . . .." (Mem. Supp. Mot. Dismiss at 4, ECF No. 16) (internal citations omitted).

The right to petition the Government for redress of grievances is "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002) (quoting *United Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967)).  Alleging retaliation for exercising one's right to petition for redress of grievances is a sufficient basis for a First Amendment retaliation claim. *See Lozman c. City of Riviera Beach*, 138 S. Ct. 1945, 1954-55 (2018).  Plaintiff's claim is also based on the freedom of speech. (*See* Mem. Opp'n Mot. Dismiss at 6, ECF No. 27.) "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).  As such, Plaintiff has plead facts sufficient to establish this element.

## 2. Defendants Took Action that Adversely Affected Plaintiff's Protected Speech

Defendants' central argument is that the Plaintiff makes "no allegation that Defendants' conduct resulted in any injury that could have discouraged or affected Plaintiff from engaging in the protected activity." (Mem. Supp. Mot. Dismiss at 4.)  If there is no retaliatory action, there can be no adverse effect on protected speech. (*Id.* at 5.)  Plaintiff argues that the threat to detain him and charge him with multiple crimes is the action and the chilling of speech is the adverse effect. (Mem. Opp'n Mot. Dismiss at 13.)

Plaintiff has alleged that his "injury" is the chilling of prospective speech.  As such, the proper test is whether the Defendants' actions would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation omitted); *Balt. Sun Co. v. Ehrlich*, 437 F.3d 410, 416 (4th Cir. 2006); *Blankenship*, 471 F.3d at 530.  This is an objective standard based on a similarly situated person. *Ehrlich*, 437 F.3d at 416.

Courts have taken a very fact specific approach when analyzing the "similarly situated person."  In *Blankenship v. Manchin*, the president of the largest coal company in West Virginia opposed a piece of legislation supported by the Governor of West Virginia. 471 F.3d at 525.  At a public event, the Governor gave a speech in which he threatened the coal company with increased scrutiny in regulatory affairs. *Id.*  The United States Court of Appeals for the Fourth Circuit analyzed whether that statement would chill the speech of "an ordinarily firm owner of a regulated business who has entered the political arena" and found that the claim was sufficient to survive a motion to dismiss. *Id.* at 531.  In *Baltimore Sun Co. v. Ehrlich*, the Governor of Maryland issued a directive that no executive employee should speak to two specific reporters at the Baltimore Sun newspaper, as the press office felt that those reporters were not reporting objectively on the administration. 437 F.3d at 413.  The reporters were still allowed to issue

FOIA requests, attend public press conferences, and attend press briefings. *Id.* at 414.  The Fourth Circuit determined that "it would be inconsistent with the journalist's accepted role in the 'rough and tumble' political arena to accept that a reporter of ordinary firmness can be chilled by a politician's refusal to comment or answer questions on account of the reporter's previous reporting." *Id.* at 419.

The District Court for the Southern District of West Virginia dealt with the chilling of prospective speech in the wake of police conduct in *Jafary v. City of Beckley*. No. 5:20cv647, 2021 WL 6125831 (S.D.W. Va. Dec. 28, 2021).  Police were responding to a domestic disturbance call at one of the plaintiff's relative's houses. *Id.* at *1.  Each party gave conflicting accounts of the incident, but at the very least, the plaintiff and defendant officers got into a heated verbal exchange, officers asked plaintiff to leave, and plaintiff asked for their badge numbers. *Id.*  Plaintiff was not arrested at the scene, but officers later filed a criminal complaint against her. *Id.* at *2.  In the narrative for the arrest warrant, defendant officers stated that plaintiff harassed, refused instructions, and tried to impede their movements; however, plaintiff claims that those statements were lies made up to manufacture probable cause. *Id.* Later, defendant officers arrested plaintiff, she spent a night in jail, and the charges were dismissed. *Id.* The court found that the arrest, night in jail, and abbreviated criminal prosecution would deter an ordinary person from exercising her First Amendment rights. *Id.* at *7.

Plaintiff has pled sufficient facts to support a claim that a low-ranking military officer[2] of ordinary firmness would have his speech chilled by a threatened arrest.  In fact, Defendant Gutierrez explained to Plaintiff all the ramifications of such an arrest, noting that the police would have to notify his command, that regardless of what happens with his criminal charges

---

[2] UNITED STATES ARMY, https://www.goarmy.com/content/dam/goarmy/downloaded_assets/pdfs/advocates-army-rank.pdf (last visited Feb. 1, 2022).

"the army could jam him for the same thing," and that having the charge on his record would hurt his army career. (Compl. Ex. 5 at 05:15-5:40.)  Thus, the Court finds that the second element has been sufficiently pled.

### 3. Causal Relationship Exists Between Plaintiff's Protected Speech and Defendants' Conduct

Defendants' central argument on the third element is that Plaintiff "fails to assert . . . [any] reasonable allegation to demonstrate a 'chain of causation' linking the allegedly retaliatory animus of Defendants and the initiation of criminal proceedings against Plaintiff." (Mem. Supp. Mot. Dismiss at 4.)  Defendants contend that in the absence of an arrest or criminal charges there is no causal link. (*Id.* at 6.)  Further, Defendants argue that there was probable cause for the initial traffic stop, so the claim should be dismissed. (Reply at 3, ECF No. 33.)

Plaintiff argues that the initiation of the criminal process is not necessary to complete the retaliation claim. (Mem. Opp'n Mot. Dismiss at 14.)  Plaintiff contends that the Defendants' threats were the "action" and the subsequent chilling of speech at the scene and prospective chilling of speech after the incident were the "adverse effects." (*Id.*)  And, the causal nexus is the content of the threats. (*Id.*)  Further, Plaintiff argues that the Complaint has properly alleged that Defendants acted without probable cause. (*Id.* at 8-11.)

The parties' positions can be distilled into two arguments: (1) has Plaintiff pled actions that constitute a constitutional tort and (2) has Plaintiff properly alleged the lack of probable cause.  The Court finds that the answer to both of those questions is yes.

#### a. Defendants' Alleged Actions Constitute a Constitutional Tort

Defendants argue that there must be an arrest or prosecution to state a claim for First Amendment retaliation. (Mem. Supp. Mot. Dismiss at 6-7.)  They contend that retaliatory investigation is not a constitutional tort. (*See id.* at 6.)  Plaintiff claims that the constitutional tort comes from the threat itself. (Mem. Opp'n Mot. Dismiss at 15-16.)  It is not the criminal charge

or prosecution, but instead the threat of charging the Plaintiff that leads to the unconstitutional chilling of free speech.

Defendants base much of their argument on *Trueman v. United States*, No 7:12cv73, 2015 WL 1456134 (E.D.N.C. Mar. 30, 2020). (Mem. Supp. Mot. Dismiss at 6.) In an unpublished opinion, the District Court for the Eastern District of North Carolina held that "conducting a retaliatory investigation does not, in and of itself, form the basis of a constitutional tort." *Id*. at *13. In that case, the plaintiff was receiving care from the Department of Veterans Affairs ("the VA") and took issue with a doctor weening him off pain medication. *Id.* at *1. The plaintiff sued the VA for medical malpractice, and later he filed several additional lawsuits and requests for injunctions. *Id.* at *1-7. The plaintiff alleged that a special agent from the Office of the Inspector General informed him that he had committed fraud several years earlier and stated that an indictment would be coming. *Id.* at *13. The court found that "[a]t most" the plaintiff had claimed a retaliatory investigation and that the "Fourth Circuit [had] not determined whether an investigation can give rise to a First Amendment retaliation claim." *Id.* at *13.

*Trueman* relied on several other district court decisions that have found that retaliatory investigation is not a constitutional tort. In *Rehberg v. Paulk*, the plaintiff sent faxes to a hospital criticizing the management and activities of the hospital. 611 F.3d 828, 835 (11th Cir. 2010). The plaintiff alleged that the district attorney then started an investigation, without probable cause, as a political favor to the hospital. *Id.* The court indicated that it did not believe retaliatory investigation was a "distinct constitutional tort." *Id.* at 850-51. In *Roark v. United States*, the plaintiff leaked confidential government documents to the New York Times, and the government started an investigation into the source of the leaks. No. 6:12cv1354, 2013 WL 1071778, at *1 (D. Or. Mar. 12, 2013). During the investigation, the plaintiff perjured herself and was later offered a plea bargain. *Id.* She was never threatened with additional charges, and

after commencing her lawsuit, the government confirmed that no criminal charges would be filed. *Id.* Relying on *Rehberg*, the court denied the plaintiff's motion to amend the complaint and mentioned that *Rehberg* held that there was no constitutional tort based on retaliatory investigation. *Id.* at *5.

These cases follow a distinct pattern: first plaintiff exercises free speech then law enforcement starts an investigation as punishment, or to lead to criminal charges that will serve as punishment, for said speech. In *Trueman*, the plaintiff filed multiple lawsuits against the VA; then the Inspector General allegedly started an investigation in retaliation. 2015 WL 1456134 at *13. For *Rehberg*, it was the inflammatory faxes that prompted the investigation. 611 F.3d at 835. And, in *Roark*, the plaintiff leaked confidential documents, and then the government began the investigation to punish the leaker. 2013 WL 1071778 at *1. For each, it was speech then investigation. However, in this action, Plaintiff has alleged a threat of arrest, then chilled speech. The "investigation" comes before the speech or, arguably, never even occurs. It would be incorrect to analyze this claim as a retaliatory investigation claim.

Given that Plaintiff was never arrested, it would also be incorrect to analyze this claim as a typical retaliatory arrest claim. The Supreme Court in *Lozman v. City of Rivera Beach* delved into "a claim [that was] far afield from the typical retaliatory arrest claim." 138 S. Ct. at 1954. In that case, a city council allegedly agreed that they needed to intimidate a problematic citizen. *Id.* at 1949. The opportunity presented itself when the citizen refused to yield during a citizen comment section of a public meeting, and the city council had the citizen forcibly removed, leading to his arrest. *Id.* at 1949-50. The Supreme Court warned that "there is a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* at 1953. The Supreme Court mentioned this concern again in *Nieves v. Bartlett*, recognizing that the risk existed when creating a narrow qualification on the rule that retaliatory arrest claims must establish that there

was no probable cause for the arrest. 139 S. Ct. 1715, 1727 (2019).  Through these cases, it is clear that the constitutional tort of First Amendment retaliation is broader than the standard retaliatory arrest claim.

Threatening arrest is a method of "exploit[ing] the arrest power as a means of suppressing speech." *See Lozman*, 138 S. Ct. at 1953.  Other district courts have found there to be a constitutional tort for threats to arrest. *See, e.g., Schaffer v. Beringer*, No. 4:14cv4138, 2015 WL 5577127, at *13-14 (D.S.D. Sept. 22, 2015) (analyzing a First Amendment retaliation claim based on a lawyer being told to step aside or face arrest, for telling officers that they did not have probable cause to pull over the lawyer's daughter, under the same framework as a claim based on an actual arrest); *Jefferson v. Koenig*, No. 15cv544, 2016 WL 8711374, at *6-7 (E.D.N.Y. Jan. 15, 2016) (finding that a plaintiff stated a claim for First Amendment retaliation when alleging that a police officer told him to leave or be arrested for panhandling); *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 504cv1453, 2005 WL 1460424, at *9 (N.D.N.Y. June 20, 2005) (denying a motion to dismiss on a claim for First Amendment retaliation where a police officer threatened to arrest the plaintiff observer criticizing the excessive manner in which the defendant officer conducted an arrest of a third party).  The Court agrees with its sister district courts that threatening to arrest an individual with the aim of suppressing speech is a constitutional tort regardless of whether the threat is carried out.

The Court finds that Plaintiff has alleged facts sufficient to establish a constitutional tort for First Amendment retaliation.

### b. Plaintiff Properly Alleged Absence of Probable Cause

The parties disagree on whether Plaintiff has properly alleged the absence of probable cause. (Mem. Opp'n Mot. Dismiss at 4; Reply at 3.)  Whether the absence of probable cause is even required depends on the type of First Amendment retaliation alleged. *See Hartman v.*

11

*Moore*, 547 U.S. 250, 252, 265-66 (2006) (holding that plaintiffs in retaliatory prosecution claims must allege an absence of probable cause); *Reichle v. Howards*, 566 U.S. 658, 668-69 (2012) (clarifying that the no-probable cause requirement in retaliatory prosecution claims may not apply to retaliatory arrests); *Lozman*, 138 S. Ct. at 1954 (holding that a retaliatory arrest pursuant to local policy does not require an allegation of the absence of probable cause); *Neives*, 139 S. Ct. at 1727 (holding that plaintiffs must allege an absence of probable cause in retaliatory arrests, but providing for "a narrow qualification [for when] officers have probable cause to make arrests, but typically exercise their discretion not to do so").

This claim is not quite a retaliatory arrest claim, as it alleges a threatened retaliatory arrest instead of an actual arrest.  As such, it is not clear whether the presence of probable cause defeats the claim. Further, the claim could fall under the "narrow qualification" from *Neives* for retaliatory arrest claims that do not require an absence of probable cause.  In *Higginbotham v. Brauer*, the District Court for the District of Maryland found that a similar claim fell within the "narrow qualification." No. 19-1067, 2020 WL 4569520, at *6 (D. Md. Aug. 7, 2020).  In that case, the plaintiff observed the defendant officer put a woman in a chokehold and body slam her to the ground. *Id.* at *1.  The plaintiff said that the defendant officer was being excessive, and the officer told him to "shut the fuck up." *Id.*  The plaintiff said the defendant would not have arrested the third party in such an excessive manner if the third party was white. *Id.*  The defendant had another officer detain the plaintiff, and later the defendant violently arrested the plaintiff. *Id.* *2.  The defendant officer informed the plaintiff that he had incited a riot and said, "you people need to learn how to keep your mouth shut." *Id*. The plaintiff asked if he meant black people, and the defendant officer confirmed that he meant black people. *Id.*  Even though the plaintiff brought claims based on the Fourth Amendment, the court discussed First Amendment retaliatory arrests. *Id.* at *5.  The court construed the facts in the light most

12

favorable to the plaintiff and found police would not normally arrest third parties that criticize the officers during an arrest of another person. *Id*. at *6.  Likewise, it would be reasonable for this Court to find that police normally do not escalate and arrest individuals that wait until finding a well-lit area to pull over for minor traffic offenses.

However, given that Plaintiff has alleged an absence of probable cause, the Court will not decide these motions on that ground.  Defendants claim that "the Plaintiff does not allege that the temporary tag was properly displayed nor does the Plaintiff allege that the temporary tag was visible to the officers prior to the Plaintiff pulling his vehicle into the BP service station." (ECF No. 32 at 3).  However, Plaintiff does allege that the temporary tags were visible to Defendant Crocker during the car pursuit. (Compl. ¶ 14.)  Additionally, Plaintiff directly alleges that "Defendants lacked probable cause or a reasonable articulable suspicion that [Plaintiff's] vehicle lacked license plates." (*Id.* at ¶ 19.)  Furthermore, Plaintiff claims that Defendants saw his tags once he parked in the BP, at which point they "knew or should have known that [Plaintiff] had license plates *properly displayed* on the vehicle and thus *they lacked probable cause* or a reasonable suspicion to continue the detention." (*Id.* ¶ 67) (emphasis added).  In fact, Plaintiff repeatedly alleges that there was no probable cause throughout the Complaint. (*Id.* ¶¶ 75-76, 79, 81, 83, 92, 99, 122, 126, 136.)

The issue of whether probable cause exists is a jury question. *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 379 (Va. 2021); *see Hall v. Wal-Mart Stores East Inc.*, No. 1:03cv56, 2003 U.S. Dist. 21016, at *12-13 (W.D. Va. Nov. 21, 2003).  As such, it is inappropriate for the Court to decide, on a motion to dismiss, whether probable cause existed.  Thus, Plaintiff has properly alleged a lack of probable cause and has not run afoul of the "no-probable cause" requirement.

Therefore, the Court denies the Motions to Dismiss for this claim.

13

## IV. PLAINTIFF'S MOTION TO FIND DEFENDANT GUTIERREZ'S ANSWER DEFICIENT

### A. Legal Standard

Federal Rule of Civil Procedure 8 ("Rule 8") provides that an answer must "state in short and plain terms its defenses to each claim asserted against it" and "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1).  Further, "[a] denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2).  In doing so, a party can either provide a general denial, specifically deny designated allegations, or deny all allegations except those specifically admitted. Fed. R. Civ. P. 8(b)(3).

### B. Discussion

Plaintiff argues that paragraphs 13-15, 23-28, 30-34, 36-45, 47-50, 52-53, and 55 of Defendant's Answer are insufficient under Rule 8, should be stricken, and should be deemed admitted. (Mem. Supp. Mot. to Strike at 3, ECF No. 24.)  Each of these paragraphs contains a variation of the following language:

> The allegations of paragraph [ ] seek to recount and recite events and statements that are visible and audible from video recordings of the incident at issue in this action. These video recordings speak for themselves, and this defendant denies the allegations of paragraph [ ] to the extent they misstate or mischaracterize the contents of such video recordings . . . . This defendant denies all allegations of paragraph [] not specifically admitted above.

(*Id.*)  Plaintiff contends that this phrase does not fairly respond to the substance of each corresponding allegation. (*Id.*)

Defendant argues that "[t]here is no requirement in the Federal Rules or elsewhere that Defendant Gutierrez quibble with Plaintiff's characterization of the actual content of exhibits . . .." (ECF No. 30 at 2.)  As such, Defendant contends that his Answer does respond to the substance of the allegations of the Complaint. (*Id.*)

Merely stating that a document "speaks for itself" is not sufficient under Rule 8;

however, if the answer, when read as a whole, admits a portion of the allegation and denies a portion of the allegation, then it is sufficient. *See Edwards v. CSXT Transportation, Inc.*, 338 F.R.D. 590, 594 (E.D.N.C. 2021) (finding that a paragraph asserting that "the document speaks for itself and [defendant] denies plaintiffs' characterization of it" did meet Rule 8(b)'s requirements); *Angell v. Allstate Prop. & Cas. Ins. Co. (In re Caceres)*, No. 18-80776, 2020 WL 6891916, at *1-2 (Bankr. M.D.N.C. Nov. 2, 2020) (denying a motion to strike portions of the answer that stated that the transcript "speaks for itself"); *Bradford v. HSBC Mortgage Corp.*, No. 1:09cv1226, 2011 WL 9933767, at *1-2 (E.D. Va. Jan. 21, 2011) (denying a motion to strike answers and affirmative defenses for an answer that included paragraphs stating that a document "speaks for itself").

In *Edwards v. CSXT Transportation, Inc.*, the court noted that "[a]ttempts to avoid admitting or denying an allegation by claiming that it contains a legal conclusion, that a *document speaks for itself*, or similar evasive responses are inappropriate." 338 F.R.D. at 594. The defendant's answer contained paragraphs similar to those in Defendant Gutierrez's Answer. The paragraphs stated the document being referenced "speaks for itself" and that the defendant denied the plaintiff's characterization, just as Defendant Gutierrez's Answer states that the "video recordings speak for themselves" and that he denies the allegations to the "extent they misstate or mischaracterize the contents of such video recordings." *See id.* The paragraphs at issue in *Edwards* also contained a statement denying allegations "[e]xcept as specifically admitted." *Id.* Similarly, paragraphs in Defendant Gutierrez's Answer contain a statement denying allegations except as specifically admitted. (Mem. Supp. Mot. to Strike at 3.) The court in *Edwards* found that answer to be sufficient. 338 F.R.D. at 594.

The answer at issue in *In re Caceres* contained paragraphs stating that the document or transcript referenced in the complaint "speaks for itself." 2020 WL 6891916, at *2. However, the court noted that the answer contained a general denial denying "each and every allegation of the Complaint not specifically and expressly admitted." *Id*. The court declined to strike the paragraphs containing the phrase "speaks for itself." *Id.* Likewise, Defendant Gutierrez's Answer contains a general denial stating "[t]his Defendant denies all allegations of the Complaint not specifically admitted herein." (ECF No. 17 at 16.)

Given that each paragraph at issue contains a statement denying any allegation not specifically admitted to and that there is a general denial statement at the end of the Answer, Defendant Gutierrez has done more than merely state that the video recordings speak for themselves. While the Answer could be more responsive, the Answer meets the minimum requirements of Rule 8(b), as it admits or denies the allegations and fairly responds to the substance of the allegations. The Court will deny the Motion to Find Defendant's Answer Deficient (ECF No. 23).

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendant Gutierrez's Motion to Dismiss Count IV (ECF No. 15), deny Defendant Crocker's Motion to Dismiss Count IV (ECF No. 19), and deny Plaintiff's Motion to Find Defendant Gutierrez's Answer Deficient (ECF No. 23).

An appropriate Order shall issue.

/s/

_____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: February 2, 2022

16