**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| Caron Nazario | ) | |
| *Plaintiff,* | ) | |
| v. | ) | Civil Action No. 2:21-cv-00169 |
| | ) | |
| **Joe Gutierrez, et. al.** | ) | |
| | ) | |
| *Defendants* | ) | |

<u>**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT DEFENDANT**</u>
<u>**CROCKERS EXPERT WITNESS BRANDON TATUM**</u>

COMES NOW, the plaintiff, Lt. Caron Nazaro, by Counsel, and in support of his motion to exclude and/or limit the testimony of Brandon Tatum, one of defendant Crocker's designated expert witnesses, and in support thereof states as follows:

## I.        Introduction

In this matter, Defendant Crocker has designated and law enforcement expert Brandon Tatum.  Brandon Tatum is not an expert in law enforcement, but a media personality.  His opinions are not expressed to a reasonable degree of professional certainty and based on prevailing standards– rather they are his personal opinions, they lack the appropriate foundation, are conjecture, omit many material facts about the encounter, and at their base constitute impermissible attempts to opine on witness credibility and to instruct the jury on how the verdict should be read.  Mr. Tatum's testimony should be excluded in its entirety pursuant to Fed. R. Evid. 402, 403, and 702.  Further, Defendant Crocker has already designated a Law Enforcement Expert – Ken Wallantine, thus the subsequent and further designation violates the Court's pretrial scheduling order.  Thus, Mr. Tatum should be excluded.

## II.    Legal Standard

Fed. R. Evid. 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  The proponent of the expert testimony in question must establish admissibility by a preponderance of proof.  *See Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592, n. 10 (1993)

Courts are required to act as gatekeepers to ensure that expert testimony rests on a reliable foundation and is relevant to the task at hand.  *Bresler v. Wilmington Trust Co*., 855 F.3d 178, 195 (4th Cir. 2017). *See Daubert*, 509 U.S. at 588.  This function is essential as "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 595).  "As such, the importance of [the] gatekeeping function cannot be overstated." *Sadris v. Overhead Door Corp.*, 10 F.4th. 268, 283 (4th Cir. 2021) (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018).

In assessing the validity of the methodology employed by a proposed expert witness, a court may consider whether the expert witness's theory or technique: (1) "can be or has been tested"; (2) "has been subjected to peer review and publication"; (3) "has a high known or potential rate of error"; and (4) is generally accepted "within a relevant scientific community." *Bresler*, 855 F.3d at 195, but these factors are neither, definitive, nor exhaustive, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, (1999), and a district court has considerable leeway in

deciding in a particular case how to go about determining whether particular expert testimony is reliable. *United States v. Wilson*, 484 F.3d 267, 273 (4th Cir. 2007).

Expert opinions must be reliable, possess the adequate foundation, be relevant, and assist the jury in its determination to be admissible under Fed. R. Evid. 702, *Oglesby v. GMC*, 190 F.3d 244, 249 (4th Cir. 1999); *see also*, *Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th. Cir. 1993). Experts may not engage in speculation or conjecture, as opinions based on conjecture, hypothesis, subjective belief, or unsupported speculation do not assist the trier of fact. *E.g. Daubert*, 509 U.S. at 590. Experts may not invade the province of the jury; thus, they may not opine on witness credibility, *e.g. United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988), they may not merely state legal conclusion or apply facts to the law and draw conclusions about the case therefrom, *United States v. Barile*, 286 F.3d 749, 760 (4th Cir., 2002) (citing *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997), or use language that has a separate, distinct, and specialized meaning in the law different from that present in the vernacular. *Barile*, 286 F.3d at 760. Experts may not offer opinions that amount to no more than the expert's opinion on how the verdict should read. *Id.* Finally, the expert opinions must be otherwise admissible under the other Federal Rules of Evidence and Civil Procedure. *See, e.g., Barile*, 286 F.3d at 759.

### III.   Argument

**IIIb. Defendant Crocker's Law Enforcement Expert.**

**Qualification**

Defendant Crocker has designated Brandon Tatum as a law enforcement expert to render opinions as to the "reasonableness of [the defendant's] actions in classifying the stop as high-risk/felony, the show of force and escalation/de-escalation of force based on the action and in action of the Plaintiff, the reasonable inferences for police officers when observing a newer

model driving without visible license tags, the risks (and perceptions) of the Plaintiff's actions in driving below the speed limit for more than a mile prior to pulling over, training of police officers on how to interpret the actions by the Plaintiff and impact on a traffic stop such as the one at the center of this law suit." **Doc. 84.2 , p. 1; Doc 84.1, p. 2**. His designation is **Doc. 84.1**. Mr. Tatum's signed opinion, is in the record is **Doc. 84.2**. Mr. Tatum's resume is **Doc. 84.3**, and his Wikipedia page is **Doc. 84.4**, his IMDB page is attached as is **Doc. 84.5**, and page purporting to show Mr. Tatum's press interviews is **Doc. 84.6**, and a page allegedly from Amazon selling his recently published book is **Doc. 84.7**. Mr. Tatum included the Wikipedia page, the IMDB Page the press interview page, and the Amazon page with his CV.

However, Mr. Tatum lacks adequate qualifications—that is, the requisite knowledge, skill, experience, training, or education—to make it past the *Daubert* gate. Rule 26(a)(2)(B)(iv) requires the defendant to disclose Mr. Tatum's qualifications, but Mr. Tatum CV consists of 4 paragraphs of work history; two lines of education (a B.A. in sociology and current enrollment in a Business Leadership Masters); a two-page Wikipedia article; fourteen pages from an Internet movie database (https://www.imdb.com/name/nm9631262); one page of a website with screenshots of press appearances; and an Amazon page for a book that has not been published.

These records indicate that Mr. Tatum *was* a law enforcement officer for Tucson Arizona (a department with its own rich history of excessive force violations[1]), but his tenure was *at most* only six years – and it ended five years ago. **Doc. 84.3**. He fails to identify _**any**_ training he when through during his tenure as a law enforcement officer, and he identifies no knowledge,

---

[1] https://tucson.com/news/local/2-9-million-settlement-approved-in-tucson-police-custody-death/article_32c9ffcc-1216-5be0-bb46-4d19eaf13345.html (last visited, 1/14/2022); *Spears v. City of Tucson*, No. Civ. 14-2352*TUC-CKJ (2015); *Brown v. City of Tuscon*, CV-90-00565-JMR (D. Az. 1997); *Feinberg v. Tuscon Police Dept.*, CV-99-0482-ACM (D. Az. 1992); *Brown v. City of Tuscon Police Department*, No. CV-93-00565-JMR (D. Az. 1997).

experience, training, or education that would familiarize him with Virginia or with national law enforcement standards. He identifies no law enforcement or other relevant knowledge, experience, training, or education after 2017.

Instead, Mr. Tatum has turned himself into a media personality, a self-described "political commentator, podcaster, and youtuber." **Doc. 84.4, p.1.** He abandoned law enforcement for a career in public relations, media, and politics. After leaving law enforcement in 2017, he joined Listable Media – a politically conservative content-producer that owns and operates The Western Journal, and the Conservative Tribune. **Doc. 84.3, p. 1; Doc. 84.4, p. 2.** He then served as director of urban engagement for the conservative action group, Turning Point USA, before founding his own media company in late 2019. **Doc. 84.4, p. 2.** He alleges to have co-founded BLEXIT, with Canace Owens, to "educate minorities across America." **Doc. 84.3.** In 2021 he worked as an advisor/spokesperson for Kwesst Microsystems, Inc. an arms dealer seeking to sell "non-lethal" weapons to the military and law enforcement. Since 2016 he is alleged to have run his own Youtube Channel "concerning law enforcement, current events, race relations, and political commentary." **Doc. 84.3.** While per his IMDB cite, his list of media appearances is prolix, and the subject matter varied, notably absent from his "CV" is any further substantive law enforcement experience, training, or education.

In short, Mr. Tatum is not a law enforcement expert. He is a pundit--a talking head well-practiced sophistry and demagoguery. He lacks the relevant training, experience, and foundation to make any opinion he offers reliable. Thus, nothing he could offer would assist the jury in its determination and therefore he should be excluded. Fed. R. Evid. 702, *Oglesby v. GMC*, 190 F.3d 244, 249 (4th. Cir. 1999); *see also*, *Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th. Cir. 1993).

**Foundation**

Experts, like all witnesses, must have an adequate foundation for the opinions that they express. *E.g. Fed. R. Civ. P 702-3, Ogelsby* 190 F.3d at 251. Mr. Tatum's report lacks adequate foundation in many respects.

First, many of Mr. Tatum's representation purport to represent national standards, even though he had not demonstrated that he has the qualifications to speak to national standards. These statements include, for instance:

(1) "[P]olice officers **are trained to recognize cues** that may be indicators of concern for officers' safety and the safety of the public." **Doc. 84.2, p. 3.**

(2) "[T]he officers made a fair and reasonable tactical decision to conduct a high risk stop. High risk stops can be conducted to overcome violent actions by the driver or the drivers' occupants." **Doc. 84.2, p. 4.**

(3) "Violent crimes against police officers have been on the rise in America, **leading to more concerns by officers of suspicious actions that could lead to unprovoked, violent interactions.**" **Doc. 84.2, p. 4.**

(4) "I believe the tactics employed during this incident were necessary and reasonable according to the Use of Force Continuum . . ." **Doc. 84.2, p. 5.**

(5) "This tactic is used in case the plaintiff produces a legal weapon or the interaction turns legal . . ." **Doc. 84.2, p. 5.**

(6) "Based on a generalized consensus of nearly every police agency in America, the Plaintiff's Initial **defiant** behavior would be considered verbally combative and consistent with a non-compliant subject who could become violent in an attempt to resist all police commands." **Doc. 84.2, p. 4.**

(7) "…which would lead a reasonable officer to believe…" **Doc. 84.2, p. 5.**

(8) "…which was **legal and reasonable** at this point…" **Doc. 84.2, p. 6.**

(9) "Officer Crocker and Gutierrez acted appropriately according to the Use of Force Continuum." **Doc. 84.2, p. 6.**

Second, given the lack of qualifications, Mr. Tatum offers vague or imprecise, conclusory opinions without demonstrating an adequate foundation. These include, for instance:

(10)    "[T]he **plaintiff** had multiple cues that **are consistent with high-risk traffic stops** that may lead to a dangerously violent encounter. No license plate displayed on a **heavily-tinted** SUV, that **failed to yield** after a clear attempt by a marked patrol vehicle utilizing lights and sirens, **presents a unique concern**." **Doc. 84.2, p. 3.**

(11)    "As both officers approached the Plaintiff, who was non-compliant **and verbally combative** . ." **Doc. 84.2, p. 5.**

(12)    "I believe this encounter would have lasted less than 10 minutes if the plaintiff would have complied with lawful commands." **Doc. 84.2, p. 7.**

(13)    The vehicle also appeared to initially drive by several **locations that would be reasonable, and in most circumstances, common places**…" **Doc. 84.2, p. 3.**

(14)    "After passing **multiple reasonably lit locations**, the officer made a fair and reasonable tactical decision…" **Doc. 84.2, p. 4.**

Third, Mr. Tatum offers factual assertions a statistical or general nature without providing adequate citation or basis. They are *ipse dixit*, which *Daubert* and its progeny exclude. *See ePlus, Inc. v. Lawson Software, Inc.* 764 F. Supp. 2d 807, 814-15 (E.D. Va. 2011) (*Citing Daubert*, *Kumho*, and *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). These include:

(15)    "Many of the attacks against police officers [in 2020 and 2021] were unprovoked." **Doc. 84.2, p.4.**

(16)    2020 wasn't too far behind that number." **Doc. 84.2, p.4.**

(17)    "Based on a **generalized consensus** of nearly every police agency in America, the Plaintiff's Initial defiant behavior would be considered verbally combative and consistent with a non-compliant subject who could become violent in an attempt to resist all police commands." **Doc. 84.2, p.4.**

(18)    "As an active duty soldier, the plaintiff knew exactly what was going on.  Soldiers are trained for war and combat and are trained to appropriately respond to orders given by those in authority." **Doc. 84.2, p.7**

Fourth, Mr. Tatum offers factual assertions about the incidents at issue that are

demonstrably false, imprecise and overstated, or hyperbolic. These include:

(19)    "[A] heavily-tinted SUV, that **failed to yield** after a clear attempt by a marked patrol vehicle utilizing lights and sirens." **Doc. 84.2, p.3.**

(20)    "The Plaintiff refused to obey nearly every command given by both uniformed officers." **Doc. 84.2, p. 4.**

(21)    "Plaintiff, who was noncompliant **and verbally combative** . . ." **Doc. 84.2, p.5.**

(22)    "Officer Gutierrez explained to the plaintiff why he was being stopped and needed to get out of the vehicle. The plaintiff then acknowledged and continued to refuse." **Doc. 84.2, p.5.**

(23)    "The plaintiff continued to be passively resistant and not compliant to any of the commands the officers have [sic] him, even after de-escalation tactics were deployed. The plaintiff eventually took his seatbelt off after several requests to do so. Due to the plaintiffs [sic] continued noncompliance, **active and passive resistance**, both officers ordered him to the ground for their safety. The plaintiff **actively resisted** both Officer Gutierrez's and Crocker's attempts to detain him. Because the plaintiff had stiffened his body and showed no signs of complying, Officer Gutierrez employed hard control "peroneal strikes" . . . When these strikes were ineffective, Officer Gutierrez discontinued the strikes, which is consistent with training. Both officers were able to wrestle him to the ground and handcuff him for their safety and the safety of the public." **Doc. 84.2, p.6.**

(24)    "[T]he plaintiff[] **immediate[] set[] up his cell phone and ma[de] the initial statement, 'I'm not getting out of the vehicle**.'" **Doc. 84.2, p.7.**

(25)    The vehicle also appeared to initially drive by several locations that would be **reasonable, and in most circumstances, common places**…" **Doc. 84.2, p. 3.**

(26)    "After passing **multiple reasonably lit locations**, the officer made a fair and reasonable tactical decision…" **Doc. 84.2, p. 4.**

Fifth and finally, Mr. Tatum offers assertions that go well beyond law enforcement

expertise, and for which he has not otherwise shown an adequate basis:

(27)    "I believe the plaintiff's immediately setting up his cell phone and making the initial statement, 'I'm not getting out of the vehicle', showed he had no intent to comply." **Doc. 84.2, p.7.**

(28)   "As an active duty soldier, the plaintiff knew exactly what was going on. Soldiers and trained for war and combat and are trained to appropriately respond to orders given by those in authority." **Doc. 84.2, p.7.**

(29)   "The plaintiff's nonchalant behavior was an indicator that he was not afraid." **Doc. 84.2, p.7.**

**Relevance**

Testimony is relevant if it has any tendency to make a fact more or less probable than it would be without evidence.  **Fed. R. Civ. P. 401**, and if it is not relevant, it is not admissible.

**Fed. R. Civ. P. 402**.  Mr. Tatum makes the following statement that is wholly irrelevant:

(30)   "Violent crimes against police officers have been on the rise in America, leading to more concerns by officers of suspicious actions that could lead to unprovoked, violent interactions. According to the FBI's Law Enforcemetn Officers Killed and Assaulted database (LEOKA), Violent crimes have surged upwards of 55% in 2021 from 2020." **Doc. 84.2, p.4.**

This action occurred in 2020 and not 2021, therefore any statements about crime in 2021 has no valid connection to the pertinent inquiry.  Therefore, it should be excluded, and Mr. Tatum should be precluded from making any statements of this sort, inflammatory but irrelevant statements should this court chose to let him testify.

**Credibility**

Experts may not opine on witness credibility as that invades the province of the jury, *e.g. United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988).  In is opinion Mr. Tatum makes the following statements, which amount to thinly veiled attempts to opine on the credibility of the witness.

(31)   "I believe that the Plaintiff's immediately setting up his cell phone and making the initial statement 'I'm not getting out of the vehicle' showed he had no intent to comply." **Doc. 84.2, p.7.**

(32)   "The plaintiff's nonchalant behavior was an indicator that he was not afraid." **Doc. 84.2, p.7.**

(33)   "When the plaintiff pulled into a well-lit area and still did not comply, **this leads me to believe that he had no intentions on complying**." **Doc. 84.2, p.7.**

These statements do not purport to be statements of what a reasonable officer would belief, but are merely the subjective opinions of the witness, adversely opinion Plaintiff's intent, purposes, and mental states, so as to undermine the Plaintiff's credibility.

**Methodology and Legal Opinions.**

In order to pass through the *Daubert* gate, the expert's opinion and methodologies must be generally accepted within a relevant scientific community. *Bresler*, 855 F.3d at 195, and the expert must assert the opinion with a reasonable degree of professional certainty. *Fitzgerald v.Manning*, 679 F.2d, 341, 350 (4th. Cir. 1982).  They cannot be opinions based off of the subjective belief or unsupported speculation as neither assist the trier of fact.  *E.g. Daubert*, 509 U.S. at 590.  Mr. Tatum's opinion is not offered to a reasonable degree of professional certainty, and nowhere does he allege that it is.  Instead, Mr. Tatum opinion is just his own subjective belief, it is a statement regarding how Mr. Tatum believes the jury should decide.

In section one of his opinion, Mr. Tatum begins:

(34) _**I**_ believe a high/risk/felony traffic stop was appropriate regarding the traffic stop in this case.  **Doc. 84.2, p.3** (emphasis added).

In section three of his opinion, Mr. Tatum begins

(35) "*I* believe the tactics employed during this incident were necessary and reasonable according to the Use of Force Continuum and *my* personal law enforcement expirence." **Doc. 84.2, p. 5.**(emphasis added).

In section 4, Mr. Tatum begins:

(36) "The plaintiff's actions necessitated the response"... **Doc. 84.2, p.6**

(37) "Both officer's reactions were due to the overt actions of the plaintiff" **Doc. 84.2, p.6.**

(38) "In *my* opinion…Crocker and Gutierrez acted appropriately and reasonably given the Use of Force Continuum and the training and experience *I have had*." **Doc. 84.2, pp 6-7.** (emphasis added)

(39) "*I* believe that these officers were reasonable." **Doc. 84.2, p. 7** (emphasis added).

What Mr. Tatum's subjective beliefs are not relevant.  Mr. Tatum is not basing this opinion not on generally accepted law enforcement practices, nor careful research into the facts of this case, but on his personal subjective opinion and what he remembers of his own training— training he admits was not like the other departments.[2] These personal opinions are not proper expert opinion and should not be permitted to pass through the *Daubert* gate. *See*, *Daubert*, 509 U.S. at 590; Bresler, 855 F.3d at 195; *Manning*, 679 F.2d at 350.

Moreover, the statements that these actions were "appropriate" that they were "reasonable", that they it was the plaintiff that caused all of this, invades the province of the jury,

---

[2] For example, Mr. Tatum has admitted that in his academy he was taught that he had to be prepared to kill every single person you interact with, and that the other academies do not teach you that.  *See* The Rubin Report, x-Police Officer Exposes The Reality of Race & Policing. https://www.youtube.com/watch?v=k0Y35EpOiFc Oct. 27, 2019 (at 41:04 – 1:09:22) (last visited January 14, 2022).

it is rendering a legal opinion and telling the jury how Mr. Tatum believes that the jury should rule in this particular matter, with these particular defendants.  It is *not* a discussion on how a reasonably well-trained officer would respond; it is a direct comment on liability and the law. These are not opinions "embracing" an ultimate issue;, they are opinions directly on an ultimate issue.  This is forbidden.  *Barile*, 286 F.3d at 760.  Thus, these statements, and Mr. Tatum's attempts to inject his personal opinions and beliefs, and his attempts to comment directly on liability should be excluded.

**Impermissible Comment on the Ultimate Issues.**

Federal Rule of Evidence 704(a) specifically permits an expert to proffer testimony that "embraces an ultimate issue to be decided by the trier of fact."  However, this rule (sometimes referred to as "the ultimate issue rule") does not permit an expert to instruct the jury as to what result to reach.  The advisory committee explains, "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus, the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick § 12.

The objective reasonableness of defendant Gutierrez and Crocker's use of force, and their response to Lt. Nazario is one of the ultimate issues in this matter.  *Elliott v.* Leavitt, 99 F.3d

640, 642 (4th. Circuit, 1996) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Thus, the experts may not directly express an opinion on the objective reasonableness of the defendant's conduct. *Clem v. Corbeau*, 98 Fed. App. 197, 201 (4th. Cir., 2004). *See also*, Fed. R. Evid. 704 Advisory Notes. Mr. Tatum's report contains multiple comments directly on the ultimate issue, using the language of the ultimate issues, and thus it is impermissible and should be excluded.

In excessive force litigation involving law enforcement, unless the testifying expert is also an eyewitness, law enforcement use of force experts are generally precluded from commenting on whether or not a defendant's actions were or were not reasonable, rather their analysis is generally couched in hypotheticals so as to avoid commenting directly upon the ultimate issue and applying the actual facts to the actual law. *See, United States v. Perkins,* 470 F.3d 150, 159. (4th. Cir. 2006). *See, also, Samples v. City of Atlanta*, 916 F.2d 1548, 1551-52 (11th Cir. 1990).

For example, in *Clem v. Corbeau*, an excessive force case involving deadly force, the proffered experts did not provide specialized knowledge, or obscure skills – rather their only relevant testimony involved, as the court described it, was "opinion, given their particular interpretations of the contested facts, as to the reasonableness of the defendant's use of force, that is shooting the Plaintiff." *Clem v. Corbeau*, 98 Fed. Appx. 197, 201 (4th Circuit, 2004). The district court excluded the experts, and the 4th Circuit upheld the district Court's determination. *Id*. In *United States v. Perkins*, the defendant, Michael Perkins, a former Petersburg police officer was convicted for causing bodily injury under color of law. *United States v. Perkins*, 470 F.3d 150, 151 (4th. Cir. 2006). The government used a series of witnesses, five police officers, two of whom were eyewitnesses, used only as lay witnesses, *Perkins*, 470

F.3d at 153-54 and one expert witness.  *Perkins*, 470 F.3d 154.  All five of the police lay-witnesses testified as to the reasonableness of the force that Perkins used. *Id*.

The 4th Circuit held that it was permissible for the eyewitness lay witnesses to opine on reasonableness, because their testimony was framed in terms of their eyewitness observations and particularized experiences as police officers.  *Perkins* 470 F.3d at 156.  The 4th. Circuit then ruled that the district court committed error in letting the non-eyewitness officers testify to the reasonableness because the elicited testimony was in response to "hypothetical questions based on secondhand accounts making their testimony similar, if not indistinguishable from the properly qualified expert" and thus the testimony lacked an appropriate foundation. *Id*.

The expert witness, on the other hand, gave his opinion as to reasonableness and legitimacy of defendant Perkins' action in response to a series of hypotheticals, *Perkins* 470 F.3d at 154.  The 4th Circuit concluded that the Government's use of hypotheticals avoided the baseline legal conclusion of reasonableness and determined that the district court did not err when admitting the force expert's testimony.  *Perkins* 470 F.3d at 159.  The contrapositive of this is using non-hypotheticals to opine on reasonableness is an impermissible comment on the ultimate question.  *See*, *Perkins* 470 F.3d at 159.  *See, also, Samples v. City of Atlanta*, 916 F.2d 1548, 1551-52 (11th 1990).

In this matter, Mr. Tatum has made multiple statements which are impermissible under 704, *Perkins*, and *Clem*.

(40)    "I believe a high risk/felony stop was appropriate regarding the traffic stop in this case.  **Doc. 84.2, p. 3.**

(41)    "The vehicle also appeared to initially drive by several locations that would be reasonable, and in most circumstances, common places…" **Doc. 84.2, p. 3.**

(42)    "After passing multiple reasonably lit locations, the officer made a fair and reasonable tactical decision…" **Doc. 84.2, p. 4.**

(43)   "I believe the tactics employed during this incident were necessary and reasonable…" **Doc. 84.2, p. 5.**

(44)   "Due to the Plaintiff disobeying the Officers' commands (Passive Resistance) to show his hands, I find it to be reasonable for Officer Crocker and responding officer Gutierrez…" **Doc. 84.2, p. 5.**

(45)   "As both officers approached the Plaintiff who was non-complaint and verbally combative, the were able to observe nonviolent behavioral cues that let them to deescalate force." **Doc. 84.2, p. 5.**

(46)   "The plaintiff then acknowledged and continued to refuse, which would lead a reasonable officer to believe verbal commands alone will not gain compliance." **Doc. 84.2, pp. 5-6.**

(47)   "The plaintiff's actions necessitated the response by Officer Crocker and Gutierrez." **Doc. 84.2, p. 6.**

(48)   "In my opinion, from his driving behavior, his noncompliance, to active resistance, and his overall escalation during the encounter, Officer Crocker and Gutierrez acted appropriately…" **Doc. 84.2, p. 6.**

(49)   I believe the officers were reasonable in being cautions and continuing the show of force when the Plaintiff failed to show his hands and exit the vehicle. **Doc. 84.2, p. 7.**

Unlike the expert in *Perkins*, these assessments are not based on hypotheticals, and almost identical to the expert in *Clem*, they are direct comments on liability, on the reasonableness of the defendant's conduct. Thus, they do not merely "touch" upon the ultimate issue, the directly address the ultimate issue applying *the* facts to law and therefore, they are impermissible as they are of no help to the jury; Mr. Tatum is in no better position than the jury to discuss how the Plaintiff behaved, or how the officer's responded. The jury will be able to see the videos, and reports, and evidence from themselves and draw the conclusions about what the plainiffs and defendants did not do. Therefore, these comments should be excluded.

**Mr. Tatum Should be Excluded Pursuant to Fed. R. Evid. 403**

Preventing an expert from misleading a jury is one of the key functions of the *Daubert* gate-keeping function. *See*, *Westberry*, 178 F.3d at 261; *Daubert*, 509 U.S. at 595.  Crocker selected as his "police expert" a Youtuber, a political commentator practiced in sophistry and demagoguery.  The court must be conscientious of the risk that this witness, who is an expert in political advocacy and not police behavior, will use skills as a social commentor in lieu proper expert opinion to confuse and mislead the jury.

Assuming *arguendo,* that Mr. Tatum's opinion has *some* relevance and *some* probative value, its prejudicial effect substantially outweighs both under Rule 703, and the testimony of this demagogue runs the risk of both confusing and misleading the jury. If an expert opinion satisfies Fed. R. Evid. 702, it still must be admissible under all other applicable federal rules of evidence.  *See, e.g., Barile*, 286 F.3d at 759.

 As demonstrated above, Mr. Tatum's opinion is shot through with representations and assertions that lack foundation, or are otherwise improper. This reduces any probative value of the opinion and creates and creates undue risk of confusion and misleading the jury. Furthermore, he consistently makes vague and imprecise, hyperbolic assertions in place of a precise analysis. The probative value is further reduced, and the danger of misleading increased, by the many *material* facts this witness ignores.  For instance, he offers no discussion on the fact Gutierrez threatened to kill Lt. Nazario, **Doc. 82.7 at 18:37:57-:38:04**, and told Lt. Nazario he should be afraid to exit the vehicle.  **Doc. 82.7 at 18:38:10 - :34.**

The misleading nature of Mr. Tatum's testimony, his lack of expertise, his training as a political sophist, and the fact that his opinion makes *material* omissions and false statements leads inexorably to the conclusion that any relevance, and probative value is substantially

outweighed by the prejudicial effect that Mr. Tatum's incomplete, misleading testimony will mislead and confuse the jury.  Therefore, this court should exclude Mr. Tatum from testifying; he is not qualified and even if the opinion were admissible under Fed. R. Evid. 702, it fails under fails under Fed. R. Evid. 403.

**Mr. Tatum should be excluded under the pretrial scheduling order and Fed. R. Evid. 403.**

Paragraph 5 of this court's initial pretrial scheduling order (**DOC. 39**) states that the parties may rely on the testimony of one expert per topic, except by order of the Court.  The defendants seem to have cross-designated and apparently plan on using each other's police experts.  **Docs. 97 and 98.**  A brief review of their opinions demonstrate that there is substantial overlap in the topics that they have been paid to address.  Thus, this dual deployment violates the Court's scheduling order and is yet another reason that this Court should exclude Mr. Tatum.  In addition to the violation of the scheduling order, such a dual designation law enforcement experts is cumulative, and needlessly so, further and placing not one but two police experts covering such similar material in front of the jury creates a substantial risk of unfair prejudice and misleading the jury by such repetitious presentations as a jury may impermissibly infer greater weight to the defendants experts over the plaintiff's, not because of the substance of the testimony and rather from the number of witnesses that each side has brought to bear on the matter: the defendants two verses the plaintiff's one.  Thus, whatever probative information that Mr. Tatum may bring to the table is substantially outweighed by the risk of confusing and misleading the jury by presenting these dual "experts" on police procedure.

## IV.    Conclusion

Defendant Crocker's law-enforcement expert, Mr. Tatum, is not a law-enforcement expert, he is not a psychologist, he is a Youtuber and political commentator.  His opinions

lack foundation, are not based on reliable methodologies, comment on credibility and directly on ultimate issues.  They make material omissions and misrepresentations. Therefore, neither Mr. Tatum nor his opinions satisfy the requirements of *Daubert*, and this court should exclude him or substantially limit his testimony.  Further, Mr. Tatum is the expert that *Daubert* warns about: an expert whose testimony's power lies almost uniquely in its ability to mislead and the danger that this testimony will both confuse and mislead the jury substantially outweighs any probative value it may have.  Therefore, this court should exclude Mr. Tatum, he is not a *Daubert* qualified expert and his testimony will run afoul of, *inter alia*, Fed. R. Evid. 403.  Finally, as Defendant Crocker has designated two police experts in violation of the Court's scheduling order and the probative value of the repetition of the dual experts on police procedures is substantially outweighed by the danger of prejudice, misleading the jury, wasting time, and needlessly presenting cumulative evidence.

     **WHEREFORE**, the Plaintiff, by counsel, respectfully requests that this honorable court enter an order:

(1) Excluding any and all testimony from Brandon Tatum.  Or

(2) In the alternative to (1) above, enter an order prohibiting Mr. Tatum from

     a.  Making any statements for which he lacks an adequate foundation, or those that are imprecise rhetorical hyperbole, or are just plain false, such as those identified in this brief as statements (1) – (29).

     b.  Making irrelevant statements, such as those identified as statement (30).

     c.  Making any statements that opine directly or indirectly on a witness's credibility, such as those identified as statements (31) – (33).

    d.   Making any statements that directly comment upon the ultimate issue, or

          that attempt to substitute his subjective opinion, such as those identified as

          statements (34) – (49).

And

    (3) Any further relief as this Court deems warranted.

**September 27, 2022**

                        **Respectfully submitted,**

                    By: _/s/ Jonathan M. Arthur, Esq._
                           Counsel

                    Jonathan M. Arthur, Esq. VSB # 86323
                    j.arthur@robertslaw.org
                    Thomas H. Roberts, Esq. VSB # 26014
                    tom.roberts@robertslaw.org
                    Andrew T. Bodoh, Esq. VSB # 80143
                    andrew.bodoh@robertslaw.org
                    Thomas H. Roberts & Associates, P.C.
                    105 South 1st Street
                    Richmond, VA 23219
                    (804) 991-2002 (Direct)
                    (804) 783-2000 (Firm)
                    (804) 783-2105 (Fax)
                    _Counsel for Plaintiff_

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court's CM/ECF

system, which caused a Notice of Electronic Filing to be emailed to the following:


Coreen A. Silverman (VSB No. 43873)
Jessica A. Swauger (VSB No. 89612)
John B. Mumford, Jr. (VSB No. 38764)
HANCOCK DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Tel: (804) 967-9604
Fax: (804) 967-9888
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
*Counsel for Defendant Joe Gutierrez*

Robert L. Samuel, Jr. (VSB No. 18605)
Richard H. Matthews (VSB No. 16318)
Anne C. Lahren (VSB No. 73125)
Bryan S. Peeples (VSB No. 93709)
PENDER & COWARD
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Tel: (757) 490-6293
Fax: (757) 502-7370
rsamuel@pendercoward.com
rmatthew@pendercoward.com
alahren@pendercoward.com
bpeeples@pendercoward.com
*Counsel for Defendant Daniel Crocker*

This the 27th day of September, 2022

By: /s/ Jonathan M. Arthur, Esq.
Counsel
Jonathan M. Arthur, Esq. VSB # 86323
j.arthur@robertslaw.org
Thomas H. Roberts, Esq. VSB # 26014
tom.roberts@robertslaw.org
Andrew T. Bodoh, Esq. VSB # 80143
andrew.bodoh@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 South 1st Street
Richmond, VA 23219
(804) 991-2002 (Direct)