**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | | |
|---|---|---|
| **Caron Nazario** | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 2:21-cv-00169 |
| | ) | |
| **Joe Gutierrez, et. al.** | ) | |
| | ) | |
| *Defendants* | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT DEFENDANT GUTIERREZ'S EXPERT WITNESSES

COMES NOW, the plaintiff, Lt. Caron Nazaro, by Counsel, and in support of his motion to exclude and/or limit the testimony of defendant Gutierrez's expert testimony states as follows:

### I.     Introduction

In this excessive use of force and prior-restraint case, defendant Gutierrez seeks to admit the testimony of a Mr. Kenneth R. Wallentine. Mr. Wallentine's impermissibly opines on the Plaintiff's credibility. Further, and most problematic, the opinion comments directly upon the ultimate issue objective reasonableness of the defendant's actions by directly stating as much; declaring that the Defendants' actions were reasonable. This is well beyond what Fed. R. Evid. 704(a) permits, and thus Mr. Wallentine should be excluded or substantially limited.

### II.     Legal Standard

Fed. R. Evid. 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. The proponent of

the expert testimony in question must establish admissibility by a preponderance of proof.  *See Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592, n. 10 (1993)

Courts are required to act as 'gatekeepers' to ensure that expert testimony rests on a reliable foundation and is relevant to the task at hand.  *Bresler v. Wilmington Trust Co*., 855 F.3d 178, 195 (4th Cir. 2017). *See Daubert*, 509 U.S. at 588.  This function is essential as "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Daubert, 509 U.S. at 595).  "As such, the importance of [the] gatekeeping function cannot be overstated." *Sadris v. Overhead Door Corp.*, 10 F.4th. 268, 283 (4th. Cir. 2021)(*quoting*: *United States v. Barton*, 909 F.3d 1323, 1331 (11th. Cir. 2018).

In assessing the validity of the methodology employed by a proposed expert witness, a court may consider whether the expert witness' theory or technique: (1) "can be or has been tested"; (2) "has been subjected to peer review and publication"; (3) "has a high known or potential rate of error"; and (4) is generally accepted "within a relevant scientific community." *Bresler*, 855 F.3d at 195, but these factors are neither, definitive, nor exhaustive, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, (1999), and a district court has considerable leeway in deciding in a particular case how to go about determining whether  particular expert testimony is reliable.'" *United States v. Wilson*, 484 F.3d 267, 273 (4th Cir. 2007).

Expert opinions must be based be reliable, possess the adequate foundation, and be relevant, and assist the jury in its determination to be admissible under Fed. R. Evid. 702, *Oglesby v. GMC*, 190 F.3d 244, 249 (4th. Cir. 1999); *see also*, *Kopf v. Skyrm*, 993 F.2d 374, 377-78 (4th. Cir. 1993). Experts may not engage in speculation or conjecture, as opinions based on conjecture, hypothesis, subjective belief, or unsupported speculation do not assist the trier of

fact. *E.g. Daubert*, 509 U.S. at 590. Experts may not invade the province of the jury; thus, they may not opine on witness credibility, *e.g., United States v. Cecil*, 836 F.2d 1431, 1441 (4th. Cir. 1988). While Fed. R. Evid. 704 makes it clear that an opinion is not objectionable merely because it embraces an ultimate issue, it may be excludable for other reasons such as when they state legal conclusion, apply facts to the law and draw conclusions about the case therefrom, *United States v. Barile*, 286 F.3d 749, 760 (4th. Cir., 2002)(*citing*: *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th. Cir. 1997), or use language that has a separate, distinct, and specialized meaning in the law different from that present in the vernacular, none of this testimony is helpful to the jury. *Barile*, 286 F.3d at 760. Experts may not offer opinions that amount to no more than the expert's opinion on how the verdict should read. *Id.* Finally, the expert opinions must be otherwise admissible under the other Federal Rules of Evidence and Civil Procedure. *See, e.g., Barile*, 286 F.3d at 759.

### III. Argument

**IIIb. Gutierrez Use of Force Expert.**

Mr. Gutierrez expert Fed. R. Evid. 26(a)(2)(B) designation of Mr. Wallentine's opinion is **Doc. 86-1.**

**Credibility**

Experts may not opine on witness credibility as that invades the province of the jury, *e.g., United States v. Cecil*, 836 F.2d 1431, 1441 (4th. Cir. 1988). In his opinion Mr. Wallentine makes the following statements, which are not even *thinly* veiled attempts to opine on the credibility of the witness.

> (1) "Plaintiff repeatedly told the officers that he would not get out of the car, suggesting a conscious decision to resist detention from the beginning of the encounter". **Doc. 86-1, p. 14**.

This is a comment on Lt. Nazario's credibility. It questions his truth and credibility by directly calling into doubt Lt. Nazario's multiple statements that he was just looking for a safe space to pull over.  E.g., **Doc. 1, ¶ 16 and 20.** For this reason (and due to the fact that it is rote speculation) this statement, and any like it should be prohibited.

(2) "Plaintiff suffered no apparent injury during this [OC spray] event." **Doc. 86-1, p. 15.** This is also a comment on Lt. Nazario's credibility.  It calls into question and casts doubt on the truth of Lt. Nazario's multiple statements that he was injured by the OC Spray.  **Doc. 1, ¶ 63**. For this reason, too (and due to the fact that it is rote speculation) this statement, and any like it should be prohibited.

(3) "Plaintiff seemed unaffected by the two knee strikes".  **Doc. 86-1, p. 18.**

This statement is a comment on Lt. Nazario's credibility. By questioning Lt. Nazario's multiple statements that he was injured by Gutierrez actions Mr. Wallentine is calling Lt. Nazario a liar or at least intimating that the video shows that he was and is not being truthful. **Doc. 1, ¶ 63**.  For this reason, too (and due to the fact that it is rote speculation) this statement, and any like it should be prohibited.

**Comments on the Ultimate Issue – "Reasonableness".**

Experts may not invade the province of the jury; thus, while Fed. R. Evid. 704(a) states that their opinions are not objectionable merely because they embrace an ultimate issue, they may not state legal conclusion, apply facts to the law and draw conclusions about the case therefrom, *United States v. Barile*, 286 F.3d 749, 760 (4th. Cir., 2002)(*citing*: *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th. Cir. 1997), as opinions such as these not helpful to the jury and thus are excluded.  *United States v. Perkins*, 470 F.3d 150, 158 (4th. Cir. 2006)(*citing:* Weinstein's Federal Evidence § 704.04[2][a]). In some instances, determining whether an expert

is directly addressing an ultimate issue, or making a comment on the law itself, which is forbidden, or merely making a comment that embraces an ultimate issue, can be difficult and the Court is instructed to look to see whether or not the language that the expert uses has developed a separate, distinct, and meaning at law than it does in the vernacular. *Barile*, 286 F.3d at 760. If such language has developed the distinct legal meaning, then the expert may not use that term in their comments as it comments on the law and invades the province of the jury.

In this matter, Mr. Wallentine uses words such as "resisting" in the following context:

(4) "Plaintiff repeatedly told the officers that he would not get out of the car, suggesting a conscious decision to resist detention from the beginning of the encounter." **Doc. 86-1, p. 14.**

(5) "Plaintiff physically resisted arrest by remaining seated…" **Doc. 86-1, p. 16.**

(6) "Plaintiff was uncooperative and physically resisted efforts to control his movements, complicating the officers' efforts to restrain and control him" **Doc. 86-1, p. 17.**

Whether or not Lt. Nazario was "resisting" and to what extent he was resisting, and whether or not he was resisting the detention or just the excessive force is an ultimate issue to be determined by the jury.

"Resisting" in this context is a legal term of art and has developed a meaning beyond the vernacular. For example, in the vernacular, resisting could be used to describe avoiding a lawful arrest, but not at law. *See, Jones v. Commonwealth*, 141 Va. 471, 487 (Va. S. Ct. 1925). Failing to cooperate in your arrest and making the arrest more difficult could be vernacularly described as resisting, but not at law. *See*, *Ruckman v. Commonwealth*, 28 Va. App. 428, 429 (1988). Yelling and screaming by itself is not resisting or obstruction, but not at law. *Brown v. City of Danville*, 44 Va. App. 586, 597 (2004). Resistance here is a legal term of art, apart and distinct from its vernacular. Therefore, Mr. Wallentine should be precluded from describing the Plaintiff's actions as resisting. *Barile*, 286 F.3d at 760.

**Comments on the Ultimate Issue –"Reasonableness."**

Federal Rule of Evidence 704(a) specifically permits an expert to proffer testimony that "embraces an ultimate issue to be decided by the trier of fact." However, this rule (sometimes referred to as "the ultimate issue rule") does not permit an expert to instruct the jury as to what result to reach. The advisory committee explains, "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus, the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick § 12.

The objective reasonableness of defendant Gutierrez and Crocker's use of force, and their response to Lt. Nazario is one of the ultimate issues in this matter. *Elliott v.* Leavitt, 99 F.3d 640, 642 (4th Circuit, 1996) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Thus, the experts may not directly express an opinion on the objective reasonableness of the defendant's conduct as it is not helpful to the jury. *Clem v. Corbeau*, 98 Fed. App. 197, 201 (4th. Cir., 2004). *See also,* Fed. R. Evid. 704 Advisory Notes. Mr. Wallentine's report contains multiple comments directly on the ultimate issue, using the language of the ultimate issues, and thus it is impermissible and should be excluded.

In excessive force litigation involving law enforcement, unless the testifying expert is also an eyewitness, law enforcement use of force experts are generally precluded from commenting on whether or not a defendant's actions were or were not reasonable, rather their analysis is generally couched in hypotheticals so as to avoid commenting directly upon the ultimate issue and applying the actual facts to the actual law. *See, United States v. Perkins,* 470 F.3d 150, 159. (4th. Cir. 2006); *Clem v. Corbeau*, 98 Fed. Appx. 197, 201 (4th Cir., 2004). . *See, also, Samples v. City of Atlanta*, 916 F.2d 1548, 1551-52 (1990).

For example, in *Clem v. Corbeau*, an excessive force case involving deadly force, the proffered experts did not provide specialized knowledge, or obscure skills – rather their only relevant testimony involved, as the court described it, was "opinion, given their particular interpretations of the contested facts, as to the reasonableness of the defendant's use of force, that is shooting the Plaintiff." Clem, 98 Fed. Appx. at 201. The district court excluded the experts, and the 4th Circuit upheld the district Court's determination. *Id*. In *United States v. Perkins*, the defendant, Michael Perkins, a former Petersburg police officer was convicted for causing bodily injury under color of law. *Perkins*, 470 F.3d at 151. The government used a series of witnesses, five police officers, two of whom were eyewitnesses, used only as lay witnesses, *Perkins*, 470 F.3d at 153-54 and one expert witness. *Perkins*, 470 F.3d 154. All five of the police lay-witnesses testified as to the reasonableness of the force that Perkins used. *Id*.

The 4th Circuit held that it was permissible for the eyewitness lay witnesses to opine on reasonableness, because their testimony was framed in terms of their eyewitness observations and particularized experiences as police officers. *Perkins* 470 F.3d at 156. The 4th. Circuit then ruled that the district court committed error in letting the non-eyewitness officers testify to the reasonableness because the elicited testimony was in response to "hypothetical questions based

on secondhand accounts making their testimony similar, if not indistinguishable from the properly qualified expert" and thus the testimony lacked an appropriate foundation. *Id*.

The expert witness, on the other hand, gave his opinion as to reasonableness and legitimacy of defendant Perkins' action in response to a series of hypotheticals, *Perkins* 470 F.3d at 154.  The 4th  Circuit concluded that the Government's use of hypotheticals avoided the baseline legal conclusion of reasonableness and determined that the district court did not err when admitting the force expert's testimony.  *Perkins* 470 F.3d at 159.  The contrapositive of this is using non-hypotheticals to opine on reasonableness is an impermissible comment on the ultimate question.  *See*, *Perkins* 470 F.3d at 159.  *See, also, Samples v. City of Atlanta*, 916 F.2d 1548, 1551-52 (11th Cir. 1990).

Mr. Wallentine poses no responses to any hypotheticals, rather he directly comments on the reasonableness of defendant Gutierrez and Crocker's conduct, as well as the Plaintiff's.  For example, he states:

(7) "Officer Crocker's decision to stop Plaintiff because he could not see the license plate as required by Virginia law was consistent with the actions of a well-trained and reasonable officer." **Doc. 86-1, p. 9.**

(8) "Plaintiff demonstrated sufficient unwillingness to submit to detention that a reasonable officer would use additional force to effect the detention and to handcuff Plaintiff." **Doc. 86-1, p. 16.**

(9) "Officer Gutierrez used only the amount of pepper spray that was reasonable and necessary to achieve the intended effects and to gain a measure of control over the Plaintiff." **Doc. 86-1, p. 15.**

(10)  "Applying pepper spray to Plaintiff was a reasonable technique that comported with generally accepted police practices and police training." **Doc. 86-1, p. 15.**

(11)  "The knee strikes and other force used to place Plaintiff on the ground and to handcuff him were reasonable and consistent with generally accepted training, policies, and procedures." **Doc. 86-1, p. 15.**

(12) "A reasonable and well-trained officer would have promptly and physically controlled Plaintiff, quickly handcuffed him, and then questioned him about the circumstances that led to the stop and the subsequent actions." **Doc. 86-1, p. 16.**

(13) "A reasonable and well-trained officer would have attempted to place Plaintiff on the ground once Plaintiff failed to promptly comply with the officers' orders to get on the ground." **Doc. 86-1, p. 17.**

(14) "The force used by the officers to place Plaintiff on the surface and to handcuff him was a reasonable effort to control him and comported with generally accepted police practices and police training." **Doc. 86-1, p. 18.**

(15) "The officers post-incident discussion was a reasonable effort to help Plaintiff understand an officer's perspective on a traffic stop under the circumstances created by the Plaintiff." **Doc. 86-1, p. 19.**

(16) "The officers did not threaten or improperly attempt to coerce Plaintiff, though the Plaintiff avers that he perceives that the officers attempted to infringe on his free speech rights." **Doc. 86-1, p. 19.**

(17) "Nonetheless, the officers' expression of consideration for Plaintiff due to his military service and rank and their explanation of valid law enforcement concerns when a violator fails to yield and fails to comply with reasonable commands intended to preserve safety during a traffic detention was reasonable, and consistent with generally accepted police training, policies, and practices." **Doc. 86-1, p. 19.**

(18) "A reasonable officer would have stopped Plaintiff's vehicle to investigate whether it was stolen or whether it was lawfully registered." **Doc. 86-1, p. 8.**

(19) "Given the factors observed by the officers, including Plaintiff's failure to yield without an apparent reason and the lack of visible license plate, a reasonable officer would have employed a high-risk traffic stop technique." **Doc. 86-1, p. 27.**

(20) "Officer Gutierrez' use of pepper spray to control Plaintiff was reasonable and consistent with generally accepted police training, policies, and practices. The two knee strikes were reasonable efforts to direct Plaintiff to the ground for handcuffing." **Doc. 86-1, p. 27.**

(21) "The knee strikes and other force used to place Plaintiff on the ground and to handcuff him were reasonable and consistent with generally accepted training, policies, and procedures." **Doc. 86-1, pp. 12 and 27.**

Unlike the expert in *Perkins*, these assessments are not based on hypotheticals, and almost identical to the expert in *Clem*, they are direct comments on liability, on the reasonableness of

the defendant's conduct. Thus, they do not merely "touch" upon the ultimate issue, the directly address the ultimate issue applying *the* facts to law and therefore, they are impermissible as they are unhelpful to the jury and should be excluded.

## IV.     Conclusion

The factors of Fed. R. Evid. 702 do not support admitting Mr. Wallentine's opinions. They are merely Mr. Wallentine's personal opinions regarding the actions of Lt. Caron Nazario or officers Gutierrez and Crocker. They are not based upon specialized knowledge that would help the trier of fact to understand the evidence or to determine a fact in issue, rather they are comments on how the verdict should read. Mr. Wallentine is not in any better position to view the video tapes or to respond to the testimony and exhibits as the jurors.

Mr. Wallentine's proposed testimony that Lt. Nazario form "a conscious decision to resist detention from the beginning of the encounter", "physically resisted arrest by remaining seated…", "was uncooperative and physically resisted efforts to control his movements, complicating the officers' efforts to restrain and control him" is not based upon anything not available to the jurors, but is in fact contradicted by the evidence with Lt. Nazario repeatedly requesting "What's going on?" Further, it is an impermissible comment on the plaintiff's credibility.

Mr. Wallentine's proposed testimony that Lt. Nazario "suffered no apparent injury during this [OC spray] event," or "seemed unaffected by the two knee strikes" suffers from the same fate - it is not based upon anything not available to the jurors, is not the product of reliable principles and methods or reliable application of those principles and methods to the facts of the case, but is contradicted by the evidence, is a comment on Lt. Nazario's credibility, and is simply

not helpful to the jurors at best and misleading coming from an "expert" and therefore excludable pursuant to Fed. R. Evid. 403.

Mr. Wallentine's opinions regarding the reasonableness of Officer Crocker and Officer Gutierrez are no different. The multiple opinions are not based upon anything not available to the jurors, is not the product of reliable principles and methods or reliable application of those principles and methods to the facts of the case but is contradicted by the evidence and is simply not helpful to the jurors at best and misleading coming from an "expert." Further, they are an impermissible comment on (and not merely embracing) an ultimate issue. Therefore, they should be excluded pursuant to Fed. R. Evid. 403. Therefore, Mr. Wallentine should not be permitted to testify, or if permitted should be substantially limited.

**WHEREFORE**, the Plaintiff, by counsel, respectfully requests that this honorable court enter an order:

(1) Excluding any and all testimony from Kenneth Wallentine. Or

(2) In the alternative to 1 above, enter an order prohibiting Wallentine from

   a. Making any statements that opine directly or indirectly on a witness's credibility, such as those identified as statements (1) – (3).

   b. Making any statements that directly comment upon the ultimate issue using legal terms of art, such as "resisting", like the statements identified as statements (4) – (6),

   c. Making any statements that directly comment upon the ultimate issue and the reasonableness of the officer's actions, such as the statements identified as statements (7) – (21).

And

(3) Any further relief as this Court deems warranted.

**October 7, 2022**

                                    **Respectfully submitted,**

                                By: /s/ Jonathan M. Arthur, Esq.
                                      Counsel

                                Jonathan M. Arthur, Esq. VSB # 86323
                                j.arthur@robertslaw.org
                                Thomas H. Roberts, Esq. VSB # 26014
                                tom.roberts@robertslaw.org
                                Andrew T. Bodoh, Esq. VSB # 80143
                                andrew.bodoh@robertslaw.org
                                Thomas H. Roberts & Associates, P.C.
                                105 South 1st Street
                                Richmond, VA 23219
                                (804) 991-2002 (Direct)
                                (804) 783-2000 (Firm)
                                (804) 783-2105 (Fax)
                                *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court's CM/ECF system, which caused a Notice of Electronic Filing to be emailed to the following:

Coreen A. Silverman (VSB No. 43873)
Jessica A. Swauger (VSB No. 89612)
John B. Mumford, Jr. (VSB No. 38764)
HANCOCK DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Tel: (804) 967-9604
Fax: (804) 967-9888
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
*Counsel for Defendant Joe Gutierrez*

Robert L. Samuel, Jr. (VSB No. 18605)
Richard H. Matthews (VSB No. 16318)
Anne C. Lahren (VSB No. 73125)
Bryan S. Peeples (VSB No. 93709)
PENDER & COWARD
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Tel: (757) 490-6293
Fax: (757) 502-7370
rsamuel@pendercoward.com
rmatthew@pendercoward.com
alahren@pendercoward.com
bpeeples@pendercoward.com
*Counsel for Defendant Daniel Crocker*

This the 7th day of October, 2022

By: /s/ Jonathan M. Arthur, Esq.
         Counsel