**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **Caron Nazario,** | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil Action No. 2:21-cv-00169 |
| | ) | |
| **Joe Gutierrez, et. al.** | ) | |
| *Defendants*. | ) | |

**PLAINTIFF CARON NAZARIO'S PRETRIAL BRIEF**

COMES NOW, the Plaintiff, by counsel, and files his pretrial brief:

**I.      PLAINTIFF'S VIEW OF THE CASE**

The Plaintiff believes that this entire case turns, more or less, on the reasonableness of the parties' conduct, and that under the circumstances the defendants' reactions and use of force from the time that defendant Crocker exited his vehicle were objectively unreasonable. Even if Lt. Nazario had only *imperfectly* complied with the initial commands, the preceding conduct and this conduct did not justify the immediate use of firearms.  However, the defendants unreasonable use of force, threats, refusal to answer simple questions regarding why he was being pulled over, and overall escalation did trigger Lt. Nazario's common law right to resist, and the force that he used to resist (not exiting the vehicle) was unreasonably excessive under the circumstances.

The plaintiff's position is that a reasonable jury will determine from the statements the defendants made at the scene regarding Lt. Nazario's decision to wait to pull over, the understanding that he was likely a minority, other admissions on the cell-phone footage and body worn cameras, their offer of silence, and their subsequent conduct at the police station, and the fact that the defendants subsequently continued to deploy the escalation and force, that the defendants conduct was not only objectively unreasonable but that they were acting with malice.

1

The plaintiff's position is that the defendants' attempt to trade silence for not being charged, and then returning to the police station and falsifying documents to include allegations of an assault on a law enforcement officer also indicate actual malice and a subjective understanding that what the defendants had done to Lt. Nazario was objectively unreasonable, notwithstanding the fact that they had probable cause for *some* of the charges they alleged in their official reports. The plaintiff believes that the false charges, their attempts to silence Lt. Nazario, the defendants' actions at the scene knowing that Lt. Nazario was a minority and scared when he drove to a well-lighted place to pull over, and Gutierrez' recent Internal Affairs history will indicate that this was not a good faith action, or a lack of mistake – rather it was knowing and malicious. A jury will not tolerate this behavior.

## II.   ELEMENTS OF THE REMAINING CLAIMS

### IIIa. – Assault Elements.

The common-law intentional tort of assault has the following elements:

(1) Any threatening act,

(2) That is intended to put another person in reasonable fear of imminent physical injury.

VMJI 36.010.

In the law-enforcement context, the tort of assault is subject to various defenses, permissions, and common law rights, as well as accessory liability. Since battery and false imprisonment share many of these contours, they are discussed together in parts IIIf - IIIi, *infra*. The touchstone for this tort is objective reasonableness under the circumstances, if the force was objectively unreasonable then the threat was an assault. Reasonableness in this instance is a question to be decided by the jury. *E.g., Bank of Montreal v. Signet Bank*, 193 F.3d 818, 834

(4th Cir. 1999); *Figg v. Cook*, 2001 U.S. Dist. LEXIS 24936 at *11-12 (E.D. Va 2001); *Hendricks v. Commonwealth*, 163 Va. 1102, 1109, 178 S.E. 8, 13-14 (1935).

### IIIb. – Battery Elements.

The common-law intentional tort of battery has the following elements:

(1) An intentional and unwanted touching,

(2) Of another,

(3) Without justification, excuse, or consent of the other.

VMJI 36.000

In the law-enforcement context, the tort of assault is subject to various defenses, permissions, and common-law rights, as well as accessory liability. Since battery and false imprisonment share many of these contours, they are discussed together in parts IIIf - IIIi, *infra*, *infra*. The touchstone for this tort is objective reasonableness under the circumstances, if the force was objectively unreasonable then the threat was an assault. Reasonableness in this instance is a question to be decided by the jury. *E.g., Bank of Montreal*, 193 F.3d at 834; *Figg*, 2001 U.S. Dist. LEXIS 24936 at *11-12; *Hendricks*, , 178 S.E. at 13-14.

### IIIc. – False Imprisonment Elements.

The common-law intentional tort of false imprisonment has the following elements:

(1) Intentional restriction or another person's freedom of movement

(2) Without legal right,

(3) Resulting from the use of force, words, or acts of which the person restrained is either

    a. Afraid to ignore, or

    b. To which he reasonably believes he must submit.

In the context of an arrest, this common-law tort can occur either when the arrest is illegal *ab inicio*, or when an otherwise legal arrest becomes illegal – that is without lawful justification or excuse.  The latter can occur when the acts of a law enforcement officer prolong the stop beyond what was objectively reasonably necessary to accomplish the purpose of the stop.  *E.g.*, *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015) .  In this context, reasonableness is a question for the jury. *E.g., Bank of Montreal*, 193 F.3d at 834; *Figg*, 2001 U.S. Dist. LEXIS 24936 at *11-12; *Hendricks*, 178 S.E. at 13-14.  In the law-enforcement context, the tort false imprisonment is subject to various defenses, permissions, and common law rights as well as accessory liability.  Since battery and assault share many of these contours, they are discussed together in parts IIIf - IIIi, *infra*.

**IIIe. – Illegal Search – Remaining Elements.**

This Court has already determined that when defendant Crocker entered into, looked for, and retrieved Lt. Nazario's pistol from his vehicle, it was a search that violated Lt. Nazario's clearly established constitutional rights to be free from unreasonable searches and seizures.  This Court also has already determined that such a search violated Virginia Code § 19.2-59.  Therefore, liability vis-à-vis defendant Crocker has been established.

What remains to be determined is Gutierrez's liability regarding the search.  Liability will be determined under two separate standards.  For the state law claims, defendant Gutierrez will be subject to the *Pike v. Eubanks* standard discussed below in part IIIX, *infra*.  For the federal law claims, he will be subject to 42 USC § 1983 bystander liability.  The elements for vicarious liability pursuant to 42 USC § 1983 are as follows:

(1) The officer knows a fellow officer is violating an individual's constitutional rights.

(2) The officer has a reasonable opportunity to prevent the harm; and

4

(3) The officer chooses not to act.

*Randall v. Prince Georges Cty. Md.*, 302 F.3d 188, 204 (4th Cir. 2002)

Regarding point (1), as defendant Crocker's search violated Lt. Nazario's clearly established constitutional rights with his search, to the extent that defendant Gutierrez was aware of the search, a reasonable officer in his position would also have been aware as a matter of law that the search was violating Lt. Nazario's constitutional rights. Thus, the elements reformulated are:

(1) Was defendant Gutierrez aware that defendant Crocker was, or was about to search Lt. Nazario's vehicle.

(2) Did he have a reasonable opportunity to prevent the harm, and

(3) Did he choose not to act.

Virginia Code § 19.2-59 search statute deviates from the standard punitive damages law. When the legislature passed it, they removed the jury's discretion in awarding punitive damages. As this Court is aware, under general conditions, a jury *may* award, but is not required to award punitive damages. However, the plain language of § 19.2-59 states that "any officer…violating the provision of this section *shall* be liable to any person aggrieved thereby in both compensatory *and* punitive damages." Va. Code. § 19.2-59 (emphasis added). The use of "shall" removes the discretion from the jury.

Another wrinkle in this law is that it states "[a]ny officer or other person searching any place, thing or person otherwise than by virtue of and under a search warrant, *shall be guilty* of malfeasance in office." This means that defendant Crocker is guilty of malfeasance in office, Va. Code. § 19.2-59, especially when the search violated Lt. Nazario's clearly established constitutional rights.

### IIIf. –   Common Elements – Reasonable Conduct and a Citizen's Right to Resist.

In the law enforcement context, an officer using reasonable force to make a lawful arrest does not commit an assault and/or a battery, and within reasonable limits the officer is the judge of the amount of force necessary.  However, any force used in making an unlawful arrest – even an arrest that is lawful in its inception but becomes unlawful – is an assault and/or a battery. *E.g. Bowie v. Murphy* 271 Va. 126, 136, 624 S.E.2d 74, 80 (2006); *Parker v. McCoy*, 212 Va. 808, 813 (1972); *Davidson v. Allam*, 143 Va. 367, 380 (1925).  When the arrest becomes unlawful, a citizen has the common law right to resist that officer, and their use of *any* force with reasonable force.  This is not an assault or a battery. *E.g.  Palmer,* 130 S.E. at, 401 (1925); *Foote,* 396 S.E.2d at 856; *Moore*, 332 F. Supp. at  902-21; *Hill*, 570 S.E.2d at 808.  Further, if an officer uses unreasonable force during an otherwise lawful arrest, such unreasonable force is an assault and/or battery the citizen has a common law right to use reasonable force to resist the officer's force.  The citizens use of force and resistance in this instance and this resistance is neither illegal nor is it an assault and/or a battery.  *E.g., Bowie*, 624 S.E.2d at 80; *Parker*, 212 Va. at 813 (1972); *Davidson*, 143 Va. at 380; *Palmer,* 130 S.E. at, 401 (1925); *Foote,* 396 S.E.2d at 856; *Moore*, 332 F. Supp. at  902-21; *Hill*, 570 S.E.2d at 808.

In a jury trial, questions of reasonableness are uniquely the province of the jury *E.g., Bank of Montreal*, 193 F.3d at 834; *Figg*, 2001 U.S. Dist. LEXIS 24936 at *11-12; *Hendricks*, , 178 S.E. at 13-14.

### IIIg. – Common Element for Liability – *Pike v. Eubank*.

For all of the Virginia intentional torts, the law provides for both liability for the principal bad actor and also provides for liability against any person aids, abets, counsels, or encourage the principal wrongdoer by words, gestures, looks, or signs.  It does not matter whether this other

person was present or not. It does not matter whether this other person's motives were malicious or not. The liability of this other person is *identical* to that of the principal bad actor. *Pike v. Eubank*, 197 Va. 692, 699, 90 S.E.2d 821, 826 (1956) (*quoting*: 6 C.J.S., Assault and Battery, § 27(a), p. 830)). In this matter, the import of this *Pike* accessory is obvious – each defendant will be as liable to Lt. Nazario for the other's tortious actions if the jury determines there is *Pike* liability, it will not matter that the particular defendant did not conduct the act that constituted the assault, battery, false imprisonment, or illegal search. For example, it will not matter that defendant Crocker did not OC spray Lt. Nazario. If the jury determines that *Pike* applies to Crocker for the OC spray, the law will require the jury to award Lt. Nazario the same damages against Crocker as it did Gutierrez, and this will be both in the compensatory category and the punitive damages category; the language is plain – Crocker will be *equally* as liable as Gutierrez and it does not matter if Crocker did not share the same malice as malice does not matter for *Pike* liability. This is not to suggest that a jury must find joint tortfeasor liability for each assault, and each battery – only those where they find *Pike* liability to be applicable.

### IIIh. – Common Elements - Jury Unanimity and Elements of the Tort.

While a jury must unanimously decide *that* the plaintiff has proved a particular element of tort, it is not necessary for them to unanimously agree *which* set of facts prove the element of the tort. *See, e.g. Richardson v. United States*, 526 U.S. 813, 817 (1999); *Brown v. United States*, 222 U.S. Dist. LEXIS 158054 at *27 (E.D. Va. 2022) (A federal jury does not always need to decide unanimously which of several possible sets of underlying brute facts make up a particular element of an offense, only that the element has been proved). Thus, it is not necessary for the jury to unanimously decide *which* of the uses of force were unreasonable, and thus constitute an assault or a battery, they only need to decide unanimously *that* the defendants

7

used unreasonable force. Likewise, the jury does not need to determine with unanimity *when* the traffic stop became unlawful, it only will need to unanimously decide that at some point, the stop was extended beyond what was reasonably necessary.

If the Court believes a jury instruction on this point would be necessary or helpful, the parties can prepare one.

### IIIi. – Illegal Act and Contributory Negligence – Not an Affirmative Defense.

Defendant Gutierrez, at least, has raised an illegal act and a contributory negligence affirmative defense. **Doc. 17, p. 17, 11** ("To the extent Plaintiff suffered or sustained any loss, injury, damage, or detriment, the same was directly and proximately caused by his conduct, acts, omissions, and/or intentional misconduct thereby barring any recovery.") Neither affirmative defense is legally viable.

To the extent that this is to be interpreted as an "Illegal Act" defense, such defense has no place in excessive force claims. *Helfin v. Town of Warrenton*, 944 F. Supp. 472, 475-76 (E.D. Va. 1996). To hold otherwise, reasoned the *Helfin* court, would effectively license law enforcement agents to use objectively unreasonable force to make arrests when the person being arrested committed the crime precipitating the arrest. Such an obnoxious result is flatly prohibited by the constitution. The *Helfin* court further opined that Virginia's general rule that one who consents to or participates in an immoral act cannot recover damages does not apply to excessive force claims simply because a citizen does not consent to or participate in an officer's decision to use objectively unreasonable force. *Id.* To hold otherwise would effectively license law enforcement agents to use objectively unreasonable force against a citizen, and that result is flatly contrary to Virginia common law and would have precluded almost *all* unreasonable force tort actions in the Commonwealth, *See*, *Id.*, and the Plaintiff is unaware of any case law from the

state permitting such an affirmative defense in an excessive or unreasonable force claim under Virginia common law.

To the extent that defendant Gutierrez's affirmative defense can be read as some form of contributory negligence affirmative defense, it still fails. The tort claims at issue here are intentional torts, and contributory negligence is not a defense to intentional torts. *Williams v. Harrison*, 255 Va. 272, 275, 497 S.E.2d 467 (1998) (citing Restatement (Second) of Torts, § 481); *Tyler v. Commonwealth*, 75 Va. App. 218, 253, 875 S.E.2d 119, 137 (2022) ("[C]ontributory negligence is not a defense to an intentional tort".)

### III. EVIDENTIARY AND OTHER ISSUES

**IVa. The Erie Doctrine.**

**Federal Law and Evidence:**

Although this action involves some state-law claims of assault, battery, false imprisonment and an illegal search under Virginia Code § 19.2-59 where state substantive law applies (and thus for these claims the state jury instructions and law control), this action remains in federal Court. Thus, federal procedural law controls under the *Erie* doctrine. This means that Federal law and not state law will control evidentiary matters unless the Federal law permits to court to also look to state rules of evidence. *E.g.*, *Hottle v. Beech Aircraft Corp.*, 47 F.3d 160, 109 (4th Cir. 1995). (Federal Rules of Evidence are validly enacted procedural rules that govern even in diversity cases and that the Federal Rules of Evidence are the least affected by the doctrine announced in *Erie...*"). *Federal Practice and Procedure* states the rule thusly: "If a [Federal] Evidentiary Rule covers a disputed point of evidence, the [Federal Evidentiary] Rule is to be followed, even in diversity cases, and state law is pertinent only and if and to the extent the

applicable [Federal Evidentiary] rule makes it so." 19 Charles Alan Wright, Arthur Miller, et. al. *Federal Practice and Procedure*, § 4512 (3d Ed. 2016).

### IVa – Mark Bong, Esq.

An expert may comment directly upon things that such expert has personally witnessed. *See United States v. Perkins,* 470 F.3d 150, 156 (4th Cir. 2006) (permitting law enforcement to comment directly on the reasonableness of another officers' use of force because they were eyewitnesses to it). The Plaintiff will keep Mark Bong, Esq. present and in the courtroom during the presentation of evidence, and particularly the presentation of the defendants' testimony and the testimony of the defendants' experts, so as to be equipped to respond as appropriate in rebuttal.  This will be essential to presenting the party's claim or defense.  That is, the plaintiff will oppose any motion to  excluded him as a witness under Rule 615.  Thus, Mr. Bong should not be excluded such that he may observe and offer opinion on the evidence and testimony as it is actually presented in court.

### IVb. – Use of Transcripts.

This court has ordered that parties submitting videos shall produce a transcript of the Videos. **Doc. 119, p. 5, ¶ 13.**  The plaintiff has understood this court to mean that consistent with federal law and the federal jury instructions, these transcripts will go to the to the jury when the videos are played in order to aid them in their deliberation consistent with the jury instructions: O'Malley et al., Federal Jury Practice and Instructions, Civil § 102:21 (transcripts that accompany recordings).  However, the defendants are going to object to this, as the transcripts are just as damning as the videos.  This will be an issue that will up at trial.

### IVc – James Clarke, Jr.

James Clarke, Jr. is the Sheriff of Isle of Wight County and was the Sheriff when Gutierrez worked for the Isle of Wight County Sheriff's office. He finalized Captain Potter's Internal Affairs investigation into defendant Gutierrez and decided on his ten-day suspension. His testimony and the internal affairs make up a large part of the defendant's motion in limine to exclude Gutierrez's Professional History and Internal Affairs. **Docs. 140, 141, and 170.** Provided that the court overrules the defendant's motion *in limine* and permits this testimony and evidence, the Plaintiff will call Sheriff Clarke to testify. The parties also deposed Sheriff Clarke. The County Attorney for Isle of Wight County has intimated that the Sheriff will be training in Alabama and will thus likely resist the subpoena. If he successfully resists the subpoena, he would be an unavailable witness pursuant to Fed. R . Evid. 804(A)(5) and thus Fed. R. Evid. 804(b)(1) provides an exception to the rule against Hearsay. It is possible that the parties will be able to come to an agreement to let Sheriff Clarke testify via deposition however, the plaintiff envisions that he will be forced to subpoena Sheriff Clarke and force Sheriff Clarke to resist the subpoena.

### Ive. – Admissibility over Hearsay as Business Records and/or Public Records.

Provided that this court overrules the Defendant's motion *in limine* to exclude defendant Gutierrez's internal affairs/use of force investigations, **Doc. 140**, the plaintiff plans on Introducing not only the testimony from the investigating and sanctioning officers as substantive testimony, but the plaintiff will also offer the reports themselves as substantive evidence. These reports are not inadmissible hearsay as the testimony will demonstrate that internal affairs records, investigations, and reports as well as the termination letters and memoranda from the Town of Windsor Police Department as well as the Isle of Wight County Sheriff's office are both records of a regularly conducted business activity pursuant to Fed. R. Evid. 803(6), as they are an

11

act, event, and opinion recorded by someone with knowledge (The Chief of Windsor Police Department, The Sheriff of Isle of Wight County, and a Captain in the Isle of Wight County at the direction of the Sheriff), kept in the course of a regularly conducted activity of an organization, making such records was a regular practice of the activity, and the conditions will be show in by both a certification that complies with Fed. R. Evid. 902(11) and (12) and by a qualified witness – namely those that created the documents.

Further, they and they are public records pursuant to Fed. R. Evid. 803(8) as such reports set out the offices activities (internal affairs investigations of two law enforcement agencies), matters observed while under a legal duty to report (an internal affairs investigation and sanction), and are factual findings from a legally authorized investigation (authorized by the Chief and the constitutionally elected Sheriff) and the opponent cannot show that either the source or the circumstances indicate a lack of trustworthiness. Further, to the extent that the defendants state that they will be cumulative, they are not needlessly cumulative under Fed. R. 403, especially not such that the cumulative nature substantially outweighs their probative value as they are replete with, *inter alia*, statements of defendant Gutierrez.

**IVf. Deposition of the Defendants**.

The Plaintiff will offer sections of the defendants' depositions into evidence as part of his substantive proof. *Community Counseling Services Inc. v. Rilley*, 317 F.2d 239, 243 (4th Cir. 1963); Fed. R. Civ. P. 26(d)(2). The defendants should not be permitted to counter-designate any part of the defendants' depositions to be read into the Plaintiff's case in chief as this will run afoul of Fed. R. Evid. 26(d)(2), as it would require the Plaintiff to use the depositions for a purpose that he does not want – thus limiting the rule in 26(d)(2) with some caveat it does not contain. *Cf. Rilley*, 317 F.2d at 243. The doctrine of fairness that applies to non-party

depositions does not apply here, as if the defendants want to try to rehabilitate themselves, they can do it in their case in chief.

**November 30, 2022**

                                                  **Respectfully submitted,**

                                         By:  /s/  Jonathan M. Arthur, Esq.
                                                      Counsel

                                          Jonathan M. Arthur, Esq. VSB # 86323
                                          j.arthur@robertslaw.org
                                          Thomas H. Roberts, Esq. VSB # 26014
                                          tom.roberts@robertslaw.org
                                          Andrew T. Bodoh, Esq. VSB # 80143
                                          andrew.bodoh@robertslaw.org
                                          Thomas H. Roberts & Associates, P.C.
                                          105 South 1st Street
                                          Richmond, VA 23219
                                          (804) 991-2002 (Direct)
                                          (804) 783-2000 (Firm)
                                          (804) 783-2105 (Fax)
                                          *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed with the Court's CM/ECF system, which caused a Notice of Electronic Filing to be emailed to the following:

John B. Mumford, Jr. (VSB No. 38764)
Coreen A. Silverman (VSB No. 43873)
HANCOCK DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Tel: (804) 967-9604
Fax: (804) 967-9888
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
*Counsel for Defendant Joe Gutierrez*

Robert L. Samuel, Jr. (VSB No. 18605)
Richard H. Matthews (VSB No. 16318)
Anne C. Lahren (VSB No. 73125)
Bryan S. Peeples (VSB No. 93709)
PENDER & COWARD
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
Tel: (757) 490-6293
Fax: (757) 502-7370
rsamuel@pendercoward.com
rmatthew@pendercoward.com
alahren@pendercoward.com
bpeeples@pendercoward.com
*Counsel for Defendant Daniel Crocker*

This the 30th day of November, 2022

By: /s/ Jonathan M. Arthur, Esq.
    Counsel