IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| **CARON NAZARIO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:21-cv-00169-RCY-LRL |
| ) | |
| **JOE GUTIERREZ, et al.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT JOE GUTIERREZ'S PRE-TRIAL BRIEF**

Defendant Joe Gutierrez, by and through counsel, respectfully submits this Pre-Trial Brief in accordance with the Court's Scheduling Order. (ECF 119).

**I.      INTRODUCTION**

Plaintiff Caron Nazario's claims in this case pertain to a December 5, 2020 traffic stop by Defendants Joe Gutierrez and Daniel Crocker, both of whom were employed by the Town of Windsor Police Department at the time of the stop. To prevail on his remaining claims of assault and battery, false imprisonment, and illegal search, Plaintiff must demonstrate that Mr. Gutierrez: 1) placed Mr. Nazario in reasonable fear of imminent physical injury; 2) used unreasonable force during the lawful traffic stop; 3) detained Mr. Nazario without legal right; and 4) knew that Officer Crocker was conducting an illegal search of Mr. Nazario's vehicle and had a reasonable opportunity to stop him. Plaintiff will not prevail on any of these claims.

To the contrary, the evidence will show that in light of Mr. Nazario's steadfast refusal to comply with repeated lawful orders, Mr. Gutierrez used reasonable force to control the situation, commensurate with the totality of the circumstances, which did not constitute an assault, battery,

or false imprisonment. Moreover, the evidence will show that Gutierrez was unaware of Officer Crocker's search of Mr. Nazario's vehicle, and therefore, he had no reasonable opportunity to prevent the search.

## II.    REMAINING CLAIMS

In the Court's Memorandum Opinion and Order dated August 9, 2022, the Court resolved all of Plaintiff's federal law claims with the exception of Count III (illegal search) as to Mr. Gutierrez. (ECF 115). The Court granted Defendants' Motions for Summary Judgment as to Count I (unreasonable seizure), Count II (excessive force), Count IV (freedom of speech). (*Id.*). The Court also granted Defendant Crocker's Motion for Summary Judgment as to Counts III and VIII as to illegal search under the Fourth Amendment and Virginia law, respectively.

Therefore, the only remaining claims are Plaintiff's state law claims for common law assault and battery and false imprisonment (Counts V, VI, and VII) and claims against Defendant Gutierrez for illegal search under the Fourth Amendment and Virginia law (Counts III and VIII). The elements of the remaining claims are set forth below.

### A. Assault and Battery.

Under Virginia law, an assault is "an intentional offer to touch the person of another that created in the mind of the victim a reasonable apprehension of an immediate battery." *Ware v. James City Cnty.*, 652 F. Supp. 2d 693, 711 (E.D. Va. 2009) (citing *Epps v. Commonwealth*, 28 Va. App. 58, 502 S.E.2d 140 (Va. App. 1998)). "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* (citing *Koffman v. Garnett*, 265 Va. 12, 574 S.E.2d 258, 261 (Va. 2003)). "[A]n arrest utilizing excessive force is a battery because that touching is not justified or excused and therefore is unlawful." *Bell v. Johnson*, Civil Action No. 7:09-cv-214, 2011 U.S. Dist. LEXIS 33888, at *39 (W.D. Va. Mar. 30, 2011) (citing *Gnadt v. Commonwealth*, 27 Va. App. 148, 497 S.E.2d 887, 888 (Va. App. 1998)). However, an officer's

use of reasonable force to detain a person during a lawful traffic stop is not an assault or battery. Within reasonable limits, an officer is the judge of the amount of force necessary to detain an individual.  *See* VMJI 36.030; *see also Parker v. McCoy*, 212 Va. 808, 813 (1972).

### B. False Imprisonment.

Under Virginia law, "[f]alse imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Carter v. Khan*, No. 1:15-cv-00572 (JCC/JFA), 2015 U.S. Dist. LEXIS 149955 (E.D. Va. Nov. 4, 2015) (citing *Lewis v. Kei*, 281 Va. 715, 724, 708 S.E.2d 884 (2011)). "The gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 50 S.E.2d 387 (1948).  For a plaintiff to prevail on a claim of false imprisonment, he must merely prove that he was detained, at which point the onus passes to the defendant to "proffer an adequate legal justification warranting that detention."  *Ware*, 652 F. Supp. 2d at 712 (citing *Figg v. Schroeder*, 312 F.3d 625, 642 (4th Cir. 2002)).

### C. Illegal Search.

Under the theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Alexander v. Collins*, Civil Action No. 7:19cv00261, 2021 U.S. Dist. LEXIS 75805, at *23 (W.D. Va. April 20, 2021).  For liability to attach, the officer must possess "a realistic opportunity to intervene to prevent the harm from occurring." *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002).

### III.   STATEMENT OF UNDISPUTED FACTS

On December 5, 2020, at approximately 6:34 p.m., Mr. Nazario was driving Westbound on US 460 in Windsor, Virginia in a 2020 Chevrolet Tahoe. (ECF 175 at ¶ 5).  Officer Crocker activated the blue lights of his patrol car to alert Mr. Nazario to stop his vehicle. (*Id.* at ¶ 6).  Officer Crocker

3

reported to dispatch that the vehicle was continuing to drive. (Pl's Proposed Ex. 4 at 18:34:54 (hereafter, "Pl's Ex. 4")). Mr. Gutierrez joined Officer Crocker in pursuit of Mr. Nazario's vehicle. (ECF 175 at ¶ 7).

Mr. Nazario stopped at the BP gas station at 1 E Windsor Boulevard, Windsor, Virginia. (*Id.* at ¶ 8). Officer Crocker pulled in behind Mr. Nazario and exited his vehicle with his weapon drawn, announcing "felony traffic stop." (Pl's Ex. 4 at 18:36:15-16). Mr. Gutierrez heard Officer Crocker's announcement of "felony traffic stop" and also exited his vehicle with his weapon drawn – prepared to respond to the high-risk traffic stop. Officer Crocker issued multiple commands for the driver to lower his window and show his hands, to which Mr. Nazario did not fully comply. (*Id.* at 18:36:10-45). At this juncture, Defendants were unable to see how many occupants were in the vehicle. (*Id.* at 18:36:27).

Because Mr. Nazario refused to comply, Defendants repeatedly issued lawful orders for Mr. Nazario to exit his vehicle, but Nazario refused. (*See* ECF 114 at 13 (concluding that the order to exit the vehicle was lawful)). "Given that Plaintiff refused to comply with a lawful order to exit his vehicle, there was probable cause to charge Plaintiff with obstruction of justice and failure to obey." (ECF 114 at 9).

Despite the lawful order to exit the vehicle, Mr. Nazario continued to refuse to comply, and instead, repeatedly asked "what's going on?" (Pl's Ex. 4 at 18:37:00). Nonetheless, Mr. Gutierrez deescalated by holstering his firearm and took out his taser. Despite being shown the taser and told he would be tased, Mr. Nazario disobeyed all commands and refused to exit the vehicle, stating that "for a traffic violation I do not have to get out of the vehicle." (*Id.* at 18:38:35).

Although Mr. Nazario exhibited no willingness to comply with lawful orders, Mr. Gutierrez issued additional verbal commands and subsequently holstered his taser and attempted

4

to secure Mr. Nazario's arm with his hands. (*Id.* at 18:38:39). Mr. Nazario continued to resist, physically pulling away and repeatedly telling him to "get your hands off me." (*Id.* at 18:38:40).

In light of Mr. Nazario's refusal to comply with lawful orders and continued resistance to Mr. Gutierrez's attempt to use his hands to secure him, Mr. Gutierrez shook the OC Spray cannister to warn Mr. Nazario. Although Mr. Nazario acknowledged the warning, he still refused to comply with Mr. Gutierrez's orders. (*Id.* at 18:38:45). Officer Crocker then attempted to open the door, but Mr. Nazario used his elbow to keep the door closed and locked. (*Id.* at 18:38:45).

Faced with Mr. Nazario's ongoing refusal to comply with lawful orders, coupled with his active resistance to attempts to physically secure him, Mr. Gutierrez sprayed Mr. Nazario with OC Spray. Even after he was sprayed, Mr. Nazario continued to indicate he was unwilling to comply with Defendants' orders. Even after Mr. Nazario exited the vehicle, he refused to comply with orders to get on the ground to be securely detained and handcuffed, and he had to be physically forced to the ground while he continued to resist. (*Id.* at 18:40:53).

Once Mr. Nazario was handcuffed, unbeknownst to Mr. Gutierrez, Officer Crocker removed a loaded handgun from the driver's seat of Mr. Nazario's vehicle. (*Id.* at 18:43:25 and 18:53:12). During the search, Mr. Gutierrez remained engaged with Mr. Nazario, and therefore, he was not aware of the search and did not direct Crocker to conduct the same.

### IV. OVERVIEW OF CASE

The evidence will show that Mr. Gutierrez used reasonable force to detain Mr. Nazario in light of the circumstances of this lawful traffic stop. (*See* ECF 114 at 13 (concluding that the traffic stop for failure to properly display a license plate and misdemeanor eluding was valid)). The force used by Mr. Gutierrez was commensurate with the situation, particularly based on Mr. Nazario's repeated refusal to comply with lawful orders.

5

Mr. Gutierrez's expert, Kenneth Wallentine, is expected to testify that the use of OC Spray comported with generally accepted police training, practices, and procedures. (Def. Gutierrez's Fed. R. 26(a)(2) Disclosure, Ex. A at 8). The use of OC Spray is likely to reduce the risk of injuries to officers and subjects by reducing resistance as well as the necessity of more injurious lawful uses of force. (*Id*. at 9). Based on Mr. Nazario's non-compliance with lawful orders and non-responsive statements and questions, the Defendants' sought to remove Mr. Nazario from his vehicle to a position where he could be controlled in accordance with generally accepted practices and procedures. (*Id.* at 10).

Chief Wallentine is also expected to testify that placing Nazario on the ground and handcuffing him is a fundamental practice for persons detained incident to a high-risk traffic stop. Handcuffs are a reasonable safety precaution and may prevent the necessity of use of force on the detained person, and they also protect the detained person from self-harm. (*Id*. at 12).

Chief Wallentine's testimony, in conjunction with Defendants' testimony and video footage from Defendants' body-worn cameras, will show that Mr. Gutierrez employed reasonable force during the lawful traffic stop of Mr. Nazario, and therefore, such reasonable force does not constitute assault and battery. Further, in light of the validity of the traffic stop and Defendants' lawful orders for Mr. Nazario to exit the vehicle, Defendants had a legal right to detain Mr. Nazario, and therefore, Mr. Gutierrez cannot be liable for false imprisonment.

As to the illegal search claim, Mr. Gutierrez is expected to testify that he was entirely unaware of Officer Crocker's search of Mr. Nazario's vehicle. Even to the extent Officer Crocker conducted the search while Mr. Gutierrez was on scene, he was otherwise engaged with Mr. Nazario and was not aware of Officer Crocker's activities at that time. Therefore, there is no

evidence to show he had any awareness of the search such that he could be liable despite not participating in or directing the search.

With respect to damages related to the remaining claims, Mr. Nazario claims that he suffered the following: bodily injury from the effects of OC Spray and physical touching; past, present, and future physical pain and suffering from the effects of the OC Spray and physical touching; past, present, and future mental anguish and damages from the initial incident and lingering effects of fear and mental anguish; humiliation and embarrassment from being detained and battered and having to tell his command and family about the incident; and damage to his personal property (dog and vehicle). (ECF 1 at ¶ 64). However, Mr. Nazario did not seek medical care related to his alleged bodily injuries. (*See* Dep. Tr. of C. Nazario at 40:14-15; 41:5-9; 44:117-19). Further, there is no evidence that Mr. Nazario's vehicle or dog were damaged.

To the extent Mr. Nazario claims mental anguish or other psychological injuries, Mr. Nazario is still in the Virginia National Guard – there is no evidence he has been medically retired or otherwise discharged in connection with this incident. In fact, shortly after the traffic stop, Mr. Nazario deployed to Washington, D.C. in support of the January 6, 2021 disturbance. (*See* Pl's Proposed Ex. 52). In August of 2021, Mr. Nazario received a glowing performance evaluation for the period from November 12, 2020 through June 30, 2021. (*See* Pl's Proposed Ex. 53 (stating Mr. Nazario has demonstrated "outstanding resiliency" and has "outstanding potential for future service in positions of increased responsibility")). Moreover, Mr. Nazario's treating psychiatrist and treating psychologist (Dr. Sellman and Dr. Utsey) did not begin treatment of Mr. Nazario until September 14, 2021, and September 17, 2021, respectively. (Pl's Fed. R. 26(a)(2)(B) and 26(a)(2)(C) Designation, Attachment C at 2; *id.* at Attachment D at 5). Expert disclosures were served less than two months later on November 12, 2021.

## V.     UNUSUAL EVIDENTIARY ISSUES EXPECTED TO ARISE

Officer Crocker filed multiple motions in limine addressing the evidentiary issues expected to arise during trial. Mr. Gutierrez adopted these motions by reference. (ECF 154-155). Mr. Gutierrez also filed a Motion to Limit or Exclude Opinion Testimony of Shawn Utsey. (ECF 157-158). These motions address at least three key issues. First, Mr. Nazario impermissibly seeks to relitigate issues and claims that are no longer before the Court, including his First Amendment claim which was resolved on summary judgment. (*See* ECF 149-150). Second, Plaintiff seeks to present evidence and testimony regarding Isle of Wight County Sheriff's Office and Windsor Police Department policies and procedures which are not relevant to the remaining common law tort claims or the illegal search claims against Mr. Gutierrez. (*See* ECF 153-154). Third, Plaintiff seeks to present evidence and testimony regarding Mr. Gutierrez's professional history and the internal affairs investigation of this incident – neither of which are relevant to the remaining claims. (*See* ECF 140-141).

In addition to the pending motions, Plaintiff also intends to present evidence, testimony and argument to support their theory that the stop was racially motivated. There is no evidence that Defendants had any racial animus or any malice before or during the stop. The testimony and evidence will show that prior to stopping Mr. Nazario, Defendants were unaware of his race. When Defendants arrived on scene at the BP station, they were not able to see how many occupants were in the vehicle. There is no evidence that Defendants stopped Mr. Nazario because of his race or that Defendants' actions during the stop were race-related in any way. Although Plaintiffs will seek to insert race as the basis for the stop and for Defendants' actions during the stop – there is no evidence to support the same, and therefore, any such argument, evidence or testimony to this effect should be excluded as irrelevant and unduly prejudicial.

Respectfully Submitted,

**JOE GUTIERREZ**

/s/ Jessica A. Swauger
John B. Mumford, Jr. (VSB No. 38764)
Coreen A. Silverman (VSB No. 43873)
Jessica A. Swauger (VSB No. 89612)
Hancock, Daniel & Johnson, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jmumford@hancockdaniel.com
csilverman@hancockdaniel.com
jswauger@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Defendant Joe Gutierrez*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 30th day of November 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

| | |
|---|---|
| Jonathan M. Arthur, Esq. (VSB No. 86323)<br>Thomas H. Roberts, Esq. (VSB No. 26014)<br>Andrew T. Bodoh, Esq. (VSB No. 80143)<br>THOMAS H. ROBERTS & ASSOCIATES, P.C.<br>105 South 1st Street<br>Richmond, Virginia 23219<br>Telephone: (804) 783-2000<br>Facsimile: (804) 783-2105<br>j.arthur@robertslaw.org<br>tom.roberts@robertslaw.org<br>andrew.bodoh@robertslaw.org<br>*Counsel for Plaintiff Caron Nazario* | Robert L. Samuel, Jr. (VSB No. 18605)<br>Richard H. Matthews (VSB No. 16318)<br>Anne C. Lahren (VSB No. 73125)<br>Bryan S. Peeples (VSB No. 93709)<br>PENDER & COWARD<br>222 Central Park Avenue, Suite 400<br>Virginia Beach, Virginia 23462<br>Telephone: (757) 490-6293<br>Facsimile: (757) 502-7370<br>rsamuel@pendercoward.com<br>rmatthew@pendercoward.com<br>alahren@pendercoward.com<br>bpeeples@pendercoward.com<br>*Counsel for Defendant Daniel Crocker* |

    /s/ Jessica A. Swauger
Jessica A. Swauger (VSB No. 89612)
Hancock, Daniel & Johnson, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
jswauger@hancockdaniel.com
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
*Counsel for Defendant Joe Gutierrez*