IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| CARON NAZARIO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:21CV169 (RCY) |
| | ) | |
| JOE GUTIERREZ, | ) | |
| *in his personal capacity,* | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DANIEL CROCKER, | ) | |
| *in his personal capacity* | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

This case arises from a traffic stop involving Plaintiff Caron Nazario and Defendants Joseph (Joe) Gutierrez and Daniel Crocker, both of whom were at the time police officers employed by the town of Windsor in Isle of Wight, Virginia.  Plaintiff is a Second Lieutenant in the United States Army Medical Corps and of Latinx and African American descent.  Defendant Crocker initiated the traffic stop when he did not see a license plate on Plaintiff's newly purchased 2020 Chevrolet Tahoe.  In the course of the traffic stop, Plaintiff was sprayed with Oleoresin Capsicum ("OC") spray, forcibly removed from his vehicle, forced onto the ground, and handcuffed.  After restraining Plaintiff, Defendant Crocker conducted a search of Plaintiff's vehicle.  Plaintiff was ultimately released and allowed to leave the scene.  Following this incident, Plaintiff filed suit against Defendants alleging violations of his state and Constitutional rights.  The case proceeded to trial, and on January 17, 2023, the jury returned a verdict.

This matter is now before the Court on two post-trial motions filed by Plaintiff Caron Nazario: a Motion Pursuant to Federal Rule of Civil Procedure 50 and/or In the Alternative,

1

Federal Rule of Civil Procedure 59 ("Motion for a New Trial") (ECF No. 244), and an alternative Federal Rule of Civil Procedure Rule 59(e) Motion to Alter or Amend the Jury Verdict ("Motion to Alter or Amend") (ECF No. 251). The Motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are fully developed, and argument would not aid the Court in its decisional process. E.D. Va. Loc. Civ. R. 7(J). Because Plaintiff has failed to meet his burden to set aside the jury's verdict, the Court will deny the Motion for a New Trial. However, the Court will grant Plaintiff's Motion to Alter or Amend.

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff filed his Complaint against Defendants on April 2, 2021. (ECF No. 1.) The Complaint survived Defendants' Motions to Dismiss (*see* Order, ECF No. 103), and on January 12, 2022, each Defendant and Plaintiff filed individual Motions for Summary Judgment. (ECF Nos. 77, 79, 81.) The Court granted Defendant Crocker's Motion for Summary Judgment as to Count I (Unreasonable Seizure under the Fourth Amendment), Count II (Use of Excessive Force under the Fourth Amendment), and Count IV (First Amendment) and denied as to the remaining counts. (*Id.*) The Court granted Defendant Gutierrez's Motion for Summary Judgment as to the same Counts (I, II, and IV) and denied on the remaining counts. (*Id.*) Finally, the Court granted Plaintiff's Motion for Summary Judgment on Counts III and VIII (Illegal Search and Seizure under the Fourth Amendment and Virginia law) against Defendant Crocker, and denied on the remaining counts. (*Id.*) On the basis of these rulings, Plaintiff proceeded to trial on Counts III and VIII (Illegal Search and Seizure under the Fourth Amendment and Virginia law) against Defendant Gutierrez, and on Counts V, VI, and VII (common law assault, battery, and false imprisonment, respectively) against both Defendants.

On January 17, 2022, Plaintiff filed a Motion to Exclude Defendant Crocker's Expert Witnesses (ECF No. 83), challenging the testimony of proposed experts Drs. Sautter and Sheorn and proposed "law enforcement expert" Brandon Tatum, and a Motion to Exclude Defendant Gutierrez's Proposed Expert (ECF No. 85), challenging the testimony of proposed "law enforcement expert" Kenneth Wallentine.  The Court denied each motion without prejudice on September 15, 2022.  (ECF No. 120.)  Plaintiff subsequently filed motions to limit the Defendants' expert witnesses' testimony, in the form of a Motion to Exclude Brandon Tatum (ECF No. 122) and a Motion to Exclude or Limit Kenneth Wallentine's Testimony (ECF No. 126).  Both motions were denied in part and granted in part.  (ECF No. 218.)  As to Kenneth Wallentine, the Court found that he had the experience to qualify as a use of force expert and denied Plaintiff's motion to limit Wallentine's use of the word "reasonableness."  (*Id.* at 2.)  The Court granted Plaintiff's motion as to Wallentine's use of the word "resisting" and granted the motion as to any comments Wallentine offered that opine on Plaintiff's credibility.  (*Id.*)  As to Brandon Tatum, the Court found that he was qualified as an expert based on his tenure as a police officer but ordered that his qualifications and testimony be limited to his time and experience as a police officer.  (*Id.*)  This Order also addressed several other Motions in Limine filed by both Plaintiff and Defendant Crocker.  (*See* ECF No. 218.)

On January 9, 2023, trial began, and a jury was duly sworn.  Counsel presented closing arguments on the morning of January 13, 2023, and the jury began deliberations that afternoon. On January 17, 2023, after a day and a half of deliberation,[1] the jury returned a unanimous verdict. (ECF No. 238.)  As to Defendant Crocker, the jury awarded Plaintiff nothing in compensatory damages and $1,000.00 in punitive damages under the Virginia state law illegal search claim and

---

[1] Deliberations were interrupted by a three-day holiday weekend.

found for Defendant Crocker on all remaining counts.  (*Id.*)  As to Defendant Gutierrez, the jury found him liable for common law assault and awarded Plaintiff $2,685.00 in compensatory damages but found for Defendant Gutierrez on all other counts.  (*Id.*)

On January 20, 2023, Plaintiff filed a Motion for a New Trial.  (ECF No. 244.)  Defendant Crocker and Defendant Gutierrez filed briefs in opposition shortly thereafter.  (ECF Nos. 245, 247.)  As an alternative to his previously filed Motion for a New Trial, Plaintiff filed his Motion to Alter or Amend on January 31, 2023.  (ECF No. 251.)  Defendant Crocker filed a response on February 6, 2023 (ECF No. 263), and Plaintiff replied on February 8, 2023 (ECF No. 266).

## II. LEGAL STANDARD[2]

Under Federal Rule of Civil Procedure 59(a), a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1).  The Fourth Circuit has interpreted this Rule to mean that "the district court must set aside the verdict and grant a new trial if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014) (internal citation omitted).  "The decision to grant or deny a new trial is within the sound discretion of the district court."  *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998).  In reviewing a motion for a new trial, "the crucial inquiry is 'whether an error occurred in the conduct

---

[2] Although Plaintiff captions his Motion and Memorandum in Support as resting on both Rule 50 (seeking judgment notwithstanding the verdict) and Rule 59 (seeking a new trial), Plaintiff does not make any separate arguments for Rule 50 relief in his brief.  As such, the Court declines to read into Plaintiff's Motion any arguments that are not explicitly set out and supported.  The Court will therefore deny Plaintiff's request for Rule 50 relief and will consider only Plaintiff's arguments in support of a new trial.

of the trial that was so grievous as to have rendered the trial unfair.'" *Bristol Steel & Iron Works v. Bethlehem Steel Corp.,* 41 F.3d 182, 186 (4th Cir. 1967).

### III. DISCUSSION

**A. Motion for a New Trial**

Plaintiff argues that a new trial is appropriate on five different grounds. The Court examines each of these grounds in turn.[3]

1. <u>Verdict is the result of the jury failing to follow law and instructions</u>

Plaintiff first takes issue with the jury's finding that Defendant Gutierrez was liable for assault but not liable for battery. Plaintiff argues that, pursuant to the jury instructions, the assault triggered Nazario's right to resist and necessarily the right to refuse to exit the vehicle, which in turn meant that any force Gutierrez used to overcome this legal resistance, if it touched Nazario, was a battery. (Mem. Supp. Mot. New Trial 3, ECF No. 245.) According to Plaintiff, the jury must have determined that any assault by Defendant Gutierrez occurred prior to his use of OC spray, and therefore the use of the spray was unreasonable and constituted a battery. (*Id.* at 3–4.) In support of this theory, Plaintiff asserts that the events which could constitute assault would be Defendant Gutierrez's statement that Nazario was "fixin' to ride the lightning," or the pointing of his firearm, taser, or OC spray at Nazario. (Pl. Reply to Crocker 4, ECF No. 249.) Based on the jury's alleged failures to follow instructions with regards to Defendant Gutierrez's assault, Plaintiff then extrapolates that there is a substantial likelihood that the jury also failed to follow the Court's instructions regarding the false imprisonment claim against Defendant Gutierrez and the assault,

---

[3] No party ordered transcripts of the trial or of any other court proceedings in this matter. As such, their briefs did not cite to the record and the Court is not in possession of a transcript for reference. The Court has endeavored to reference events, objections, and statements as accurately and specifically as possible based on its own notes, in the absence of an official court transcript.

battery, and false imprisonment claims against Defendant Crocker.  (Mem. Supp. Mot. New Trial 5.)

In separate briefs, both Defendant Gutierrez and Defendant Crocker respond that there is no evidence to rebut the presumption that the jury followed the law and instructions.  (Crocker Mem. Opp'n Mot. New Trial, ECF No. 247; Gutierrez Mem. Opp'n Mot. New Trial, ECF No. 248.)  They argue that assault and battery are separate charges with separate elements, and that if a finding of assault required an accompanying finding of battery and false imprisonment, then the jury instructions should have reflected this.  (*Id.*)  They also point out that it is unclear what exact event the jury found to constitute an assault:  while Plaintiff deduces that the assault occurred before the OC spray, it is entirely possible that the jury found that Gutierrez in fact assaulted Nazario after Nazario was sprayed.  (Crocker Mem. Opp'n Mot. New Trial 5–6.)

Jury Instruction Nos. 41 and 42 outline that, at the time when Plaintiff was initially detained, such detention was a lawful arrest.  (Jury Instructions, ECF No. 240).  The instructions note that if at any time the detention becomes unlawful, the citizen may refuse and use reasonable force to resist the arrest and unreasonable use of force by the law enforcement officer.  Jury Instruction No. 43 lists four circumstances under which the jury could make a finding of assault against Defendant Gutierrez.  Although it remains unclear, the verdict, in which the jury did not find that Defendant Gutierrez had battered Nazario, indicates that the jury's finding of assault was supported by either the first or third scenarios described in Instruction No. 43.  The first scenario supports a finding of assault where Defendant Gutierrez used unreasonable force while lawfully arresting Plaintiff but did not necessarily physically touch Plaintiff when doing so.  The third scenario supports a finding of assault when Defendant Gutierrez otherwise intentionally threatened

Plaintiff with some act that put Plaintiff in reasonable fear of imminent physical injury during the traffic stop and the threatened act was not a reasonable use of force.

This issue turns on whether a finding of assault without battery is consistent, and if not, whether such an inconsistency is relevant. In his Rebuttal Brief, Plaintiff concedes that state law assault, battery, and false imprisonment claims are distinct claims with separate elements and that, in the abstract, a jury can find one without the other. (Pl. Reply to Gutierrez 4, ECF No. 250). However, Plaintiff claims that under the circumstances of this case, where a finding of assault would trigger Nazario's right to resist unreasonable force, the jury failed to follow the instructions, resulting in an inconsistent verdict. (*Id.*)

In Virginia, battery is defined as "an unwanted touching which is neither consented to, excused, nor justified," and assault is defined as "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009), *quoting Koffman v. Garnett,* 265 Va. 12, 574 S.E.2d 258, 261 (2003). A legal justification for the act being complained of will defeat an assault or battery claim. (*Id.*) Furthermore, "[a]lthough these two torts 'go together like ham and eggs,' the difference between them is 'between physical contact and the mere apprehension of it. One may exist without the other.'" *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 411 (4th Cir. 2013), (quoting W. Page Keeton, *Prosser and Keeton on Torts* § 10 at 46). Importantly, Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties. (*Id.*) The Court found that the original detention was lawful. It is therefore conceivable that the jury could have found that the actions taken by Officers Gutierrez and Crocker were reasonably necessary to effectuate the stop after Nazario began resisting, and thus were legally justified.

Plaintiff makes no showing that the jury's findings were not within their discretion and has not demonstrated that the verdict was against the clear weight of the evidence. A rule that would allow parties to challenge inconsistent verdicts without this showing "would be imprudent and unworkable. It would be based on pure speculation or would require inquiries into the jury's deliberations that courts generally will not undertake." *U.S. v. Powell*, 469 U.S. 57, 58 (1984). If the verdict comports with jury instructions, then a new trial is not warranted. *Vigilant Ins. Co of New York v. McKenney's Inc.,* 524 Fed. Appx. 909, 912–13 (4th Cir. 2019), *see also TransDulles Ctr., Inc. v. USX Corp.,* 976 F.2d 219, 227–28 (4th Cir. 1992). Fourth Circuit caselaw prioritizes "protecting the finality of jury verdicts, encouraging open deliberations in the jury room, and preventing the harassment of jurors by litigants seeking to overturn the verdict." *Richardson v. Kornegay*, 3 F.4th 687, 702 (4th Cir. 2021), *see also U.S. v. Legins*, 34 F.4th 304, 316 (4th Cir. 2022). Therefore, it is not appropriate for the court to engage in speculation as to jury deliberations. *See U.S. v. Thomas*, 900 F.2d 37, 39–40 (4th Cir. 1990).

Furthermore, for Plaintiff to have preserved the ability to contest the alleged error, the purported inconsistencies in the jury verdict should have been brought to the court's attention prior to the dismissal of the jury; failure to do so "will constitute a waiver of a party's right to seek a new trial." *White v. Celotex Corp.,* 878 F.2d 144, 146 (4th Cir. 1989). Here, Plaintiff's counsel neither requested a jury instruction that comports with the reading of the law they offer in their motion (e.g., that finding assault necessitated a finding of battery), nor objected to the jury's alleged error(s) prior to dismissal of the jury.

A finding of assault without a finding of battery is not inconsistent. This aside, the Court cannot speculate as to the jury's thought process and deliberation, and in this case, the Court will not attempt to decipher which specific event(s) constituted an assault in the minds of the jurors,

sufficient to support the jury's verdict.  A jury need not agree on the exact method by which it deems a defendant liable, nor must the jury agree on precisely which facts support liability under any given count.  *See, e.g., Richardson v. U.S.*, 526 U.S. 813, 817 (1999) (stating that a jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element . . .").  Therefore, Plaintiff is not entitled to a new trial on these grounds.

      2. Verdict is based upon false evidence

      Plaintiff's second ground for the Motion for New Trial is that the verdict was based on false evidence.  Plaintiff argues that Defense expert Dr. Sheorn's testimony was false because she knowingly and intentionally added diagnostic criteria to her explanation of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) to assert that Plaintiff was not injured because he did not meet the added criteria.  (Mem. Supp. Mot. New Trial 5–6.)  Plaintiff similarly states that Brandon Tatum's expert testimony for the Defendants was false and misleading to the jury, but Plaintiff does not elaborate on the alleged flaws of his testimony.  (*Id.* 7.)  In response, Defendants argue that even with the DSM-V serving as the "gold standard," Dr. Sheorn's experience and training enabled her to speak to additional criteria relevant to a diagnosis.  (*See* Crocker Mem. Opp'n Mot. New Trial 6; *see also* Gutierrez Mem. Opp'n Mot. New Trial 7.) Defendants state that Dr. Sheorn testified in accordance with her expert report, of which Plaintiff had advance notice, and that Plaintiff also had ample opportunity to cross-examine Dr. Sheorn, call their own PTSD experts, and address her opinions in rebuttal or closing arguments.  (Crocker Mem. Opp'n Mot. New Trial 6–7; Gutierrez Mem. Opp'n Mot. New Trial 7–8.)  Additionally, Gutierrez points out the presence of testimony that called into question whether the traffic stop was the true source of Plaintiff's PTSD, and that this testimony could have led a jury to its finding

without any reliance on Dr. Sheorn's allegedly incorrect testimony. (Gutierrez Mem. Opp'n Mot. New Trial 8.)

Plaintiff specifically contests two aspects of Dr. Sheorn's testimony: (1) that she falsely told the jury that one of the diagnostic criteria for PTSD was that the trauma had to be "unspeakable and incomprehensible," and (2) that she falsely testified that General Anxiety Disorder was a disorder of dependency that whose diagnostic criteria required it to originate in childhood. (Mem. Supp. Mot. New Trial 6). Dr. Sheorn was asked about these statements during cross-examination and admitted that these conclusions were not based exclusively on DSM-V criteria. In addition, Plaintiff had advance notice of this testimony before trial, as Dr. Sheorn's Expert Report made these arguments clear and her testimony at trial spoke directly to those findings. (*See* Expert Report of Keyhill Sheorn at 19, 22.) With this advanced knowledge, Plaintiffs had ample opportunity to file motions to exclude or limit Dr. Sheorn's testimony yet failed to do so, despite filing such motions for other expert witnesses offered by the Defendants, including Brandon Tatum. Additionally, Plaintiff did not voir dire Dr. Sheorn after receiving her report to ensure that she is in fact qualified as an expert, and while Plaintiff did attempt to impeach Dr. Sheorn on cross-examination based on her testimony, they did not object to her testimony and deviance from the DSM-V criteria during her direct examination. Plaintiff further opted not to recall his own psychological expert to rebut Dr. Sheorn's allegedly false testimony.

The Court's gatekeeping obligations with regard to false or inconsistent expert testimony exist to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 597, 580 (1993). There are several factors that courts "*may* consider" in assessing the reliability and relevance of an expert's testimony, as the inquiry is intended to be flexible based on the particular facts of a case. *Kuhmo*

*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138 (1999); *see also McKiver v. Murphy-Brown LLC,* 980 F.3d 937, 958–59 (4th Cir. 2020); *Ponder v. City of Ashville*, 589 F. Supp.3d 500, 502–03 (W.D.N.C. 2022).  However, this gatekeeping responsibility is not absolute: "the court is *only* a gatekeeper, and a gatekeeper alone does not protect the castle; as we have explained, a party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination."   *United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004).   All *Daubert* demands is that the trial judge render a "preliminary assessment" of whether the proffered testimony is both reliable, in that it is based on "scientific knowledge," and helpful, in that it is of assistance to the trier of fact in understanding or determining a fact in issue.  *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998).  In fulfilling its gatekeeping obligations, a court determines only whether the underlying methodology is valid, not whether the expert's conclusions are correct.  *TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003).

Here, Plaintiff's counsel never proffered to the Court, either before or during trial, that Dr. Sheorn's testimony was false, misleading, or inappropriate.  While, as Plaintiff asserts, the Court must perform a gatekeeping function under Federal Rule of Evidence 702, it is not the job of the Court to independently determine witness fitness as the testimony is being offered, and especially in the absence of motions—whether prior or contemporaneous—by the objecting party.  Again, Plaintiff had multiple opportunities to challenge Dr. Sheorn's testimony—whether through a *Daubert* motion, pretrial motion to exclude, or through effective objection, cross examination, or rebuttal testimony from their own expert.  Plaintiff did not avail himself of any of these opportunities, and he cannot now lay his failure to do so at the feet of the Court.

Plaintiff cites the holding in *Nease v. Ford Motor Co.,* 848 F.3d 219 (4th Cir. 2017), to support his assertions regarding the court's gatekeeping function.  However, the facts of *Nease* do not apply to Plaintiff's circumstances.  There, the party moving for a new trial filed a motion in limine to exclude the unreliable testimony, but the trial judge dismissed their arguments without a *Daubert* analysis.  *See Nease*, 848 F.3d at 230.  In the present case, there were no such motions filed by Plaintiff in opposition to Dr. Sheorn's testimony after Plaintiff's initial challenge to Dr. Sheorn's expert designation, despite ample opportunity to do so.  Fourth Circuit case law acknowledges the gatekeeping responsibilities of the court with regards to expert witnesses, but this does not absolve Plaintiff of his duty to limit questionable testimony, to properly question witnesses, and to present his own credible witness(es) to the jury.

Furthermore, a new trial should be granted on the basis of false evidence "where the court is reasonably well satisfied that the testimony given by a material witness is false; that without it, a jury might have reached a different conclusion; [and] that the party seeking a new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial." *Dorton v. Hendrick Motorsports, Inc*., 792 F. Supp.2d 870, 882 (M.D.N.C. 2011) (quoting *Gibson v. Total Car Franchising Corp., 223 F.R.D. 265, 279 (M.D.N.C. 2004)).* Plaintiff claims to have been surprised by Dr. Sheorn's testimony that strayed from the DSM-V because she had included the DSM-V criteria as an appendix with her expert opinion.  (Pl. Reply to Gutierrez 2, ECF No. 250.)  However, Plaintiff was timely provided Dr. Sheorn's full expert report before trial, and that report explicitly included the statements on which Plaintiff now bases his motion.

For example, Dr. Sheorn writes in her report that a trigger for PTSD must be "both unspeakable and incomprehensive—neither of which was true for this incident"; that Nazario does

not suffer from Generalized Anxiety Disorder because it is "a disorder of dependency that originates in childhood between the ages of 18 months and two and a half years"; and that Panic Disorder without agoraphobia "is a consequence of separation anxiety in very early childhood." (*See* Expert Report of Keyhill Sheorn 19, 22.)   Despite this, Plaintiff passed up several opportunities to limit and object to this now-challenged testimony, and even declined to depose Dr. Sheorn on the basis for her opinions.   Given that the content of Dr. Sheorn's testimony was of no surprise to Plaintiff and that Plaintiff had ample opportunity to address it, the Court will deny the motion for a new trial based on this argument.

In a one-sentence argument, Plaintiff claims, but does not explain, that Brandon Tatum's testimony was false and not based on any empirical data.  (*See* ECF No. 245 at 7.)  At the parties' Final Pretrial Conference, the Court addressed Brandon Tatum's fitness as an expert, finding him qualified but limiting his testimony to that expertise gained from his time and experience as a law enforcement officer.  (*See* ECF Nos. 214, 218.)  Because Plaintiff declined to develop additional argument addressing any alleged false statements by Tatum, this Court reiterates its earlier findings and denies Plaintiff's Motion for a New Trial based on the statements of Tatum.

3.  <u>An incorrect verdict resulted when the jury was improperly instructed and reached its decision under an incomplete theory of the law</u>

Plaintiff argues that Jury Instruction No. 41, regarding reasonable force an officer can use in making an arrest, contradicts Instruction No. 27-A, regarding the Court's finding of probable cause for obstruction of justice without force and failure to obey.  (Mem. Supp. Mot. New Trial 8).  In response, Defendants argue that objections, with regards to jury instructions, are not proper grounds for a new trial, even assuming *arguendo* the jury instructions advocated for by Plaintiff were accurate statements of law (something Defendants do not concede).  (Crocker Mem. Opp'n Mot. New Trial; *see also* Gutierrez Mem. Opp'n Mot. New Trial.)

A party seeking a new trial based on erroneous jury instructions must establish "(1) it made a proper and timely objection to the jury instructions; (2) those instructions were legally erroneous; (3) the errors had prejudicial effect; and (4) it requested alternative instructions that would have remedied the error." *Hafco Foundry & Mach. Co., Inc. v. GMS Mine Repair & Maint., Inc.*, No. CV 1:15-16143, 2018 WL 1582728, at *7 (S.D.W. Va. Mar. 30, 2018). On review, "jury instructions must be viewed as a whole, and even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case." *Hall v. Wal-Mart Properties, Inc.,* 78 Fed. Appx. 274, 275 (4th Cir. 2003) (citing *Hardin v. Ski Venture Inc.*, 50 F.3d 1291, 1294, 1296 (4th Cir. 1995)). Furthermore, "to preserve an objection to the instructions to the jury, a party is required to point out specifically the nature of the objection." *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 112 (4th Cir. 1991). Notably, failure to object to issues relating to jury instructions results in a waiver of those objections for the purposes of a new trial and appeal. *See Richmond v. Madison Mgmt. Group. Inc.,* 918 F.2d 438, 453–54 (4th Cir. 1990).

Plaintiff had an opportunity to object to jury instructions outside the presence of the jury and before the instructions were delivered. Plaintiff made no objection to Instruction 41, presumably because Instruction 41 is simply a combined form of Plaintiff's own proposed instructions 14 and 15, supplemented with additional language from the Virginia Model Jury Instructions to provide a fulsome and accurate statement of the law. As to Instruction 27-A, the Court added this instruction after conferring with the parties and soliciting their drafting input, all of which occurred on the record. Plaintiff accordingly contributed to the very drafting of this instruction. Based on this drafting history and Plaintiff's lack of contemporaneous objections, Plaintiff has waived his ability to raise these issues in moving for a new trial. Plaintiff's argument for a new trial on these grounds therefore fails.

4. <u>The verdict is against the clear weight of the evidence and will result in a miscarriage of justice</u>

Plaintiff argues that the clear weight of the evidence shows that he was profoundly injured due to the Defendants' use of excessive force against him.  (Mem. Supp. Mot. New Trial 8–9.)  In response, Defendants argue that the jury was free to reject the testimony of Plaintiff's experts, as well as Plaintiff's own testimony, per the jury instructions.  (*See* Crocker Mem. Opp'n Mot. New Trial 11.)  They further highlight specific testimony that could have cast doubt in jurors' minds as to the extent of his injuries, including testimony from Plaintiff's partner and Plaintiff's treating psychologist.  (Gutierrez Mem. Opp'n Mot. New Trial 10.)

As the instructions make clear, a jury is not required to believe or assign any weight to testimony or evidence they hear.  (*See* Jury Instruction No. 8.)  The jury is at liberty to weigh the credibility of the evidence as it sees fit and give it such weight as the jury believes it deserves.  (*Id.*)  As Defendants point out, the jury could have determined that Plaintiff's experts, or Plaintiff himself, was not credible.  The less-than-ideal outcome for Plaintiff is not sufficient justification for a new trial.

When considering whether to grant a Motion for a New Trial, the Court may also assess the weight and credibility of the evidence presented at trial.  However, in light of the jury determination, the Court construes "clear weight" of the evidence as something more than mere preponderance of the evidence.  *See PBM Products, LLC v. Mead Johnson & Co.*, No. 3:09-CV-269, 2010 WL 723739 at \*4 (E.D. Va. 2010) (holding that, although movant had valid critiques of an expert witness's analysis, the fact that the analysis was reliable and data-based indicated that the verdict was not against the clear weight of the evidence); *Prichard v. Kurucz*, 22 Fed. App'x. 122, 125 (4th Cir. 2001) (finding that a jury verdict was not against the clear weight of the evidence despite movant's presentation of testimony and records in support of her position).  While the

15

Court acknowledges that reasonable persons could find for Plaintiff, the Court does not assess that the weight and credibility of that evidence is so incontrovertible as to require the extraordinary step of overturning a jury verdict.

Plaintiff further argues that the verdict in this case would, if sustained, constitute a miscarriage of justice.  To this end, Plaintiff first argues that (1) per Virginia Code § 44-97, Plaintiff was exempt from arrest except for a breach of the peace or in the case of a felony because he was returning home from required military duty, and the Court should have permitted a jury instruction to this effect, and (2) a juror, who happened to be the appointed foreman, was allegedly sleeping during the trial.  (Mem. Supp. Mot. New Trial 9–10.)

With regards to the proposed instruction pertaining to Virginia Code § 44-97, Plaintiff's counsel only offered the instruction on the evening of January 12, 2023, following the conclusion of the parties' presentation of evidence and with only closing arguments remaining in the trial. The Court declined to give this instruction to the jury, stating that the issue—which represented an entirely new legal issue—should have been brought up prior to trial such that the parties could have briefed the matter.  Based on this timing, the Court rejected the proposed instruction.  Per the Court's scheduling order, counsel was instructed to submit their proposed jury instructions and verdict form no later than November 23, 2022.  (See ECF No. 119.)  After the parties' Final Pretrial Conference, the Court again ordered counsel to submit a word version of the jury instructions via email to the Court no later than December 21, 2022.  (See ECF No. 214.)  "A party may assign as error . . . a failure to give an instruction, if that party properly requested it and—unless the court rejected the request in a definitive ruling on the record—also properly objected." Fed. R. Civ. P. 51(d)(1)(B).  Plaintiff's sudden proposal of this instruction, when neither party had presented evidence or argument to its effect at any point pre- or during trial, was grossly untimely.  Because

this proposed jury instruction, regardless of whether it is a proper reading of § 44-97, was not timely proposed and thus not "properly requested", *id.*, its exclusion from the final set of jury instructions is insufficient basis for a new trial.

As to the purportedly sleeping juror, the Court "has considerable discretion in how to handle a sleeping juror." *United States v. Johnson,* 409 Fed. Appx. 688, 692 (4th Cir. 2011) (internal citations omitted) (quoting *United States v. Freitag,* 230 F.3d 1019, 1023 (7th Cir. 2000). "If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury." (*Id.*) At the conclusion of his final rebuttal witness examination, Plaintiff brought to the Court's attention that a juror was seen sleeping.  Upon being notified that a juror appeared to be sleeping, the Court asked the jury if they needed a break, and each juror responded that a break was not needed.  After this, Plaintiff made no motion to excuse or strike the juror. "Absent any evidence that the juror was unable to consider the case fairly," Plaintiff has "failed to show error, much less plain error." *Johnson*, 409 Fed. Appx. at 692. Therefore, a single alleged instance of a sleeping juror does not constitute a miscarriage of justice sufficient to warrant a new trial.

For all these reasons, the verdict does not constitute a miscarriage of justice, and therefore, a new trial is not warranted.  The Court will accordingly deny Plaintiff's Motion for a New Trial.

## B. Plaintiff's Motion to Alter or Amend the Jury Verdict

Plaintiff contends that the Court should alter or amend the zero-dollar damages verdict returned by the jury for the Fourth Amendment Illegal Search claim as to Defendant Crocker. (Mem. Supp. Mot. Amend 1–2, ECF No. 251.)  The Court had previously found Defendant Crocker liable on this count prior to the beginning of trial, and the jury was asked only to reach a verdict on damages, not liability.  Plaintiff now asserts that the jury's $0.00 damages award is

contrary to federal and state law, as case law requires at least "nominal" damages when a defendant is found liable for a Constitutional violation. (*Id*. 2.)

Defendant Crocker responds that, while a court may award nominal damages on federal civil rights claims absent proof of damages, such an award is not mandatory. (Mem. Opp'n Mot. Amend 2–3.) In addition, Defendant Crocker argues that there is no basis to set nominal damages under Virginia Law. (*Id*.) Defendant Crocker further asserts that the jury was properly instructed on awarding damages, that Plaintiff Nazario's counsel did not request that the jury be instructed on nominal damages, and that Plaintiff's motion is merely a tactic "to backdoor his 'prevailing party' status in an attempt to seek an award for attorneys' fees . . . ." (*Id*. 3–4.)

In *Cary v. Phiphus*, 435 U.S. 247 (1978), the U.S. Supreme Court determined that two public school students who prevailed on federal civil rights claims under 42 U.S.C. § 1983 were entitled to nominal damages, even absent proof of actual injury. The Court reasoned that the awarding of nominal damages "recognizes the importance to organized society that those [constitutional] rights be scrupulously observed," even if injuries justifying compensatory damages were not present. *Cary*, 435 U.S. at 266. The Fourth Circuit followed this principle in *Norwood v. Bain*, 166 F.3d 243 (4th Cir. 1999) (*en banc*), when it reversed a district court decision ruling that class members were not entitled to nominal damage awards for unconstitutional searches. *See also Prince v. City of Charlotte, N.C.*, 93 F.3d 1241, 1256 (4th Cir. 1996) (awarding nominal damages in the sum of one dollar per plaintiff because appellees "did suffer a constitutional violation, but failed to prove emotional distress warranting compensatory damages…"); *see, e.g., Park v. Shiflett*, 250 F.3d 843, 854 ("[I]n a case in which a plaintiff's civil rights are found to have been violated, it is appropriate to award nominal damages").

In the present case, this Court concluded at the summary judgment stage that Defendant Crocker violated Plaintiff's constitutional rights when he illegally searched his vehicle.  As such, in accordance with *Cary* and *Norwood*, the Court will grant Plaintiff's motion as to the federal claim and award Plaintiff nominal damages in the amount of $1.00 in order to vindicate his rights under the U.S. Constitution.

The jury also awarded zero dollars in compensatory damages and $1,000 in punitive damages for the illegal search claim under Virginia Code § 19.2-59.  Plaintiff contends that the Virginia statute mandates an award of compensatory and punitive damages, and that this requirement was incorporated into Jury Instruction No. 29 and the verdict form.  (Mem. Supp. Mot. Amend 2.)  Defendant Crocker disputes this, contending that it is well-established law in Virginia that compensatory damages can be zero and that the Court's further clarification to the jury that it could award zero dollars in damages was correct.  (Mem. Opp'n Mot. Amend 3, 4.)

The relevant part of Virginia Code § 19.2-59 states "Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages."  This provision of the Virginia Code "concerns a 'common law tort that has achieved constitutional dimensions, and the statute specifies the familiar tort law remedy of damages.'"  *Cromartie v. Billings*, 837 S.E.2d 247, 254 (Va. 2020) (quoting *Burnham v. West*, 681 F. Supp. 1169, 1172 (E.D. VA. 1988)).  Although the Court agrees with Defendant Crocker that the action against which Va. Code § 19.2-59 protects is a tort claim, the nature of that claim is unique, and the remedy for the claim is explicitly set out in the language of the statute.  The cases cited by Defendant Crocker do not involve violations of statutes that contain similar language requiring the provision of damages.

In Virginia's illegal search statute, the word "shall" indicates that such damages are either mandatory or directory.[4]  *See Ross v. Craw*, 343 S.E. 312, 316 (Va. 1986) ("[T]he word "shall" is primarily mandatory in its effect and the word "may" is primarily permissive.") (quoting *Pettus v. Hendricks*, 74 S.E. 191, 193 (Va. 1912)).  *See also, Hood v. Commonwealth*, 701 S.E.2d 421, 429–30 (Va. 2010) (stating that while the term "shall" in a statute is generally construed as directory rather than mandatory, the court may not construe it as such if the statute manifests a contrary intent); *Rickman v. Commonwealth*, 808 S.E.2d 395, 398 (Va. 2017) (finding that the term "shall" is usually discretionary rather than mandatory and thus no specific exclusive remedy applies unless the statute manifests a contrary intent).

Whether the term "shall" in Virginia's illegal search statute is mandatory, as Plaintiff proffers, or directory, "properly understood, a 'shall' command in a statute always means 'shall', not 'may'.  No litigant or court should willfully disregard such a legislative command." *Rickman*, 808 S.E.2d at 389.  Finding that the Virginia statute is clear in its language and intention, this Court will follow the intention of the legislature and grant Plaintiff's motion as to the state law claim.  As such, the Court awards nominal damages in the amount of $1.00 on the state law claim of illegal search.

---

[4] In Virginia, a mandatory statute carries with it an exclusive and specific remedy, and failure to comply with such mandate is procedurally fatal.  On the other hand, a directory statute does not carry a specific, exclusive remedy, and a failure to comply is not necessarily procedurally fatal.  Instead, it empowers the court to exercise discretion in tailoring a remedy.  *See* 3 Norman J. Singer & J.D. Shambie Singer, Sutherland's Statutes and Statutory Construction 2 (7th ed. 2008).

## **CONCLUSION**

For the foregoing reasons, the Court will deny Plaintiff Caron Nazario's Rule 50 and 59

Motions (ECF No. 244) but grant Plaintiff's Motion to Alter or Amend (ECF No. 251).

An appropriate Order shall issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: May 3, 2023