IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CARON NAZARIO,                    )
    Plaintiff,                    )
                     )
        v.                    )          Civil Action No. 2:21CV169 (RCY)
                     )
JOE GUTIERREZ, *et al.*,          )
    Defendants.                   )
_____)

## MEMORANDUM OPINION

This is a civil rights action filed by Plaintiff Caron Nazario in the wake of a traffic stop initiated by Defendant police officers Joe Gutierrez and Daniel Crocker ("Defendants" or the "Officers"). This matter is before the Court after partial reversal and remand by the Fourth Circuit, on Plaintiff's and Officer Gutierrez's cross-Motions for Summary Judgment. The matters have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78. For the reasons stated below, the Court will deny both Motions for Summary Judgment.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The Court has concluded that the following narrative represents the undisputed[1] facts for the purpose of resolving the cross-motions for summary judgment:

_____

[1] Typically, in resolving a Motion for Summary Judgment, the Court takes care to review the parties' recitation of facts to resolve any factual disputes and "competing, rational inferences" in the light most favorable to the opposing party. *Id.* (internal quotation marks and citation omitted). Given the procedural posture of this matter as well as the availability of undisputed video evidence, this level of review is largely unnecessary. *Cf.* Gutierrez Mem. Supp. Mot. Summ. J. 1 n.1, ECF No. 304 ("[T]here are no disputed facts relevant to this Motion."). Thus, the Court relies primarily on the Fourth Circuit's recitation of the facts and the video evidence in the record, with some added relevant details from the parties' briefing.

On December 5, 2020, at approximately 6:34 p.m., Plaintiff Caron Nazario ("Plaintiff" or "Lt. Nazario"[2]) was driving through the Town of Windsor, Virginia, in his newly leased 2020 Chevrolet Tahoe. *Nazario v. Gutierrez*, 103 F.4th 213, 219 (4th Cir. 2024). The Tahoe's license plate was not affixed to the rear bumper but was instead taped inside the vehicle's tinted rear window, in the upper right corner. *Id.* at 219–20.

Defendant Crocker observed the vehicle driving but could not see a license plate on the car, *id.* at 220, as is required by Virginia law, Va. Code Ann. §§ 46.2-715, 716. At the time, Officer Crocker was still in training, under the remote supervision of Defendant Gutierrez. *Nazario*, 103 F.4th at 220. Officer Crocker illuminated his blue overhead lights and initiated a traffic stop based on the suspected infraction. *Id.*

Lt. Nazario reduced his speed but did not pull over. *Id.* Because Lt. Nazario continued to drive, Officer Crocker initiated his sirens and radioed dispatch that the driver was not stopping. Gutierrez Stmt. Undisp. Facts ("SUF") ¶ 5, ECF No. 304. Officer Gutierrez responded to the call, activated his own blue lights and siren, and joined Officer Crocker in pursuing Lt. Nazario's vehicle. *Id.* ¶ 6. After failing to yield for more than a mile, Lt. Nazario turned into a gas station and stopped his car there. Nazario SUF ¶ 24, ECF No. 306.

Both Officers pulled in behind Lt. Nazario's vehicle. *Nazario*, 103 F.4th at 220. Officer Crocker radioed dispatch that he was conducting a "'felony traffic stop,' which is synonymous with a 'high risk traffic stop.'" Gutierrez SUF ¶ 7. Both Officers exited their cruisers with their service weapons drawn and pointed at Lt. Nazario's vehicle. *Id.*; *Nazario*, 103 F.4th at 220. Officer Crocker immediately yelled at Lt. Nazario to roll his window down and show his hands.

---

[2] "At the time of events underlying this [case], Lt. Nazario was a Second Lieutenant in the United States Army Medical Corps. He is of Latinx and African American descent. During the pendency of this litigation, he was promoted to First Lieutenant." *Nazario v. Gutierrez*, 103 F.4th 213, 219 n.1 (4th Cir. 2024).

*Nazario*, 103 F.4th at 220–21.  After a few seconds, Lt. Nazario complied and held his hands outside of the driver's side window.  *See id.*; Compl. Ex. 3 ("Gutierrez BWC"), at 2:04–2:10, ECF No. 1-2.[3]  Seconds later, Officer Crocker commanded Lt. Nazario to open his door and step out of the vehicle.  Gutierrez BWC, at 2:10–2:14.  Lt. Nazario did not step out, and Officer Crocker continued to command him to do so.  *Id.* at 2:14–2:25.  After two additional commands by Officer Crocker, Officer Gutierrez joined in, commanding Lt. Nazario to "get out of the car, now!"  *Id.* at 2:25–2:28.  Still, Lt. Nazario did not comply.  *Id.*  The Officers slowly approached, guns still aimed at the vehicle, contradictorily commanding Lt. Nazario to both keep his "hands outside the window" and to "get out of the car."  *Id.* at 2:28–2:45.  Lt. Nazario remained seated in his vehicle with his hands clasped outside the window, and asked, "what is going on?"  *Id.* at 2:45.

The Officers commanded Lt. Nazario to step out of the vehicle several more times.  *Id.* at 2:45–2:56.  Lt. Nazario, visibly wearing his Army uniform, responded, "I'm serving this country, and this is how I'm treated?"  *Id.* at 2:54–2:57.  Officer Gutierrez continued to command Lt. Nazario to step out of the vehicle, and Lt. Nazario continued to ask what is going on.  *Id.* at 2:57–3:08.  With his gun still pointed at Lt. Nazario, Officer Gutierrez responded, "What's going on is you're fixin' to ride the lightning, son."  *Id.* at 3:05–3:11.  At this point, approximately ninety seconds had lapsed since the Officers had exited their vehicles.  Officer Gutierrez holstered his firearm, drew his taser, and approached the driver's side window, where Lt. Nazario remained seated.  *Id.* at 3:08–3:15.

For another minute and ten seconds, the Officers continued this back-and-forth with Lt. Nazario.  Now within mere feet of Lt. Nazario's seat in the Tahoe, Officer Gutierrez commanded

---

[3] Officer Gutierrez's bodyworn camera footage is in the record several times over.  *E.g.*, Compl. Ex. 3, ECF No. 1-2; Pl. Br. Supp. Mot. Part. Summ. J. Ex. 6, ECF No. 82-6.  Lt. Nazario incorporates each prior filing into his Motion for Summary Judgment.  Nazario SUF ¶ 3, ECF No. 306.

Lt. Nazario to get out of the vehicle several more times, after which Officer Crocker chimed in, "Sir, just get out of the car!  Work with us and we'll talk to you—get out of the car!"  *Id.* at 3:16–3:23.  Officer Gutierrez commanded Lt. Nazario to "obey."  *Id.*  Lt. Nazario responded, "I'm honestly afraid to get out."  *Id.* at 3:25–3:26.  To that, Officer Gutierrez said, "Yeah, you should be."  *Id.* at 3:26–3:31.  Simultaneously, Officer Gutierrez pulled on the driver's side door but found it to be locked.  *Id.*  After several tries, Officer Crocker reached into the vehicle and was able to unlock and open the door.  *Id.* at 3:30–4:15.  Lt. Nazario, however, used his elbow to re-close the door.  *Id.* at 4:15–4:16.

Officer Gutierrez then pepper sprayed Lt. Nazario four times.  *Nazario*, 103 F.4th at 222.  When Lt. Nazario still made no effort to step out of the car, Officer Gutierrez opened the vehicle door.  *Id.*  Lt. Nazario slowly moved his hands to his seat belt, unbuckled, and turned his body to face the Officers.  *Id.*  Officer Gutierrez grabbed Lt. Nazario's arm and forced him to the ground.  *Id.*  The Officers ordered Lt. Nazario to lie on his stomach, which Lt. Nazario did, and the Officers handcuffed him.  *Id.*

After Lt. Nazario was handcuffed, the Officers "cease their shouting and begin talking with [Lt.] Nazario."  *Id.*  Emergency medical personnel arrived to assist Lt. Nazario with any injuries and/or effects from the pepper spray; meanwhile, Lt. Nazario's personal information was processed by the Windsor Police Department.  *Id.* at 223.  "That effort revealed no warrants and a valid Virginia concealed carry permit."  The Officers searched Lt. Nazario's car and similarly found no evidence of criminality.  *Id.*  Eventually, the Officers uncuffed Lt. Nazario.  *Id.*  After the handcuffs were removed, Officer Gutierrez emphasized to Lt. Nazario that it is common for drivers to delay pulling over until they arrive at a well-lit location, such as the gas station.  *Id.* at

223.  Officer Gutierrez added that, "eighty percent of the time," those who do so are racial minorities.  Compl. Ex. 5 ("Crocker BWC"), at 9:19–9:25, ECF No. 1-2.

**B. Relevant Procedural History**

      1.   <u>Pretrial Litigation</u>

         a.   *Complaint*

Lt. Nazario first filed his Complaint in this Court on April 2, 2021.  Compl., ECF No. 1. Lt. Nazario advanced eight claims, each naming both Officer Gutierrez and Officer Crocker.  *See generally id.*  Counts One through Three alleged violations of Lt. Nazario's Fourth Amendment rights by way of 42 U.S.C. § 1983.  *Id.* ¶¶ 65–96.  Count Four similarly invoked § 1983, but alleged violations of Lt. Nazario's First Amendment rights.  *Id.* ¶¶ 97–104.  Counts Five through Eight advanced claims under Virginia law for assault, *id.* ¶¶ 105–112, battery, *id.* ¶¶ 113–119, false imprisonment, *id.* ¶¶ 120–129, and illegal search, *id.* ¶¶ 130–140, respectively.

         b.   *Motions for Summary Judgment*

On January 12, 2022, each party filed a Motion for Summary Judgment.  Crocker's Mot. Summ. J., ECF No. 77; Gutierrez's Mot. Summ. J., ECF No. 79; Pl.'s Mot. Part. Summ. J. on Liability & Qual. Imm., ECF No. 81.  The Court resolved the Motions by way of a Memorandum Opinion issued on August 9, 2022.  Mem. Op. ("First Summ. J. Op."), ECF No. 114.  In relevant part, the Court ruled as follows:

First, the Court considered whether Officer Crocker had probable cause to initiate the traffic stop, and what evidence of criminality existed over the course of the interaction.  *Id.* at 7– 10.  The Court found that the undisputed facts demonstrated that, at the time the Officers pulled into the gas station, there was probable cause that Lt. Nazario had committed two violations of Virginia law:  (1) a violation of Va. Code Ann. §§ 46.2-715, 46.2-716 for failure to properly display

license plates, a mere traffic infraction; and (2) a violation of Virginia Code Ann. § 46.2-817 for eluding, a misdemeanor. *Id.* at 7–8, 10–11. The Court also found that, during the Officers' interaction with Lt. Nazario, Lt. Nazario's conduct gave rise to probable cause for obstruction of justice and failure to obey, in violation of Virginia Code Ann. §§ 18.2-460(A), 18.2-464. *Id.* at 8–9.

Second, the Court considered whether qualified immunity[4] shielded the Officers from Lt. Nazario's unreasonable seizure claim. *Id.* at 9. As to the existence of a constitutional violation, the Court found that, in the light most favorable to Lieutenant Nazario, "the conflicting orders of both Officers, the aiming of firearms, and the purported death threats made by Defendant Gutierrez unreasonably prolonged the stop." *Id.* at 16. Thus, the Court found that Lt. Nazario "ha[d] properly alleged a constitutional violation." *Id.* Proceeding to the second step of the qualified immunity analysis, however, the Court found that the constitutional violation alleged by Lt. Nazario was not clearly established, i.e., that, at the time of the traffic stop, it would not have been clear to the Officers that their conduct was a violation of Lt. Nazario's rights. *Id.* at 17. Thus, the Court found that the Officers were protected from Lt. Nazario's unreasonable seizure claim by qualified immunity. *Id.*

---

[4] On appeal, the Fourth Circuit described the qualified immunity inquiry as follows:

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In resolving whether to award qualified immunity at summary judgment, courts are to engage in a "two-pronged inquiry." The first prong of that inquiry must determine whether — in a light most favorable to the injured party — "the officer's conduct violated a constitutional right." The second prong asks whether the right at issue in the first prong was "clearly established at the time" of the contested action. Accordingly, a court may award qualified immunity to an official if either (1) there is no violation of a constitutional right, or (2) the constitutional right was not clearly established.

*Nazario*, 103 F.4th at 230 (citation modified).

Third, the Court awarded summary judgment to Lt. Nazario for his claims of unconstitutional search and search in violation of Virginia law against Officer Crocker, finding that Officer Crocker was, as a matter of law, liable. *Id.* at 32. However, as to the same claims against Officer Gutierrez, the Court found that triable issues of fact remained. *Id.*

2. <u>The Trial</u>

The matter proceeded to trial on January 9, 2023. ECF No. 230. Pursuant to the Court's previous rulings, the jury was instructed that, "at the time that Defendant Crocker initiated the traffic stop of Caron Nazario, he had probable cause to believe that Caron Nazario lacked a license plate and was eluding him." Jury Instr. No. 26, ECF No. 240. And, because the Court had found that the Officers were immune from the unreasonable seizure claim, that claim was not presented to the jury. *See generally* Jury Verdict, ECF No. 238.

The jury was asked to determine whether Officer Gutierrez was liable to Lt. Nazario on his claims of unconstitutional search and Virginia illegal search, and whether both Officers were liable on Plaintiff's common law claims of false imprisonment, assault, and battery. *See generally id.* The jury was also asked to determine the amount of compensatory and punitive damages appropriate for the claims summarily granted against Officer Crocker. *Id.* at 3, 6.

As to the false imprisonment claim, the jury was instructed:

> False imprisonment is an intentional restriction of a person's freedom of movement without legal right. . . . A lawful arrest is a legal right to restrain another's freedom of movement. . . . If a law enforcement officer extends the duration of an otherwise legal traffic stop beyond what is reasonably necessary to complete the mission of a traffic stop, even if for just a minimal amount of time, this becomes an intentional restriction of the person's freedom of movement without legal right. The mission of a traffic stop is to address the traffic violation that warranted the stop.

Jury Instr. Nos. 33–34.

On January 17, 2023, after a day and a half of deliberation, the jury returned a unanimous verdict. *See generally* Jury Verdict. As to Defendant Crocker, the jury awarded Plaintiff nothing in compensatory damages and $1,000.00 in punitive damages on the Virginia state law illegal search claim and found for Defendant Crocker on all remaining counts. *Id.* As to Defendant Gutierrez, the jury found him liable for common law assault and awarded Plaintiff $2,685.00 in compensatory damages but awarded no punitive damages; it found for Defendant Gutierrez on all other counts. *Id.*

Lt. Nazario filed a Motion for New Trial, ECF No. 244, and a Motion to Alter Judgment, ECF No. 251. The Court denied the Motion for New Trial but granted the Motion to Alter Judgment and awarded nominal damages as to the Fourth Amendment and Virginia state law unlawful search claims against Defendant Crocker. Order, ECF No. 270; Am. Clerk's J., ECF No. 271.

### 3. The Appeal

On June 1, 2023, Lt. Nazario appealed the matter to the Fourth Circuit, Not. Appeal, ECF No. 272, principally disputing this Court's previous summary judgment determinations, described *supra* Part I.B.1.b, as well as the manner in which the Court instructed the jury, *see Nazario*, 103 F.4th at 225. On May 31, 2024, the Fourth Circuit issued a published opinion largely affirming this Court's previous decisions, though reversing and remanding on two issues underpinning this Court's summary judgment analysis: (1) that, viewing the facts in the light most to Lt. Nazario, there existed probable cause as to eluding at the time Lt. Nazario pulled into the gas station, *id.* at 227; and (2) that, in the light most favorable to Lt. Nazario, qualified immunity shielded Officer Gutierrez from Lt. Nazario's unreasonable seizure claim, *id.* at 231–33 ("Remanded Issues"). The

Fourth Circuit did not reverse or remand as to any issues relating to Officer Crocker or the jury instructions.  *See generally id.*

    4.    <u>Post-Appeal Litigation</u>

On September 3, 2024, the Court advised the remaining parties—Plaintiff and Defendant Gutierrez—that it would permit them to file renewed motions for summary judgment as to the Remanded Issues.  Order, ECF No. 302.  On October 1, 2024, the parties filed the instant Motions and memoranda in support thereof.  Gutierrez's 2d Mot. Summ. J. ("Gutierrez Mot. Summ. J."), ECF No. 303; Gutierrez Mem. Supp. Mot. Summ. J. ("Gutierrez Mem. Supp."), ECF No. 304; Nazario's 2d Mot. Part. Summ. J. ("Pl. Mot. Summ. J."), ECF No. 305; Nazario's Br. Supp. 2d Mot. Part. Summ. J. ("Pl. Mem. Supp."), ECF No. 306.

On October 14, 2024, Lt. Nazario filed his Opposition to Defendant Gutierrez's Second Motion for Summary Judgment ("Nazario Opposition"), ECF No. 313.  On October 15, 2024, Officer Gutierrez filed his Opposition to Plaintiff's Second Motion for Partial Summary Judgment on Liability ("Gutierrez Opposition"), ECF No. 316.  On October 21, 2024, Officer Gutierrez filed his Reply Memorandum in Further Support of his Second Motion for Summary Judgment ("Gutierrez Reply"), ECF No. 317.  The same day, Lt. Nazario filed his reply in support of his own Motion for Summary Judgment.  Opp'n to Def.'s 2d Mot. Summ. J. ("Pl. Reply"), ECF No. 318.

## II. STANDARD OF REVIEW

The standard of review for cross motions for summary judgment is well-settled in the Fourth Circuit.

> As we have explained, "when cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure.  *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).  Pursuant to that

standard, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *See Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 246 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

*B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 221 (4th Cir. 2022).

The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585–86 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id*. at 248. A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id*.

Furthermore, to defeat an otherwise properly supported motion for summary judgment, the nonmoving party "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence" concerning a material fact. *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citations omitted); *Anderson*, 477 U.S. at 252. Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "Thus, if the evidence

is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Id*. (quotation marks and citation omitted).

### III. DISCUSSION

In support of his Motion for Summary Judgement, Officer Gutierrez advances two arguments. First, he argues that the doctrine of issue preclusion prevents Lt. Nazario from litigating the remanded unreasonable seizure issue. Gutierrez Mem. Supp. 8–11, ECF No. 304. In the alternative, he argues that, even in the light most favorable to Lt. Nazario, Officer Gutierrez did not unreasonably prolong the stop when he threatened Lt. Nazario and therefore did not violate Lt. Nazario's Fourth Amendment rights. *Id.* at 12–14.

Lt. Nazario argues in response that issue preclusion does not prevent further litigation because the Remanded Issues are distinct from those that were presented to the jury. Pl. Opp'n 9–11, ECF No. 313. In the alternative, he argues that he was not afforded a full and fair opportunity to litigate the Remanded Issues and therefore issue preclusion is inappropriate here. *Id.* at 11. Finally, Lt. Nazario argues that Officer Gutierrez's purported death threats did factually prolong the stop, such that, as a matter of law, Officer Gutierrez unreasonably seized Lt. Nazario in violation of his Fourth Amendment rights. *Id.* at 14.

In support of his own Motion for Summary Judgment, Lt. Nazario advances an issue preclusion argument distinct from that advanced by Officer Gutierrez. Specifically, Lt. Nazario argues that the jury's finding that Officer Gutierrez was liable for assault dictates a finding of unreasonable seizure as a matter of law. Pl. Mem. Supp. 15–19, ECF No. 306. Second, Lt. Nazario argues that the undisputed facts demonstrate that Officer Gutierrez's purported death threats prolonged his detention of Lt. Nazario. *Id.* at 19–23. In conjunction with this argument, Lt.

Nazario asks the Court to find that, as a matter of law, the Officers only had probable cause that he had committed a traffic infraction when they all pulled into the gas station. *Id.* at 20.

In response, Officer Gutierrez argues that the Remanded Issues are not precluded in the manner Lt. Nazario suggests. Gutierrez Opp'n 8, ECF No. 316. Further, as to Lt. Nazario's factual argument, Officer Gutierrez argues that his purported death threats did not violate Lt. Nazario's rights as a matter of law. *Id.* at 11.

The Court finds that none of the parties' arguments for summary judgment succeed. Thus, it will deny both Motions.

## A. The Remanded Issues

At the outset, the Court clarifies the contours of the Remanded Issues. As noted *supra*, the Fourth Circuit reversed this Court's previous determination of two issues: (1) the existence of probable cause as to eluding; and (2) Officer Gutierrez's entitlement to qualified immunity with respect to his use of a firearm and issuance of purported death threats, in connection with Plaintiff's unreasonable seizure claim. *Nazario* 103 F.4th at 227, 231–33.

The precise effect of this decision is worth explaining. First, while these reversed issues may appear distinct, they are, in reality, two parts of the same whole. Both are steps in determining Officer Gutierrez's liability to Lt. Nazario on the claim of unreasonable seizure, i.e., whether the Officers prolonged the traffic stop beyond "the time reasonably required to complete the mission." *Id.* at 232 (citation modified). To determine the appropriate amount of time an officer should spend executing a "mission," it must be determined what the "mission" of the stop is. *See id.*; *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission.'").

Previously, this Court determined that the undisputed facts demonstrated that the "mission" of the Officers' stop was to handle two suspected violations of the law:  (1) failure to properly display license plates, a traffic infraction; and (2) eluding, a misdemeanor.  First Summ. J. Op. at 7–8, 10–11, ECF No. 114.  On appeal, Lt. Nazario did not contest that the undisputed facts supported a finding of probable cause as to the traffic infraction.  *Nazario*, 103 F.4th at 226.  He did dispute, however, that those facts supported a summary judgment finding of probable cause as to misdemeanor eluding.  *Id.*  The Fourth Circuit agreed that such a finding was premature.  *Id.* at 227 ("[A]ssessing the facts known to the Policemen here—*in the light most favorable to Lt. Nazario*—we are unable to say that a prudent person would believe that Nazario committed the misdemeanor offense of eluding under Virginia law." (emphasis added)).[5]  Thus, by reversing this Court's summary judgment finding of probable cause for eluding, the Fourth Circuit *only* determined that the Officers could not benefit from a summary judgment determination that probable cause in fact existed as to eluding.  This necessarily leaves open the questions of (1) in the light most favorable to *the Officers*, whether probable cause existed as to eluding, and, if not, (2) whether a jury could find that the length of the "mission" of the stop reasonably included investigating the arrestable offense of eluding.[6]

---

[5] Critically, Fourth Circuit's opinion does *not* establish, as a factual and legal matter, that the Officers definitively lacked probable cause for eluding.  Rather, the Fourth Circuit merely determined that such a finding could not be supported by the undisputed facts before the Court at summary judgment.  *See Nazario*, 103 F.4th at 227. Exactly what cause existed at the time the Officers pulled into the gas station remains an open issue for a jury to decide.

[6] Whether there existed mere probable cause for the traffic infraction or probable cause for the traffic infraction *and* eluding is particularly significant in determining the tolerable duration of the Officers' detention of Lt. Nazario.  If the task of the mission was to address only the suspected traffic infraction, then the Fourth Amendment required the Officers to limit the stop to the amount of time required to "determin[e] whether to issue a traffic ticket, . . . . check[] the driver's license, determin[e] whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Rodriguez*, 575 U.S. at 355 (citation modified).  If there was probable cause as to the traffic infraction *and* misdemeanor eluding, however, the tolerable duration would presumably be longer, since the Officers would have to perform those infraction-related tasks as well as those necessary when presented with evidence of an arrestable offense. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001) (holding that probable cause supports a warrantless arrest of all crimes, even misdemeanors).

The Fourth Circuit's decision as to qualified immunity is similarly more complex than it may appear.  While the Fourth Circuit disagreed with this Court that qualified immunity *wholly* shielded Officer Gutierrez from Lt. Nazario's unreasonable seizure claim, *id.* at 232–33, it agreed that qualified immunity would shield Officer Gutierrez from liability for simply "pointing [his] firearm[] at Lt. Nazario" insofar as that conduct "unconstitutionally prolonged his seizure," *id.* at 233 ("[O]ur law is not sufficiently developed to make it obvious that pointing . . . firearms at Lt. Nazario unconstitutionally prolonged his seizure").  Per the Fourth Circuit, that immunity runs out when Officer Gutierrez's "conduct" (i.e., aiming a firearm at Lt. Nazario) combines with "death threats."  *Id.*  However, the Fourth Circuit's finding that Officer Gutierrez's language amounted to death threats was based on an interpretation of the facts in Lt. Nazario's favor—not as a preclusive matter of law.  *See id.* at 232 n.10 (explaining that, "[i]n a light *most favorable to Nazario*, [Officer Gutierrez's 'ride the lightning' comment] was an explicit and obvious death threat." (emphasis added)).  Accordingly, there remains an issue of fact as to whether Officer Gutierrez's comments to Lt. Nazario actually constituted death threats.  If they were, then Officer Gutierrez's conduct falls beyond the protection of qualified immunity.  However, if the comments were not death threats, then Officer Gutierrez's conduct falls within the protection of qualified immunity, and Lt. Nazario's unreasonable seizure claim necessarily fails.

Even if a jury finds that Officer Gutierrez's comments constituted death threats,  the Fourth Circuit's opinion does not permit a jury to consider Officer Gutierrez's entire course of conduct in making its unreasonable seizure determination.  Instead, a jury could only consider Officer Gutierrez's conduct beginning the moment at which such "conduct" becomes "combined with . . . [purported] death threats," since all prior relevant conduct is protected by qualified immunity.  *Id.* at 233–34.  That moment is, ostensibly, ninety seconds after the Officers exited their vehicles at

the gas station, when Officer Gutierrez tells Lt. Nazario that he's "fixin' to ride the lightning, son." Gutierrez BWC, at 3:05–3:08.

The Fourth Circuit's agreement that Lt. Nazario's conduct gave rise to probable cause for obstruction when he used his elbow to close the car door further limits the Remanded Issues. On appeal, Lt. Nazario argued that this Court erred by finding that the undisputed facts supported a finding of probable cause as to obstruction. *Nazario*, 103 F.4th at 228. The Fourth Circuit disagreed, reasoning:

> Lt. Nazario maintains that he was adhering to the safest course of action by keeping his hands outside the vehicle and remaining calm. . . . Nazario, however, did more than simply refuse to get out—he pulled the vehicle door shut with his arm after Crocker unlocked the driver-side door and began to open it. When that occurred . . . Nazario's conduct would indicate to a reasonable and prudent person that Nazario intended to actively and intentionally thwart the requests that he exit the vehicle. In sum, given the low bar of probable cause, the district court did not err in ruling that the Policemen possessed probable cause for the misdemeanor offense of obstruction of justice under Virginia law.

*Id.* at 229.

As identified by Lt. Nazario in his briefing on the instant Motions, this ruling by the Fourth Circuit fixes the origin of probable cause for obstruction at the moment Lt. Nazario moved his elbow to close the car door. *See* Pl. Opp'n 9, ECF No. 313. That moment was approximately one minute and ten seconds after Officer Gutierrez made his first threatening comment to Lt. Nazario, possibly stepping beyond the protections of qualified immunity. *See* Gutierrez BWC, at 3:05–4:16.

The moment that this probable cause arose, the Fourth Amendment clock restarts, and the tolerable duration of the stop becomes the length of time permissible to attend to the suspected crime of obstruction of justice. *See, e.g.*, *United States v. Vallavicencio*, 825 F. App'x 88, 103 (4th Cir. 2020) (holding that, once probable cause for a new crime arises, a police officer is

permitted to extend the stop as is reasonably required to attend to the new crime); *cf. Rodriguez*, 575 U.S. at 349 (tying the authority to prolong a seizure to whether the tasks tied to the suspected crime are—or reasonably should have been—completed). And, Officer Gutierrez could not have prolonged the seizure related to the suspected offense of obstruction with his purported death threats, since he made those comments before probable cause for obstruction arose.[7] Gutierrez BWC, at 3:08–4:15.

As a result of the foregoing, the unreasonable seizure question following the Fourth Circuit's opinion is, in fact, three-fold: (1) the question of whether, at the time the Officers pulled into the gas station, there existed only probable cause for the traffic infraction, or whether there existed probable cause for the traffic infraction *and* eluding; (2) the factual question of whether Officer Gutierrez's comments amounted to death threats, such that his conduct falls beyond the protections of qualified immunity; and (3) the question of whether, based on the probable cause determination, Officer Gutierrez's purported death threats prolonged the stop prior to the advent of probable cause for obstruction, such that, absent the threats, Lt. Nazario might have immediately complied.[8]

With these limitations in mind, the Court considers the issues presented in the Motions before it.

---

[7] Needless to say, in order for a police officer's conduct to have prolonged a seizure, it must occur during the course of that seizure. *Cf. Rodriguez*, 575 U.S. at 354–55 (considering whether unrelated inquiries made during a traffic stop impermissibly prolonged the seizure). Conduct prior to a particular seizure, at most, delays its start.

[8] Lt. Nazario has advanced a theory that he was only reluctant to comply because of Officer Gutierrez's threatening conduct, and he would have immediately stepped out of the car otherwise, thereby shortening the period of detention. Pl. Opp'n 14. Of course, should this matter proceed to trial, Lt. Nazario is free to assert any theory he deems appropriate regarding how the detention may have been shortened.

**B. The Remanded Issues are not Precluded**

As noted above, both parties argue that the doctrine of issue preclusion mandates summary judgment in their favor.  Gutierrez Mem. Supp. 8–10; Pl. Mem. Supp. 15–17.  After reciting the relevant law, the Court considers each argument in turn.

      1.    <u>Issue Preclusion Standard</u>

Based on the principle of *res judicata*, the doctrine of "issue preclusion" (also known as "collateral estoppel") "bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties."  18 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4402 (3d ed. 2002).  The Fourth Circuit has articulated five elements that must be satisfied in order for an issue to be precluded:

> (1) the issue is identical to the one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) determination of the issue was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue had a full and fair opportunity to litigate the issue in the prior proceeding.

*Davis Vision v. Md. Optometric Ass'n*, 187 F. App'x 299, 302 (4th Cir. 2006).  The first four factors are legal questions reviewed *de novo*, while the fifth is a matter of propriety committed to the Court's discretion.  *Sandberg v. Va. Bankshares*, 979 F.2d 332, 344 (4th Cir. 1992), *opinion vacated on unopposed motion by appellees*, 1993 WL 524680 (4th Cir. 1993); *see also PenneCom B.V. v. Merrill Lynch*, 372 F.3d 488, 492–93 (2d Cir. 2004).  The party moving for a finding of issue preclusion bears the burden of demonstrating its applicability.  *Davis Vision*, 187 F. App'x at 302.  So long as the requisite elements are satisfied, "even if the second suit is for a different cause of action, the right, question, or fact once so determined must . . . be taken as conclusively established."  18 Wright & Miller § 4416.

2.    <u>Officer Gutierrez Fails to Establish that the Remanded Issues are Precluded</u>

In support of his Motion for Summary Judgment, Officer Gutierrez argues that the entirety of the Remanded Issues are precluded by the issues actually presented to the jury during the January 2023 trial.  Gutierrez Mem. Supp. 8–12.  Specifically, he argues that the Remanded Issues were already contemplated by the jury in conjunction with Lt. Nazario's false imprisonment claim. *Id.* at 8–9.  Alternatively, Officer Gutierrez argues that the jury's damages award on Lt. Nazario's assault claim against him means that Lt. Nazario has already recovered for any possible injury within the Remanded Issues.  *Id.* at 10–12.

Lt. Nazario, of course, disagrees, arguing that the false imprisonment issue "incorporated and rested on" the Court's probable cause determination, which was partially voided by the Fourth Circuit.  Pl. Opp'n 8–10.  Next, Lt. Nazario argues that, even if issue preclusion technically applies to the Remanded Issues, he did not "have a full and fair opportunity to litigate" whether the threats prolonged the Officers' seizure of Lt. Nazario.  *Id.* at 10–11.  Thus, he contends that the Court should not find the Remanded Issues to be precluded.  Finally, Lt. Nazario argues that the damages awarded by the jury do not preclude further litigation and, potentially, an additional damages award.  *Id.* at 11–13.

The Court largely agrees with Lt. Nazario.  Because the Fourth Circuit vacated this Court's probable cause finding as to eluding, the false imprisonment issue presented to the jury is factually and legally distinct from that which now remains.[9]  The Court also agrees that the previously awarded compensatory damages do not preclude further litigation.  However, the Court does find

---

[9] Even though the false imprisonment issue presented to the jury partly relied on the Court's subsequently vacated probable cause finding, Plaintiff's false imprisonment claim is not open for relitigation.  In fact, the Fourth Circuit expressly declined to reverse and remand that issue.  *Nazario*, 103 F.4th at 238.

that, should a future jury find that the Officers had probable cause for eluding, liability as to the Remanded Issues *will* be precluded by the previous false imprisonment verdict.

> a.  **Because the Fourth Circuit Partly Reversed this Court's Probable Cause Finding as to Eluding, the Remanded Issues are not Identical to Those Previously Litigated**

To demonstrate that the Remanded Issues are precluded by the jury's previous findings, Officer Gutierrez bears the burden to satisfy five elements:  (1) the identical nature of the Remanded Issues and a previously litigated issue; (2) that the Remanded Issues were actually determined in the prior proceeding; (3) that the previously litigated issue was critical to the judgment in the prior proceeding; (4) that the previous issue was decided by a final and valid judgment; and (5) that the party to be foreclosed—here, Lt. Nazario—had a "full and fair opportunity to litigate the issue in the prior proceeding." *Davis Vision*, 187 F. App'x at 302.  The Court finds that Officer Gutierrez has satisfied all but the first element.

First, Officer Gutierrez must demonstrate that the remanded issue is identical to one previously litigated—here, the false imprisonment issue.  *Id.*  This is where Officer Gutierrez's argument rises and falls.  In large part, Officer Gutierrez is correct.  As described *supra* Part I.B.2, the jury was instructed on Lt. Nazario's false imprisonment claim as follows:

> If a law enforcement officer extends the duration of an otherwise legal traffic stop beyond what is reasonably necessary to complete the mission of a traffic stop, even if for just a minimal amount of time, this becomes an intentional restriction of the person's freedom of movement without legal right.  The mission of a traffic stop is to address the traffic violation that warranted the stop.

Jury Instr. No. 34, ECF No. 240.  This is functionally indistinguishable from the standard that governs Lt. Nazario's unreasonable seizure claim:

> A seizure for a traffic violation justifies a police investigation of that violation. . . . [T]he tolerable duration of police inquiries is determined by the seizure's mission— to address the traffic violation that warranted the stop, and attend to related safety concerns.  Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

*Rodriguez*, 575 U.S. at 353–57 (rejecting the Government's contention that an officer may extend a stop without cause so long as the extension is only for an "incremental" period of time), *cited by United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017) ("The Supreme Court recently has clarified that extending a stop by even a *de minimis* length of time violates the Fourth Amendment.").  As such, the jury did indeed consider whether the Officers extended the detention of Lt. Nazario beyond the stop's mission—by virtue of Officer Gutierrez's purported death threats[10] or otherwise. The jury answered in the negative.  *See* Jury Verdict, ECF No. 238.

However, as also noted above, the Fourth Circuit's opinion upset the Court's finding—and resulting jury instruction—regarding what, precisely, the "mission" of the stop was. *Nazario*, 103 F.4th at 227–28.  The jury was told that the mission of the stop was, at the least, to address the possible traffic infraction *and* to address the possible offense of eluding.  Jury Instr. No. 26. Following the Fourth Circuit's opinion, the Court is unable to rule, as a matter of law, that the Officers had probable cause for eluding.  *See Nazario*, 103 F.4th at 227–28.  That matter is now for a jury to decide.  *Supra* Part III.A.  Thus, because the Fourth Circuit vacated this Court's decision on the contours of the Officers' mission, the Remanded Issue presents two new factual questions.  First, a jury must decide whether there indeed existed probable cause for eluding.  If a jury decides that there was only probable cause for the traffic infraction, an entirely new question presents itself:  did Officer Gutierrez, by his words and the aiming of his firearm, prolong the stop beyond what was necessary to *attend to the suspected traffic infraction alone*?

---

[10]  Even though the Court granted Officer Gutierrez immunity as to the unreasonable seizure claim for his threats and aiming of a firearm, that immunity did not extend to Lt. Nazario's state law claims, as federal qualified immunity does not apply to Virginia intentional tort claims. *Viers v. Baker*, 841 S.E.2d 857, 861, 861 n.3 (Va. 2020) (holding that federal immunity did not apply because the plaintiff did not advance any federal claims) ("[Q]ualified immunity is . . . a federal immunity doctrine and does not apply to state tort claims").  Thus, the jury was free to consider the threats in their deliberation on the false imprisonment claim.  In fact, Lt. Nazario's counsel expressly invited the jury to do as much.  Trial Tr. at 1034, ECF No. 283 ("The inconsistent commands, . . . the threats of riding the lightning and telling him he should be afraid to get out of the vehicle, . . . . All of these unreasonable actions, unreasonably prolonged the traffic stop.").

If a jury decides, however, that there *was* probable cause for eluding, the resulting question is identical to that which the jury already decided:  did Officer Gutierrez, by his words and the aiming of his firearm, prolong the stop beyond what was necessary to attend to the traffic infraction *and* eluding?  *See* Jury Instr. Nos. 26, 34.  The original jury decided that Officer Gutierrez did not. Jury Verdict 7.

Although the Court's analysis could end with this determination that the first issue preclusion element is not satisfied, the Court finds value in articulating how the remainder of the issue preclusion elements are met, given that a jury may yet find that probable supported eluding, which would then reopen this argument for Officer Gutierrez.

The fact that the jury rejected Lt. Nazario's false imprisonment claim readily establishes the presence of the second, third, and fourth elements.  As to the second element, the false imprisonment issue was clearly "actually determined" because the jury was instructed on the issue and rejected Lt. Nazario's theory and claim.  *See Davis Vision*, 187 F. App'x at 302.  As to third element, the issue was "critical and necessary to the judgment in the prior proceeding" because Lt. Nazario's false imprisonment claim made up the entirety of one the claims—Count Seven— presented to the jury.  *Id.*  The jury's rejection of that claim necessarily shaped the nature of its verdict.  Thus, the false imprisonment claim was plainly critical to the previous judgment.  Fourth and finally, the issue was certainly disposed of by way of a final and valid judgment, since the Fourth Circuit did not upset the jury's judgment on the false imprisonment claim.  *Nazario*, 103 F.4th at 238 (declining to reverse jury's false imprisonment verdict).

The Court also finds that the fifth element is satisfied.  As described *supra*, the fifth element of issue preclusion—whether "the party to be foreclosed" by the application of the issue preclusion doctrine had "a full and fair opportunity to litigate the issue in the prior proceeding"—is a matter

committed to this Court's discretion.  *Sandberg*, 979 F.2d at 344; *PenneCom B.V.*, 372 F.3d at 492–93.  Nevertheless, a high level of discretion is unnecessary here; it is plain to the Court that Lt. Nazario was afforded a "full and fair opportunity" to argue that Officer Gutierrez's threats extended the stop, since he argued precisely this to the jury.  Trial Tr. at 1034, ECF No. 283 ("The very real promise of lethal force led Lieutenant Nazario to react the way he did.  The inconsistent commands, . . . the threats of riding the lightning and telling him he should be afraid to get out of the vehicle, . . . . All of these unreasonable actions, unreasonably prolonged the traffic stop.").

Because each issue preclusion element must be satisfied in order to apply the doctrine and the first element is not satisfied at this juncture, the Court must deny Officer Gutierrez's request for summary judgment based on issue preclusion.  However, should a future jury find that the Officers had probable cause as to eluding at the time of the traffic stop, all remaining issues will be precluded pursuant to the foregoing analysis.

        b.      *Mere Risk of Duplicative Damages is not an Available Basis for Issue Preclusion*

Next, Officer Gutierrez argues that the Court should prevent future litigation of the Remanded Issues because there is a high risk that any compensatory damages would be duplicative of the damages already awarded to Lt. Nazario.  Gutierrez Mem. Supp. 10–12.  In response, Lt. Nazario asserts that a mere risk of duplicative damages does not preclude further litigation as to liability.  Pl. Opp'n 11–13.  Again, the Court agrees with Lt. Nazario.

Officer Gutierrez is correct that, as a matter of law, a litigant may not be doubly compensated for the same conduct, even across causes of action.  *Transam. Occidental Life Ins. Co. v. Sanders*, 91 F.3d 134 (Table) (4th Cir. 1996).  Similarly, a defendant may not be doubly punished *vis-à-vis* punitive damages for the same conduct.  *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003).

However, as Lt. Nazario identifies, the mere risk of duplicative damages does not provide a proper basis for the application of the issue preclusion doctrine. Moreover, the proper procedural mechanism for addressing duplicative damages is by filing a posttrial motion, rather than a request for a pretrial judgment as a matter of law, as Officer Gutierrez here asks. *See, e.g.*, *Hair Club for Men, LLC v. Ehson*, 2016 WL 6780310, at *2 (E.D. Va. Nov. 14, 2016) (reducing duplicative compensatory damages on a Rule 59 motion).

Based on the foregoing, summary judgment in favor Officer Gutierrez on the basis of issue preclusion will be denied.

        3.    <u>Lt. Nazario also Fails to Establish that the Remanded Issues are Precluded</u>

For his part, Lt. Nazario argues that, under the doctrine of issue preclusion, the jury's previous verdict finding Officer Gutierrez liable for common law assault requires judgment as a matter of law for Lt. Nazario as to his claim of unreasonable seizure. Pl. Mem. Supp. 15–19. In response, Officer Gutierrez argues that the doctrine of issue preclusion does not apply as Lt. Nazario asserts, since the assault claim does not necessarily mean that Officer Gutierrez *extended* the stop. Gutierrez Opp'n 8.

Here, the Court agrees with Officer Gutierrez. As described above, the critical requirement of the issue preclusion doctrine is that the two issues—one previously litigated, one newly presented—be literally identical. 18 Wright & Miller § 4417; *accord Davis Vision*, 187 F. App'x at 302. Lt. Nazario argues that the verdict rendered against Officer Gutierrez on Plaintiff's assault claim dictates a finding that, as a matter of law, the seizure of Lt. Nazario was unreasonable. Pl. Mem. Supp. 15–17. However, as the Court has described in detail, the entire seizure of Lt. Nazario is not presently before the Court; rather, the only relevant question (for this aspect of the analysis)

is whether Lt. Nazario's detention was measurably extended by Officer Gutierrez's threats, prior to the advent of probable cause for obstruction. *See supra* Part III.A.

This issue bears little resemblance to the assault question that was presented to the jury. *See* Jury Instr. No. 43. Specifically, the jury was instructed that it could return a verdict for Lt. Nazario as to his assault claim against Officer Gutierrez if it found one or more of the following by a preponderance of the evidence:

1.  That Defendant Gutierrez used unreasonable force while lawfully arresting Plaintiff, but did not necessarily physically touch Plaintiff when doing so;
2.  That Defendant Gutierrez used force in the course of an unlawful arrest of Plaintiff, but this force did not necessarily physically touch Plaintiff;
3.  That Defendant Gutierrez otherwise intentionally threatened Plaintiff with some act that put Plaintiff in reasonable fear of imminent physical injury during the traffic stop, and the threatened act was not a reasonable use of force; [or]
4.  That Defendant Gutierrez aided, abetted, counseled, or encouraged Defendant Crocker to commit an assault on Plaintiff.

*Id.* By virtue of finding Officer Gutierrez liable for assault, the jury found by a preponderance of the evidence that at least one of the above was true. None of these possible findings, however, directly relates to the *length* of the detention, which is the ultimate question implicated by the Remanded Issues. Thus, the doctrine of issue preclusion does not apply, and the jury's previous verdict on Lt. Nazario's assault claim cannot preclude further litigation in this matter.

**C.    Neither Party Otherwise Demonstrates Entitlement to Judgment as a Matter of Law**

Finally, both parties advance traditional summary judgment arguments; that is, in the light most favorable to the opposing party, the facts are such that they are entitled to judgment as a matter of law. The Court considers both parties' arguments in turn, below.

1.  <u>An Issue of Fact Exists as to Whether Officer Gutierrez Extended the Stop by Making Threats</u>

Officer Gutierrez argues that, even in the light most favorable to Lt. Nazario, Officer Gutierrez did not violate Lt. Nazario's rights when he made comments that could be construed as

death threats, because "the mission was incomplete and could not reasonably have been complete when Officer Gutierrez issued the relevant remarks." Gutierrez Mem. Supp. 13–14. Thus, due to the "in progress" nature of the stop, *id.*, the purported death threats could not have measurably extended the detention. In response, Lt. Nazario argues that, as a factual matter, Officer Gutierrez's threats did measurably extend the stop because, absent Officer Gutierrez's threats and use of a firearm, Lt. Nazario would have immediately complied. Pl. Opp'n at 14.

To resolve Officer Gutierrez's argument, the Court must determine whether the undisputed facts—when construed in the light most favorable to Lt. Nazario—demonstrate that Officer Gutierrez's threats, combined with his use of a firearm, measurably extended the detention beyond the mission of the stop. The Court finds that the Fourth Circuit's reversal precludes the Court from deciding this question in Officer Gutierrez's favor. Moreover, the Court cannot answer this question without resolving factual issues reserved for the jury. Thus, it will deny Officer Gutierrez's Motion for Summary Judgment. *Anderson*, 477 U.S. at 247–48.

As the Court has previously explained, *supra* Part III.A., whether Officer Gutierrez measurably extended the stop beyond the "mission" thereof necessarily relies on what the "mission" of the stop was. *Rodriguez*, 575 U.S. at 353–57. The Court decided this question on Officer Gutierrez's first Motion for Summary Judgment, finding that the undisputed facts, construed in the light most favorable to Lt. Nazario, demonstrated that the "mission" of the stop was to address a suspected traffic infraction as well as a suspected offense of eluding. First Summ. J. Op. 7–8, 10–11. The Fourth Circuit reversed this conclusion, holding that the pretrial undisputed facts, viewed in the light most favorable to Lt. Nazario, did not support a probable cause finding as to eluding. *Nazario*, 103 F.4th at 227. This holding leaves the question of probable cause as to

eluding open to a future jury.  *See supra* n.5.  With such a jury question remaining, Officer Gutierrez is not entitled to judgment as a matter of law on this issue.

Even if the Court were able to determine the precise mission of the stop as a matter of law, the remainder of the matter rests on issues of credibility, which is a province reserved for a jury. After determining the probable cause apparent to the Officers at the time they pulled into the gas station, Lt. Nazario's claim of unreasonable seizure next requires a determination as to whether Officer Gutierrez's threats factually prolonged the seizure beyond what was required to complete that mission.  *See Rodriguez*, 575 U.S. at 354.

Officer Gutierrez asserts that the undisputed facts demonstrate that his comments did not delay the detention because Lt. Nazario's own actions extended the stop, by way of his refusal to comply with the Officers' commands.  Gutierrez Mem. Supp. 14; *see also* Gutierrez Opp'n 6 (contending that Lt. Nazario would have remained in the vehicle even if Officer Gutierrez had not made any threats, given that Lt. Nazario "adamantly inform[ed] the Officers he is not getting out of the Vehicle" (citing Gutierrez SUF ¶ 31, ECF No. 316)).  Lt. Nazario rebuts this contention and asserts that, absent Officer Gutierrez's threats—which, in assessing Officer Gutierrez's Motion for Summary Judgment, the Court must construe as death threats, *see Nazario*, 103 F.4th at 232 n.10— he would have immediately complied.  Pl. Opp'n 14; *see also* Nazario SUF ¶ 31, ECF No. 306 ("Had Gutierrez holstered his weapon, and refrained from threatening Lt. Nazario . . . Lt. Nazario would have been more than willing to exit his vehicle.").  Whether Lt. Nazario would have complied is thus a disputed factual question that rests on Lt. Nazario's credibility—a matter traditionally reserved for the jury.  *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004) ("[T]he court . . . may not make credibility determinations or weigh the evidence.").  As such,

Officer Gutierrez has failed to establish that *undisputed* facts demonstrate he is entitled to judgment as a matter of law, and the Court will deny his Motion for Summary Judgment.

 2. Lt. Nazario is Likewise not Entitled to Judgment as a Matter of Law

Lt. Nazario also argues that the undisputed facts demonstrate that he is entitled to judgment as a matter of law. In support, he makes a two-part argument. First, he argues that, at the time the Officers pulled into the gas station, the undisputed facts demonstrate that they *only* had probable cause as to eluding. Pl. Mem. Supp. 20. Second, he argues that, based on that limited cause, the undisputed facts also demonstrate that, absent Officer Gutierrez's threats, Lt. Nazario would have immediately complied, therefore shortening the detention. *Id.* at 21–23.

Officer Gutierrez does not address Lt. Nazario's argument regarding probable cause in his Opposition brief.[11] *See generally* Gutierrez Opp'n. Officer Gutierrez does, however, contend that Lt. Nazario demonstrated his intent to remain in the vehicle even prior to Officer Gutierrez's threats. Gutierrez SUF ¶ 31, ECF No. 316. Thus, Officer Gutierrez argues that his threats could not have been the driving force behind Lt. Nazario's reluctance to comply. Gutierrez Opp'n 11. As set forth below, the Court finds that the Fourth Circuit's decision does not foreclose the question of probable cause when considered in the light most favorable to *Officer Gutierrez*. Moreover, genuine issues of fact exist with respect to the duration of the stop and the cause(s) thereof. Accordingly, the Court is unable to grant summary judgment to Lt. Nazario, either.

---

[11] In support of his own Motion for Summary Judgment, however, Officer Gutierrez asserts that the traffic stop was lawful at its inception, and that Officer Gutierrez's conduct did not extend the length of the stop beyond what was necessary to complete the mission, whatever the mission may be. Gutierrez Mem. Supp. 13–14. Based on this argument, the Court does not find that Officer Gutierrez has waived or conceded the issue through his Opposition brief's non-response.

        a.     *In the Light Most Favorable to Officer Gutierrez, Probable Cause Existed as to Eluding*

The Court begins its analysis with Lt. Nazario's argument that, in the light most favorable to Officer Gutierrez, the Officers lacked probable cause as to eluding. Critically, this question is distinct from that considered by the Fourth Circuit as to eluding. On appeal, the question of probable cause arose from the Court's ruling on Officer Gutierrez's initial Motion for Summary Judgement and therefore required that the Fourth Circuit consider whether, in the light most favorable to *Lt. Nazario*, the Officers had probable cause as to eluding. *Nazario*, 103 F.4th at 227 ("[I]n the light most favorable to Lt. Nazario . . . we are unable to say that a prudent person would believe that Nazario committed the misdemeanor offense of eluding under Virginia law."). As such, the instant question—whether the undisputed facts, construed in the light most favorable to *Officer Gutierrez*, demonstrate that there was probable cause as to eluding—remains open after the Fourth Circuit's opinion. *See id.* And based on the record and the present procedural posture, the Court cannot agree with Plaintiff that the undisputed facts, when construed this time in the light most favorable to Officer Gutierrez, demonstrate that the Officers *only* had probable cause as to a traffic infraction and lacked probable cause as to eluding.

The relevant Virginia statute is entitled "Disregarding Signal by Law-Enforcement Officer to Stop," Va. Code Ann. § 46.2-817, and is colloquially known as "eluding." That statute provides:

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal or who attempts to escape or elude such law-enforcement officer whether on foot, in the vehicle, or by any other means, is guilty of a Class 2 misdemeanor.

Va. Code Ann. § 46.2-817(A).

The Virginia Court of Appeals has held that a person violates the statute whenever he "willfully and wantonly disregard[s] a law enforcement command to stop," such as ignoring a

police cruiser's lights and siren. *Walton v. Commonwealth*, 2025 WL 1034201, at \*5 (Va. Ct. App. Apr. 8, 2025). Notably, the fact that a person eventually yields to police does not undo the crime. *Id.*

Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 US 213, 238 (1983). "This fair probability is the kind of probability 'on which reasonable and prudent people, not legal technicians, act.'" *United States v. Manafort*, 323 F. Supp. 3d 795, 801–02 (E.D. Va. 2018) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). At bottom, probable cause is a flexible, non-technical standard. *Taylor v. Farmer*, 13 F.3d 117, 121–22 (4th Cir. 1993). "Officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause." *Id.* Probable cause is often based on "common-sense conclusions about human behavior." *Gates*, 462 U.S. at 231–32.

Applying this standard to the undisputed facts construed in the light most favorable to Officer Gutierrez, the Court finds that there existed probable cause for eluding. Here, the undisputed relevant facts are straightforward: While driving, Lt. Nazario's vehicle was spotted by Officer Crocker, who believed that the vehicle did not have a properly displayed license plate. *Nazario*, 103 F.4th at 220. Thus, Officer Crocker activated his cruiser's overhead blue lights to initiate a traffic stop of the vehicle. *Id.* Lt. Nazario slowed his speed, but did not yield. *Id.* Since Lt. Nazario failed to yield, Officer Crocker activated his sirens and radioed dispatch that the driver was not stopping. Gutierrez SUF ¶ 5, ECF No. 304. Officer Gutierrez responded to the call, activated his own cruiser's lights and siren, and joined Officer Crocker in pursuing Lt. Nazario's vehicle. *Id.* ¶ 6. Approximately two minutes and ten seconds after Officer Crocker initiated the

stop—during which Lt. Nazario drove slightly over one mile—Lt. Nazario yielded and turned into a gas station.  Nazario SUF ¶ 24, ECF No. 306.

In the light most favorable to Officer Gutierrez, these facts create probable cause as to eluding.  In *Walton v. Commonwealth*, the Virginia Court of Appeals upheld a misdemeanor conviction under Va. Code Ann. § 46.2-817(A) based on similar facts.  2025 WL 1034201, at *5. There, the defendant argued that the Government had failed to establish that he "willfully and wantonly disregard[ed]" a police officer's signal to stop, "not[ing] that he did not accelerate away from the deputies, did not swerve or violate any traffic laws, and he drove a mere half mile before stopping at his home." *Id.*  Thus, the *Walton* defendant contended that "there was no pursuit and no evidence that his behavior was wanton." *Id.*  The Virginia Court of Appeals disagreed, finding it sufficient that, notwithstanding the police officer's use of sirens and lights, the defendant "continued to drive" half of a mile before stopping. *Id.*  On these facts, "a reasonable fact finder could conclude that [the defendant] willfully and wantonly disregarded a law enforcement command to stop and that he was guilty of violating Code § 46.2-817(A)." *Id.*

Here, like in *Walton*, Lt. Nazario continued to drive for a substantial distance[12] after Officer Crocker signaled him to pull over by way of activating his lights.  This, per the Virginia Court of Appeals, is sufficient grounds for a reasonable factfinder to conclude that Lt. Nazario was engaged in eluding under Va. Code Ann. § 46.2-817(A). *Id.*  It is immaterial that Lt. Nazario did not swerve or drive erratically, and it does not change the calculus that Lt. Nazario eventually pulled over. *Id.* As such, viewing the undisputed facts in the light most favorable to Officer Gutierrez, the Court finds that there was certainly "a fair probability" worth investigating that, at the time Officer

---

[12] Notably, Lt. Nazario continued to drive for an additional 0.6 miles beyond the distance driven by the defendant in *Walton*.  *Compare Walton*, 2025 WL 1034201, at *5 (0.5 miles), *with* Nazario SUF ¶ 24, ECF No. 306 (1.1 miles).

Gutierrez pulled into the gas station, Lt. Nazario had committed the crime of eluding. *Gates*, 462 U.S. at 238.

Thus, the Court rejects this aspect of Lt. Nazario's Motion for Summary Judgment. The extent of the probable cause that existed at the time the Officers pulled into the gas station will remain for a jury to decide.

> b.     *There Exists a Genuine Dispute of Material Fact as to Whether Officer Gutierrez's Threats Prolonged the Stop Beyond the Mission Thereof*

Finally, Lt. Nazario argues that the undisputed facts demonstrate that Officer Gutierrez's threats prolonged the stop beyond the mission thereof. Pl. Mem. Supp. 19–26. However, as the Court has described in great detail, whether Officer Gutierrez's threats prolonged the stop beyond the mission of the detention necessarily depends on what the mission of the stop was. And, as described above, *supra* Parts III.C.1, III.C.2.a, the undisputed facts, in conjunction with the Fourth Circuit's binding opinion, prevent the Court from deciding as a matter of law the precise scope of the probable cause that existed when the Officers pulled into the gas station. Thus, this is a matter to be decided by a jury in the future.

Moreover, even if the Court could find as a matter of law that the Officers lacked probable cause as to eluding,[13] the remainder of the unreasonable seizure determination again rests on an issue of credibility. Specifically, Lt. Nazario argues that Officer Gutierrez's threats factually prolonged the stop because, absent Officer Gutierrez's threats, he would have immediately complied. Pl.'s Mem. Supp 22 (citing Nazario SUF ¶ 31). Officer Gutierrez rebuts this contention by pointing to Lt. Nazario's pre-threat statement that he was "not getting out [of] the Vehicle." Gutierrez Opp'n 6 (challenging Plaintiff's characterization of the "undisputed" facts). And, of

---

[13] It is, of course, only lack of probable cause as to eluding that can open the door to a jury determination as to whose conduct extended the duration of the stop, if at all, given that an alternative probable cause finding implicates issue preclusion. *See supra* Part III.B.2.a.

course, a jury could make the credibility and/or factual determination that Officer Gutierrez's threats did not constitute death threats, in which instance Officer Gutierrez's conduct once again falls within the ambit of qualified immunity.

On his own Motion for Summary Judgment, Lt. Nazario's initial factual statements are "accepted as true." 10A Wright & Miller § 2727.1. This "accept[ance]," however, dissipates once the opposing party produces competent evidence to the contrary. *Id.* Here, by demonstrating the conflicting nature of Lt. Nazario's present assertions and his contemporaneous statements with respect to his intent to comply and exit his vehicle, Officer Gutierrez has rebutted the presumption of truth afforded to Lt. Nazario's contention. Thus, this issue rests on Lt. Nazario's credibility, which is a matter reserved for the jury to assess. Accordingly, Lt. Nazario is not entitled to judgment as a matter of law.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that various critical issues of fact remain, and so it will deny Officer Gutierrez's Motion for Summary Judgment and deny Lt. Nazario's Motion for Summary Judgment.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/

Roderick C. Young
United States District Judge

Date:  August 5, 2025
Richmond, Virginia