IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| CARON NAZARIO,<br>    Plaintiff,<br><br>    v.<br><br>JOE GUTIERREZ, *et al.*,<br>    Defendants. | )<br>)<br>)<br>)    Civil Action No. 2:21CV169 (RCY)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This is a civil rights action filed by Plaintiff Caron Nazario in the wake of a traffic stop initiated by Defendant police officers Joe Gutierrez and Daniel Crocker ("Defendants" or "Officers"). This matter is before the Court after partial reversal and remand by the Fourth Circuit and on Plaintiff's and Defendant Gutierrez's respective Motions *in Limine* (ECF Nos. 307, 309). The matters have been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J); Fed. R. Civ. P. 78. For the reasons described below, the Court will deny Lt. Nazario's Motion *in Limine* (ECF No. 307) and grant Officer Gutierrez's Motion *in Limine* (ECF No. 309).

**I. BACKGROUND**

**A. Factual Background**

On December 5, 2020, at approximately 6:34 p.m., Plaintiff Caron Nazario ("Plaintiff" or "Lt. Nazario"[1]) was driving through the Town of Windsor, Virginia, in his newly leased 2020 Chevrolet Tahoe. *Nazario v. Gutierrez*, 103 F.4th 213, 219 (4th Cir. 2024). The Tahoe's license

---

[1] "At the time of events underlying this [case], Lt. Nazario was a Second Lieutenant in the United States Army Medical Corps. He is of Latinx and African American descent. During the pendency of this litigation, he was promoted to First Lieutenant." *Nazario v. Gutierrez*, 103 F.4th 213, 219 n.1 (4th Cir. 2024).

plate was not affixed to the rear bumper but was instead taped inside the vehicle's tinted rear window, in the upper right corner. *Id.* at 219–20.

Officer Crocker observed the vehicle driving but could not see a license plate on the car, *id.* at 220, as required by Virginia law. Va. Code Ann. §§ 46.2-715, 716. At the time, Officer Crocker was still in training and under the supervision of Officer Gutierrez. *Nazario*, 103 F.4th at 220. Officer Crocker illuminated his blue overhead lights and initiated a traffic stop based on the suspected infraction. *Id.*

Lt. Nazario reduced his speed but did not pull over. *Id.* Because Lt. Nazario continued to drive, Officer Crocker initiated his sirens and radioed dispatch that the driver was not stopping. Gutierrez Stmt. Undisp. Facts ("Gutierrez SUF") ¶ 5, ECF No. 304. Officer Gutierrez responded to the call, activated his own blue lights and siren, and joined Officer Crocker in pursuing Lt. Nazario's vehicle. *Id.* ¶ 6. After failing to yield for more than a mile, Lt. Nazario turned into a gas station and stopped his car there. Nazario Stmt. Undisp. Facts ("Nazario SUF") ¶ 24, ECF No. 306.

Both Officers followed suit and pulled behind Lt. Nazario's vehicle. *Nazario*, 103 F.4th at 220. Officer Crocker radioed dispatch that he was conducting a "'felony traffic stop,' which is synonymous with a 'high risk traffic stop.'" Gutierrez SUF ¶ 7. Both Officers exited their cruisers with their weapons drawn and pointed at Lt. Nazario's vehicle. *Id.*; *Nazario*, 103 F.4th at 220. Officer Crocker immediately yelled at Lt. Nazario to roll his window down and show his hands. *Nazario*, 103 F.4th at 220–21. After a few seconds, Lt. Nazario complied, and held his hands outside of the driver's side window. *See id.*; Compl. Ex. 3 ("Gutierrez BWC"), at 2:04–2:10, ECF No. 1-2.[2] Seconds later, Officer Crocker commanded Lt. Nazario to open his door and step out of

---

[2] Officer Gutierrez's bodyworn camera footage is in the record several times over. *E.g.*, Compl. Ex. 3, ECF No. 1-2; Pl. Br. Supp. Mot. Part. Summ. J. Ex. 6, ECF No. 82-6. Lt. Nazario incorporates each prior filing into his Motion for Summary Judgment. Nazario SUF ¶ 3, ECF No. 306.

the vehicle. Gutierrez BWC, at 2:10–2:14. Lt. Nazario did not step out, and Officer Crocker continued to command him to do so. *Id.* at 2:14–2:25. After two additional commands by Officer Crocker, Officer Gutierrez joined in, commanding Lt. Nazario to "get out of the car, now!" *Id.* at 2:25–2:28. Still, Lt. Nazario did not comply. *Id.* The Officers slowly approached, guns still aimed at the vehicle, contradictorily commanding Lt. Nazario to keep his "hands outside the window" and to "get out of the car." *Id.* at 2:28–2:45. Lt. Nazario remained seated in his vehicle with his hands clasped outside the window, and asked, "what is going on?" *Id.* at 2:45.

The Officers commanded Lt. Nazario to step out of the vehicle several more times. *Id.* at 2:45–2:56. Lt. Nazario, visibly wearing his Army uniform, responded, "I'm serving this country, and this is how I'm treated?" *Id.* at 2:54–2:57. Officer Gutierrez continued to command Lt. Nazario to step out of the vehicle, and Lt. Nazario continued to ask what is going on. *Id.* at 2:57–3:08. With his gun still pointed at Lt. Nazario, Officer Gutierrez responded, "What's going on is you're fixin' to ride the lightning, son." *Id.* at 3:05–3:11. At this point, approximately ninety seconds had lapsed since the Officers had exited their vehicles. Officer Gutierrez holstered his firearm, drew his taser, and approached the driver's side window, where Lt. Nazario remained seated. *Id.* at 3:08–3:15.

For another minute and ten seconds, the Officers continued this back-and-forth with Lt. Nazario. Now within mere feet of Lt. Nazario's seat in the Tahoe, Officer Gutierrez commanded Lt. Nazario to get out of the vehicle several more times, after which Officer Crocker chimed in, "Sir, just get out of the car! Work with us and we'll talk to you—get out of the car!" *Id.* at 3:16–3:23. Officer Gutierrez commanded Lt. Nazario to "obey." *Id.* Lt. Nazario responded: "I'm honestly afraid to get out." *Id.* at 3:25–3:26. To that, Officer Gutierrez said, "Yeah, you should be." *Id.* at 3:26–3:31. Simultaneously, Officer Gutierrez pulled on the driver's side door, but found it to be locked. *Id.* After several tries, Officer Crocker reached into the vehicle and was

able to unlock and open the door. *Id.* at 3:30–4:15. Lt. Nazario, however, then used his elbow to re-close the door. *Id.* at 4:15–4:16.

Officer Gutierrez then pepper sprayed Lt. Nazario four times. *Nazario*, 103 F.4th at 222. When Lt. Nazario still made no effort to step out of the car, Officer Gutierrez opened the vehicle door. *Id.* Lt. Nazario slowly moved his hands to his seat belt, unbuckled, and turned his body to face the Officers. *Id.* Officer Gutierrez grabbed Lt. Nazario's arm and forced him to the ground. *Id.* The Officers ordered Lt. Nazario to lie on his stomach, which Lt. Nazario did, and the Officers handcuffed him. *Id.*

After Lt. Nazario was handcuffed, the Officers "cease[d] their shouting and [began] talking with [Lt.] Nazario." *Id.* Emergency medical personnel arrived to assist Lt. Nazario with any injuries and/or effects from the pepper spray; meanwhile, Lt. Nazario's personal information was processed by the Windsor Police Department. *Id.* at 223. "That effort revealed no warrants and a valid Virginia concealed carry permit." *Id.* The Officers searched Lt. Nazario's car and similarly found no evidence of criminality. *Id.* Eventually, the Officers uncuffed Lt. Nazario. *Id.* After his handcuffs were removed, Officer Gutierrez emphasized to Lt. Nazario that it is common for drivers to delay pulling over until they arrive at a well-lit location, such as the gas station. *Id.* at 223. Officer Gutierrez added that, "eighty percent of the time," those who do so are racial minorities. Compl. Ex. 5 ("Crocker BWC"), at 9:19–9:25, ECF No. 1-2.

**B. Relevant Procedural History**

    1.    <u>Pretrial Litigation</u>

        *a.*    *Complaint and Answer*

Lt. Nazario first filed his Complaint in this Court on April 2, 2021. Compl., ECF No. 1. Lt. Nazario advanced eight claims, each naming both Officer Gutierrez and Officer Crocker as defendants. *See generally id.* Counts One through Three alleged violations of Lt. Nazario's Fourth

Amendment rights by way of 42 U.S.C. § 1983. *Id.* ¶¶ 65–96. Count Four similarly invoked § 1983, but alleged violations of Lt. Nazario's First Amendment rights. *Id.* ¶¶ 97–104. Counts Five through Eight advanced claims under Virginia law for assault, *id.* ¶¶ 105–112, battery, *id.* ¶¶ 113–119, false imprisonment, *id.* ¶¶ 120–129, and illegal search, *id.* ¶¶ 130–140, respectively.

Officer Gutierrez filed his Answer & Affirmative Defenses to Plaintiff's Complaint ("Affirmative Defenses"), ECF No. 17, on May 14, 2021. Therein, he pled a number of affirmative defenses, including mistake, accident, negligence, and reasonableness. *Id.* ¶¶ 15–16.

    b.  *Motions for Summary Judgment*

On January 12, 2022, each party filed a Motion for Summary Judgment. Def. Daniel Crocker's Mot. Summ. J., ECF No. 77; Def. Joe Gutierrez's Mot. Summ. J., ECF No. 79; Pl.'s Mot. Part. Summ. J. on Liability & Qualified Immunity, ECF No. 81. The Court resolved the Motions by memorandum opinion on August 9, 2022. Mem. Op. ("First Summ. J. Op."), ECF No. 114. In relevant part, the Court found as follows:

First, the Court considered whether Officer Crocker had probable cause to initiate the traffic stop, and what evidence of criminality existed over the course of the interaction. *Id.* at 7–10. The Court found that the undisputed facts demonstrated that, at the time the Officers pulled into the gas station, there was probable cause that Lt. Nazario had committed two violations of Virginia law: (1) a violation of Va. Code Ann. §§ 46.2-715, 46.2-716 for failure to properly display license plates, a mere traffic infraction; and (2) a violation of Virginia Code Ann. § 46.2-817 for eluding, a misdemeanor. *Id.* at 7–8, 10–11. The Court also found that, during the Officers' interaction with Lt. Nazario, Lt. Nazario's conduct gave rise to probable cause for obstruction of justice and failure to obey, in violation of Virginia Code Ann. §§ 18.2-460(A), 18.2-464. *Id.* at 8–9.

Second, the Court considered whether qualified immunity[3] shielded the Officers from Lt. Nazario's unreasonable seizure claim. *Id.* at 9. As to the existence of a constitutional violation, the Court found that, in the light most favorable to Lieutenant Nazario, "the conflicting orders of both Officers, the aiming of firearms, and the purported death threats made by Defendant Gutierrez unreasonably prolonged the stop." *Id.* at 16. Thus, the Court found that Lt. Nazario "had properly alleged a constitutional violation." *Id.* Proceeding to the second step of the qualified immunity analysis, however, the Court found that the constitutional violation alleged by Lt. Nazario was not clearly established, i.e., that, at the time of the traffic stop, it would not have been clear to the Officers that their conduct was a violation of Lt. Nazario's rights. *Id.* at 17. Thus, the Court found that the Officers were protected from Lt. Nazario's unreasonable seizure claim by qualified immunity. *Id.*

Third, the Court awarded summary judgment to Lt. Nazario for both illegal search claims against Officer Crocker, finding that Officer Crocker was, as a matter of law, liable. *Id.* at 32. However, as to the same claims against Officer Gutierrez, the Court found that triable issues of fact remained. *Id.*

---

[3] On appeal, the Fourth Circuit later described the qualified immunity inquiry as follows:

> Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." In resolving whether to award qualified immunity at summary judgment, courts are to engage in a "two-pronged inquiry." The first prong of that inquiry must determine whether — in a light most favorable to the injured party — "the officer's conduct violated a constitutional right." The second prong asks whether the right at issue in the first prong was "clearly established at the time" of the contested action. Accordingly, a court may award qualified immunity to an official if either (1) there is no violation of a constitutional right, or (2) the constitutional right was not clearly established.

*Nazario*, 103 F.4th at 230 (citation modified).

    2.    <u>The Trial</u>

The matter proceeded to trial on January 9, 2023. ECF No. 230. Pursuant to the Court's previous rulings, the jury was instructed that, "at the time that Defendant Crocker initiated the traffic stop of Caron Nazario, he had probable cause to believe that Caron Nazario lacked a license plate and was eluding him." Jury Instr. No. 26, ECF No. 240. And, because the Court had found that the Officers were immune from the unreasonable seizure claim, it was not presented to the jury. *See generally* Jury Verdict, ECF No. 238.

The jury was asked to determine whether Officer Gutierrez was liable to Lt. Nazario on his claims of unconstitutional search and Virginia illegal search, and whether both Officers were liable on Plaintiff's common law claims of false imprisonment, assault, and battery. *See generally id.* The jury was also asked to determine the amount of compensatory and punitive damages appropriate for the claims summarily granted against Officer Crocker. *Id.* at 3, 6.

As to the false imprisonment claim, the jury was instructed:

> False imprisonment is an intentional restriction of a person's freedom of movement without legal right. . . . A lawful arrest is a legal right to restrain another's freedom of movement. . . . If a law enforcement officer extends the duration of an otherwise legal traffic stop beyond what is reasonably necessary to complete the mission of a traffic stop, even if for just a minimal amount of time, this becomes an intentional restriction of the person's freedom of movement without legal right. The mission of a traffic stop is to address the traffic violation that warranted the stop.

Jury Instr. Nos. 33–34.

On January 17, 2023, after a day and a half of deliberation, the jury returned a unanimous verdict. *See generally* Jury Verdict. As to Officer Crocker, the jury awarded Plaintiff no compensatory damages, $1,000.00 in punitive damages under the Virginia illegal search claim, and found for Officer Crocker on all remaining counts. *Id.* As to Defendant Gutierrez, the jury found that he was not liable for either search claim, battery, and false imprisonment. *See generally*

*id.* Officer Gutierrez was, however, found liable for assault, for which the jury issued $2,685 in compensatory damages. *Id.* at 10.

Lt. Nazario filed a Motion for New Trial, ECF No. 244, and a Motion to Alter Judgment, ECF No. 251. The Court denied the Motion for New Trial but granted the Motion to Alter Judgment and awarded nominal damages as to the Fourth Amendment and Virginia state law illegal search claims against Officer Crocker. Order, ECF No. 270; Am. Clerk's J., ECF No. 271.

3. <u>The Appeal</u>

On June 1, 2023, Lt. Nazario appealed the matter to the Fourth Circuit, Not. Appeal, ECF No. 272, principally disputing this Court's previous summary judgment determinations, described *supra* Part I.B.1, as well as the manner in which the Court instructed the jury, *see Nazario*, 103 F.4th at 225. On May 31, 2024, the Fourth Circuit issued a published opinion largely affirming this Court's previous decision, though reversing and remanding on two issues underpinning this Court's summary judgment analysis: (1) that, in viewing the facts in the light most to Lt. Nazario, there existed probable cause as to eluding at the time Lt. Nazario pulled into the gas station, *id.* at 227; and (2) that, in the light most favorable to Lt. Nazario, qualified immunity shielded Officer Gutierrez from Lt. Nazario's unreasonable seizure claim, *id.* at 231–33 ("Remanded Issues"). The Fourth Circuit did not reverse or remand as to any issues relating to Officer Crocker or the jury instructions. *See generally id.*

4. <u>Post-Appeal Litigation</u>

Following the Fourth Circuit's remand, the Court ordered the parties to file a joint status update with their positions regarding how the case should proceed. Order, ECF No. 297. The parties did so on August 22, 2024. Jt. Status Report, ECF No. 300. Therein, the parties advised the Court as to their desire to file a second round of Motions for Summary Judgment and previewed the arguments raised in the instant Motions. *Id.* at 3–4.

      *a.*    *Second Summary Judgment Opinion*

On September 3, 2024, the Court advised the remaining parties—Plaintiff and Defendant Gutierrez—that it would permit them to file second Motions for Summary Judgment as to the Remanded Issues. Order, ECF No. 302. On October 1, 2024, the parties filed the instant Motions and memoranda in support thereof. Def. Joe Gutierrez's Mot. Summ. J. ("Gutierrez Mot. Summ. J."), ECF No. 303; Def. Joe Gutierrez Mem. Supp. Mot. Summ. J. ("Gutierrez Mem. Supp."), ECF No. 304; Pl. Caron Nazario's 2d Mot. Part. Summ. J. ("Pl. Mot. Summ. J."), ECF No. 305; Pl. Caron Nazario's Br. Supp. 2d Mot. Part. Summ. J. ("Pl. Mem. Supp."), ECF No. 306.

The Court denied both Motions for Summary Judgment on August 5, 2025. Order, ECF No. 324. In an accompanying Memorandum Opinion, the Court clarified that, following the Fourth Circuit's remand, three issues remained to be decided by a jury:

> (1) the question of whether, at the time the Officers pulled into the gas station, there existed only probable cause for the traffic infraction, or whether there existed probable cause for the traffic infraction and eluding; (2) the factual question of whether Officer Gutierrez's comments amounted to death threats, such that his conduct falls beyond the protections of qualified immunity; and (3) the question of whether, based on the probable cause determination, Officer Gutierrez's purported death threats prolonged the stop prior to the advent of probable cause for obstruction, such that, absent the threats, Lt. Nazario might have immediately complied.

Mem. Op. 16, ECF No. 323.

      *b.*    *Instant Motions*

On October 1, 2024, both parties filed the instant Motions *in Limine* alongside accompanying memoranda. Pl.'s Mot. *in Limine*, ECF No. 307; Pl.'s Mot. *in Limine* Regarding Video Evid. ("Pl. Mem. Supp. MIL") ECF No. 308; Def. Joe Gutierrez's Mot. *in Limine* Exclude Contested Video Evid., ECF No. 309; Def. Gutierrez's Br. Supp. Mot. *in Limine* Exclude Contested Vid. Evid. ("Gutierrez Mem. Supp. MIL"), ECF No. 310. On October 14, 2024, Lt. Nazario filed his Opposition to Defendant Gutierrez's Motion *in Limine* to Exclude Contested

9

Video Evidence ("Plaintiff's Opposition"), ECF No. 314.  On October 15, 2024, Officer Gutierrez filed his Opposition to Plaintiff Caron Nazario's Motion *in Limine* Regarding the Video Evidence ("Guterriez Opposition"), ECF No. 315.  On October 21, 2024, both parties filed Replies in support of their own Motions *in Limine*.  Pl. Nazario's Reply Gutierrez's Opp'n Pl. Nazario Mot. *in Limine* ("Pl.'s Reply"), ECF No. 319; Def. Gutierrez's Reply Mem. Further Supp. Def.'s Mot. *in Limine* to Exclude Contested Video Evid. ("Gutierrez Reply"), ECF No. 320.

## II. LEGAL STANDARD

Generally, all relevant evidence is admissible.  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

## III. ANALYSIS

The traffic stop in this matter was filmed by Lt. Nazario's iPhone as well as both Officers body-worn cameras (collectively, "Video Footage").  *See* Pl.'s Mem. Supp. MIL 1, ECF No. 308.  The parties agree that the Video Footage, as a general matter, is relevant, and that the jury should be permitted to see the Video Footage starting from the moment that Officer Crocker initiated the stop of Lt. Nazario.  Jt. Status Report 2, ECF No. 300.  In the instant Motions, however, the parties identify two points of disagreement: (1) when the Video Footage should be cut off; and (2) the admissibility of a later portion of the Video Footage, showing Officer Gutierrez's comments that

minority drivers delay pulling over "all the time."[4] The Court considers both parties' arguments in turn.

### A.     The Six Seconds of Video Footage Contested by Lt. Nazario is Admissible

Lt. Nazario asks that the Court cut off the Video Footage six seconds prior to the advent of probable cause for obstruction, excluding the portion of the Video Footage that shows Officer Crocker attempting to unlock Lt. Nazario's driver's side door and Lt. Nazario re-closing the door with his elbow ("Contested Video Footage"). Pl.'s Mem. Supp. MIL 1–2. In support, Lt. Nazario argues that what is legally significant is Officer Gutierrez's conduct and threats, not Lt. Nazario's conduct as captured in the Contested Video Footage. *Id.* at 5. Thus, he argues that the Contested Video Footage does not tend to prove a fact of consequence. *Id.* In the alternative, Lt. Nazario asks the Court to find that the Contested Video Footage is inadmissible based on a substantial risk of confusing the jury. *Id.* at 6-7.

In the Joint Status Report, Officer Gutierrez agreed that the Video Footage should not be played beyond the advent of probable cause for obstruction, i.e., the moment that Lt. Nazario uses his elbow to close the driver's side door. Jt. Status Report 3, ECF No. 300. In response to Lt. Nazario's Motion *in Limine*, however, Officer Gutierrez argues that the jury should be permitted to view the Video Footage up to and including the moment that probable cause for obstruction of justice arises. Gutierrez Opp'n 1–2, ECF No. 315. In support, Officer Gutierrez argues that the Contested Video Footage is legally relevant to, at minimum, rebut allegations of malice. *Id.*

The Court agrees with Officer Gutierrez, albeit on different grounds. The jury will be permitted to see the entirety of the Video Footage that displays the portion of the detention at issue following the Fourth Circuit's remand, up to and including Lt. Nazario's obstructive conduct.[5]

---

[4] The Court will refer to these comments as the "Post-Incident Comments."

[5] The Court agrees with the parties, however, that the Video Footage should end when probable cause for obstruction arises—the moment that Lt. Nazario closes the door with his elbow—since, at that moment, a new Fourth

In order for evidence to be relevant, it need only have a tendency to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). As the Court has described at length in its previous opinion, Mem. Op. 16, the crux of the issue remanded by the Fourth Circuit is whether or not Officer Gutierrez's purported death threats prolonged the Officers' detention of Lt. Nazario, prior to the advent of probable cause for obstruction. The Contested Video Footage is relevant to determining that narrow issue for two reasons.

First, the Contested Video Footage will assist the jury in testing the veracity of Lt. Nazario's theory of compliance. In order to shoulder his ultimate burden at trial, Lt. Nazario has advanced a theory that, absent Officer Gutierrez's threats, Lt. Nazario would have complied with the Officers' demands, thereby shortening the encounter. *Id.* at 16 n. 8. The Contested Video Footage bears directly on that theory, since it will permit the jury to compare Lt. Nazario's actual conduct, tone, and body language against the expected conduct, tone, and body of language of someone who may have complied. The direct relationship between the Contested Video Footage and Lt. Nazario's theory of Officer Gutierrez's liability alone dictates a finding that the Contested Video Footage has a significant tendency to prove a fact of consequence.

Second, the Contested Video Footage is relevant to determining whether the traffic stop continued beyond the duration tolerated by the Fourth Amendment. As the Court has previously emphasized, the crux of the issue remanded by the Fourth Circuit is one of *timeliness*: did the Officers' detention of Lt. Nazario, prior to the advent of probable cause for obstruction, *take more time* than necessary? *See* Mem. Op. 16, 24. In order to determine the answer to this question, it stands to reason that the jury should be permitted to view the entire footage of the particular Fourth

---

Amendment encounter began. Jt. Status Report 3. That new encounter is not presently before the Court, and will not be before the jury. Mem. Op. 16. However, the seconds before that moment are admissible, as the Court describes *infra*.

12

Amendment seizure before the Court, which begins when Officer Crocker initiated the traffic stop, and ends when probable cause arose for obstruction of justice. In doing so, the jury will be able to appreciate the actual duration of the stop at issue and compare that duration to that tolerable under the Fourth Amendment, given the task of the mission. *Id.* at. 12. Thus, the Court finds that the Contested Video Footage is relevant.

The Court also finds that the Contested Video Footage is admissible under Federal Rule of Evidence 403. Lt. Nazario argues that the content of the Contested Video Footage presents a "substantial danger of luring the factfinder into deciding that Lt. Nazario was at fault by virtue of these actions, or that he deserved or brought on himself Officer Gutierrez's previous conduct." Pl.'s Mem. Supp. MIL 8. In response, Officer Gutierrez argues that there is no risk of prejudice, and, in fact, there is a risk of confusing the jury as to the issue before it if these six seconds are excluded. Gutierrez Opp'n 3.

Even when evidence is technically relevant, Federal Rule of Evidence 403 requires courts to exclude that same evidence if it presents a risk of prejudice that substantially outweighs its probative value. Fed. R. Evid. 403. Rule 403 is often characterized as a balancing test: the Court must identify the probative value conferred by the evidence, identify its attending risk, and determine whether that risk *substantially* outweighs its value. *E.g.*, *United States v. Stamper*, 106. F. App'x 833, 835 (4th Cir. 2004).

Any limited risk presented by the Contested Video Footage does not outweigh the Footage's probative value. As the Court described above, the Contested Video Footage is highly probative of the merits of Lt. Nazario's claim against Defendant Gutierrez. The Contested Video Footage bears directly on Lt. Nazario's theory of liability and will aid the jury's understanding of the duration of the stop. This probative value weighs heavily for admission in the context of the Rule 403 test.

13

The limited risk of prejudice posed by the Contested Video Footage likewise weighs in favor of admission. Lt. Nazario argues that the six seconds of additional Video Footage risks undue prejudice, since the Contested Video Footage depicts his obstructive conduct. Nazario Mem. Sup. MIL 8. Lt. Nazario posits that this conduct might "lure" the jury to conclude that Lt. Nazario "brought [Defendant Gutierrez's threats] upon himself." *Id.* The Court finds Lt. Nazario's argument unconvincing. First, the risk identified by Lt. Nazario is significantly mitigated by the fact that Lt. Nazario's obstructive conduct occurred after Officer Gutierrez's threats. Notwithstanding Lt. Nazario's argument to the contrary, *subsequent* conduct cannot be logically considered the cause of a *previous* threat. Thus, the Court is hard pressed to say that a jury might be "lured" to find that Officer Gutierrez's preceding conduct was caused in any manner by Lt. Nazario's later obstruction. As such, the risk identified by Lt. Nazario is incredibly limited.

Moreover, as identified by Officer Gutierrez, Gutierrez Opp'n 3, Lt. Nazario's requested cutoff time itself presents a significant risk of confusion, since the jury could not fully appreciate the duration of the stop. If the Court were to terminate the Video Footage prior to the advent of probable cause for obstruction, the jury may be led to believe that the traffic stop was shorter than it actually was. Given the narrow nature of the issue that will be presented before the jury, *see* Mem. Op. 16, these six seconds may make a difference.

As a result of the foregoing, the Court finds that the contested Video Footage is relevant and does not present an overwhelming risk of unfair prejudice. As such, the Court will deny Lt. Nazario's Motion *in Limine*.

**B.     Officer Gutierrez's Post-Incident Statements are Technically Relevant, but Pose an Overwhelming Risk of Confusion and Prejudice**

In his own Motion *in Limine*, Officer Gutierrez asks the Court to exclude all mention and evidence of his post-incident statements regarding, *inter alia*, that citizens wait to pull over "all the time." Gutierrez Mem. Supp. MIL 1, ECF No. 310. In support, Defendant Gutierrez argues

that evidence of his post-incident statements is relevant to neither his liability nor damages as to the particular right at issue: whether Officer Gutierrez's threats extended the Officers' stop beyond the task of the mission. *Id.* at 4. In response, Lt. Nazario argues that the post-incident statements are relevant to determining Officer Gutierrez's malice and state of mind and are therefore relevant to the jury's assessment of Lt. Nazario's punitive damages claim as well as Lt. Nazario's affirmative defenses. Pl.'s Opp'n 5–8, ECF No. 314.

The Court finds that the post-incident statements are technically relevant but present a significant and overwhelming risk of confusing the jury. As such, the Court will exclude evidence of the same under Federal Rules of Evidence 401 and 403.

First, the Court clarifies the minimally probative value of the post-incident statements. Lt. Nazario argues that the statements are relevant to demonstrate that Officer Gutierrez acted with malice. Pl.'s Opp'n 6. Specifically, Lt. Nazario argues that the post-incident statements indicate that Officer Gutierrez "understood, when he stopped at the [gas station] to assault Lt. Nazario, that he was not dealing with anything but a concerned minority behaving in a way that is typical for concerned minorities," and therefore, he acted with "reckless and callous disregard for [Lt. Nazario's] rights." *Id.*

In the context of § 1983 litigation, a jury may issue an award of punitive damages against a defendant if it finds that the defendant's violation of the particular right at issue was "motivated by evil motive or intent, or it involves reckless or callous indifference to [the plaintiff's] rights." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Thus, evidence of a defendant's state of mind is generally relevant to demonstrate the propriety of punitive damages. *See id.*

However, punitive damages are only appropriate when a § 1983 plaintiff demonstrates that a defendant acted with requisite *mens rea* as to the *particular right at issue*; it is insufficient to simply demonstrate that a defendant harbored ill will as to the plaintiff's rights generally, since

15

punitive damages are only appropriate to punish the conduct that made defendant liable in the first place. *Id.* at 54.

Here, as the Court has continuously stressed, the only issue to be considered by a jury in any future trial is whether Officer Gutierrez's threats prolonged the stop. Mem. Op 12, 16. It may not consider, for instance, whether the level of force employed by the Officers was warranted. *See id.* The fact that Officer Gutierrez may have understood that Lt. Nazario was not intending to elude, but only to protect his physical safety, is certainly relevant as to Officer Gutierrez's state of mind regarding the level of force employed. The Officers' use of force, however, is not before the Court, nor will it be before a jury. Instead, the only relevant aspect of Officer Gutierrez's state of mind is his knowledge as to the risk that his threats would prolong the stop. The post-incident statements bear only a tenuous relationship to that matter.

The post-incident statements bear a similarly tenuous relationship to Officer Gutierrez's affirmative defenses. In his Answer, Officer Gutierrez advanced affirmative defenses of an innocent state of mind, including mistake, accident, and negligence. Affirmative Defenses ¶ 15, ECF No. 17. However, given the limited issue remanded by the Fourth Circuit, Officer Gutierrez will only be permitted to advance these defenses as they relate to that limited issue, i.e., whether Officer Gutierrez was mistaken, behaved accidentally, or was merely negligent as to the risk that his threats would extend the stop beyond that tolerated by the Fourth Amendment. Because the post-incident statements only tenuously relate to Officer Gutierrez's state of mind as to this issue, as outlined *supra*, the statements likewise have a limited probative value as to Officer Gutierrez's affirmative defenses.

Admittedly, the statements may be slightly probative as to Officer Gutierrez's motivation in making the threats generally, since they demonstrate his general callousness as to Lt. Nazario's broader constitutional rights. The statements could be used to circumstantially demonstrate

16

Officer Gutierrez's purported ill will as to the particular right at issue. Even this limited usefulness is sufficient to demonstrate that the statements have a "tendency" to make a fact of significance more or less likely. Fed. R. Evid. 401. Thus, given the low bar of relevance instituted by Federal Rule of Evidence 401, the Court finds that the post-incident statements are, as a technical matter, relevant.

Notwithstanding their technical relevance, the Court finds that the post-incident statements' probative value is substantially outweighed by the attending risk of confusion and prejudice. As described above, the Rule 403 test requires the Court to balance the probative value conferred by a piece of proposed evidence against the risk of its prejudice. *See* Fed. R. Evid. 403. The risk of prejudice is determined by assessing the attending danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* The Court has already concluded that the post-incident statements have an incredibly limited probative value; unlike the Contested Video Footage, the statements do not directly go to a fact of consequence. Further, unlike the Contested Video Footage, the post-incident statements present substantial risk of confusion and the threat of unfair prejudice.

The post-incident statements pose a risk of unfair prejudice because, as noted by the Court *supra*, they tend to demonstrate a malicious motivation by Officer Gutierrez for actions outside the scope of the issues before the jury. Officer Gutierrez's post-incident comments demonstrate that Officer Gutierrez may have understood that, by failing to immediately pull over, Lt. Nazario was only seeking to protect his physical safety, rather than abscond from police. These sympathetic remarks stand in stark contrast to Officer Gutierrez's forceful conduct and verbal aggression during the traffic stop itself. Thus, the post-incident statements tend to demonstrate that, during the traffic stop, Officer Gutierrez understood that his force and aggression amounted to a disproportionate response to Lt. Nazario's conduct.

17

Any malice motivating Officer Gutierrez's use of force or generally aggressive approach to the stop, however, is not relevant here.  A future jury must remain focused on the very limited issue before it: whether Officer Gutierrez acted with malice as to the risk of his threats *prolonging* the stop.  Mem. Op. 16; *Nazario*, 103 F.4th at 231–33.  Only malice as to that risk is appropriate evidence of punitive damages.  The tendency of the statements to support a finding of malice beyond that properly presented to the jury demonstrates a significant risk of unfair prejudice and confusion.  Given the low probative value, the Court finds that the risks attending the post-incident statements substantially outweigh their usefulness.  Thus, Federal Rule of Evidence 403 excludes them.[6]  The Court will grant Officer Gutierrez's Motion *in Limine*.

## IV. CONCLUSION

For the reasons detailed above, the Court will deny Lt. Nazario's Motion *in Limine* (ECF No. 308) and grant Officer Gutierrez's Motion *in Limine* (ECF No. 309).

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: September 11, 2025
Richmond, Virginia

---

[6] Lt. Nazario also argues that the post-incident statements may be relevant to determining Officer Gutierrez's credibility.  Gutierrez Opp'n 5–6.  Because it cannot foresee exactly what testimony may be offered at trial, the Court defers any determination as to the relevance and admissibility of the post-incident statements as impeachment evidence.

18